UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| LORRAINE LONGMOOR, *et al.*, *plaintiff,* | : | NO. 3:02CV-1595 (JBA) |
| V. | : | |
| KARL NILSEN, *et al.*, *defendants.* | : | OCTOBER 31, 2003 |

## AFFIDAVIT OF ROBERT TOLOMEO

I, Robert Tolomeo, being of sound mind and legal age, and having been duly sworn, do hereby depose and say:

1. For the purposes of identification, my full name is Robert Louis Tolomeo. I am currently employed by the State of Connecticut, Department of Public Safety. I have been so employed for about twenty-six years. I am currently assigned as the Legislative Liaison for the department of Public Safety. I have been so assigned for about one month.

2. In the spring of 2000, I held the rank of Lieutenant, and was assigned as the Commanding Officer of State Police Troop B, North Canaan, Connecticut. As the Commanding Officer of Troop B, I was responsible for all of the administrative and operational functions of about forty State Police troopers and supervisors, as well as a number of administrative and clerical personnel, covering thirteen towns in the northwest corner of the State of Connecticut.

3. I first became aware of the situation involving Lorraine Longmoor and Lyndsey Keene at the Woodland Acres subdivision in Barkhamsted when one of my troopers, John Bement, telephoned me at the barracks on May 2, 2000. I do not recall the exact time, but it was around midday.

4. Trooper Bement was the Resident Trooper for the Town of Barkhamsted. He informed me of the details surrounding an ongoing land dispute involving Lorraine Longmoor and Lyndsey Keene of 24 Woodland Acres Road in Barkhamsted and the other residents and landowners in the subdivision. Specifically, I learned from Trooper Bement that Longmoor owned a small parcel of land in the Woodland Acres subdivision across which passed an undeveloped gravel road which constituted the only access to other landowners' and residents' homes and property in the subdivision. Trooper Bement told me that Longmoor had erected posts and a chain to block the road where it crossed her property. Trooper Bement told me that a controversy was brewing between Longmoor, who wanted to block the road where it crossed her property, and the other landowners and residents, who wanted to have access to their homes and properties.

5. Trooper Bement told me that he had already spoken with the local Assistant State's Attorney, Andrew Wittstein. Trooper Bement told me that the assistant state's attorney had advised him that the controversy was essentially a civil matter, that we should take a case number if a complaint was made, complete an arrest warrant affidavit if necessary, but that it was unlikely that a prosecution would result until the extent of Lorraine Longmoor's ownership rights in the property were clarified in court. I telephoned Assistant State's Attorney Wittstein that same afternoon to discuss the matter with him personally to make sure his directions and advice were clear. Attorney Wittstein and I agreed that no arrests would be made simply for crossing the property until such time as the property rights issue was clarified in court. We agreed, however, that arrest could be made, if necessary, for criminal incidents such as assaults, breaches of the peace or threatening which occurred on the property. Attorney Wittstein

2

emphasized that our role as the State Police was not to determine who owned the land, or to what extent the landowner was justified in preventing others from crossing it on the road, but merely to maintain public safety and preserve the peace until the controversy could be ironed out in court.

6. After I spoke with Attorney Wittstein, I telephoned Trooper Bement and told him I wanted to come out to Barkhamsted and meet with Lorraine Longmoor and Lyndsey Keene to discuss the role of the State Police in this situation. I wanted them to be clear as to what we would, or would not, do under the present circumstances.

7. Before going to the Longmoor property, Trooper Bement and I met with Michael Fox, First Selectman of the Town of Barkhamsted at a location near the Woodland Acres subdivision. Trooper David Laboy also joined us because he was on duty and had the patrol area that day which included Woodland Acres. Mr. Fox was unable to clarify for us the ownership situation of the Longmoor property which I learned was known as Lot 14A. Mr. Fox did tell me that Lorraine Longmoor had instituted several lawsuits against him and the Town of Barkhamsted as a result of the land dispute.

8. Trooper Bement, Trooper David Laboy and myself met with Lorraine Longmoor and Lyndsey Keene at their home at 24 Woodland Acres Road in Barkhamsted at about 2:00 p.m. on the afternoon of May 2, 2000. During the meeting, I advised Longmoor and Keene that the State Police would respond to calls for service involving the property dispute, but that it was primarily a civil matter. I told them that we recognized the fact that Longmoor owned Lot 14A, but that the existence of other property claims could not be discounted based on the quit claim deed she had shown us. Longmoor showed us a document which appeared to be an agreement between

3

her and other subdivision landowners creating easements in favor of William Langer and Richard Zappulla, other landowners in the subdivision. It was unclear to us what rights, if any, this document created.

9. I emphasized that Longmoor needed to go to court to clarify the precise extent of her ownership interest in Lot 14A before we could enforce whatever ownership rights existed. Despite my encouragement to clarify their legal rights to Lot 14A before putting the chain across Woodland Acres Road, Longmoor and Keene remained adamant that they wanted to block the road. I did not tell them that they couldn't block the road. I did tell them, however, that if any confrontations resulted from the situation, such as a breach of the peace or an assault, people could be arrested. I told Longmoor and Keene that until the property rights were clarified in court, the State Police would simply enforce the public safety aspects of any situation that erupted on Lot 14A.

10. Aside from the fact that I was a State Police Lieutenant at the time, I am an attorney admitted to the Bar of the State of Connecticut. I maintain a private practice of law outside of my duties as a State Police Captain. Lorraine Longmoor was only able to produce a quit claim deed to the property known as Lot 14A. I knew because of my training and experience as an attorney, that a quit claim deed passes only the rights and title to property that the previous owner may have held. A quit claim deed does not pass a fee simple interest in property unless that is what was held by the previous owner. I did not know whether any easements, covenants, rights of way or other adverse possessory interests might exist giving others the right to use all or a portion of the property in question. I did not convey this information to Ms. Longmoor. However, I did tell Ms. Longmoor that it was not the responsibility of the State Police to conduct

4

a title search to clarify the ownership rights to Lot 14A. I told Ms. Longmoor that she needed to hire a private attorney to advise her as to how best to clarify the extent of her property rights to Lot 14A. I told Ms. Longmoor that the State Police would enforce whatever rights the court determined she ultimately possessed.

11. I returned to Woodland Acres later in May of 2000 to speak with Lorraine Longmoor again. I do not have a clear recollection of the date or the reason for my involvement at that time, but I am certain that I reiterated our position to Lorraine Longmoor.

12. This was the first time in my career as a State Police officer that I had ever been involved in a land dispute of this nature. Despite the fact that I had never before been involved in a similar situation, I strived to be sure that Lorraine Longmoor's rights were protected -- as well as those of the other landowners and property owners in the subdivision. Ms. Longmoor was treated no differently than anyone else in her position.

13. To this date, I have not been informed of the status of Lorraine Longmoor's ownership rights with regard to Lot 14A. I do know, however, that Woodland Acres Road has been moved from her property back to the right of way where it originally should have been constructed.

I have read the foregoing affidavit consisting of six pages. It is true and accurate to the best of my knowledge.

_____
Affiant

Subscribed and sworn to before me this  31st  day of  October , 2003.

_____
~~Notary Public~~/Commissioner of the
Superior Court