## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| LORRAINE LONGMOOR, *et al.*, | : | NO. 3:02CV-1595 (JBA) |
| *plaintiff,* | : | |
| | : | |
| V. | : | |
| | : | |
| KARL NILSEN, *et al.*, | : | |
| *defendants.* | : | OCTOBER 23, 2003 |

### AFFIDAVIT OF DAVID LABOY

I, David Laboy, being of sound mind and legal age, and having been duly sworn, do hereby depose and say:

1. For the purposes of identification, my full name is David Laboy. I am currently employed by the State of Connecticut, Department of Public Safety, Division of State Police. I have been so employed for about eleven years. I am currently assigned as an administrative trooper at Troop B in North Canaan, Connecticut. I have been so assigned for approximately three years.

2. In the spring of 2000, I held the rank of Trooper First Class, and was assigned to the patrol division at Troop B in Canaan, Connecticut. As a uniformed patrol trooper, I was responsible for patrolling and handling law enforcement matters in an assigned geographical area. I also performed administrative duties as a youth officer and community policing officer, and taught the Drug Abuse Resistance Education (D.A.R.E.) Program when required.

3. According to the plaintiff, Lorraine Longmoor, I responded to a complaint regarding a property dispute at the Woodland Acres subdivision in Barkhamsted, Connecticut on April 25, 2000. This assertion on the part of the plaintiff is untrue. I worked the midnight shift from 11:00 p.m. to 7:00 p.m. on both April 24th and April 25th of that year. I was assigned to Patrol 3

on both nights. Patrol 3 encompasses the towns of Colebrook, Norfork, Winsted and Torrington as well as a portion of Route 8 where it passes through these towns. I did not respond to any complaint at the Woodland Acres subdivision.

4. My first encounter with Lorraine Longmoor occurred on May 2, 2000, when I visited her home with Lieutenant Tolomeo, commanding officer of the North Canaan State Police barracks, and Trooper John Bement, the Resident Trooper for the Town of Barkhamsted. On May 2, 2000, I was working the day shift, and was assigned to the patrol which included the Town of Barkhamsted. I had no previous knowledge of any property dispute involving Woodland Acres Road. I was merely asked to accompany Lieutenant Tolomeo and Trooper Bement because it was my assigned patrol area.

5. I don't recall the exact time we visited Ms. Longmoor's home. I do recall, however, that before going there, we met with Michael Fox, First Selectman of the Town of Barkhamsted at the Saville Dam parking lot off of Route 318 enroute to the meeting. During the meeting, I remained in my assigned cruiser and did not participate in the conversation between Lieutenant Tolomeo, Trooper Bement and First Selectman Fox.

6. When we arrived at Woodland Acres, we all looked at the area where two posts had been erected on Woodland Acres Road. There was no chain blocking the road at the time we arrived. We then drove to Lorraine Longmoor's home at 24 Woodland Acres Road. Ms. Longmoor invited us in and Trooper Bement introduced myself and Lieutenant Tolomeo. Also present was Lyndsey Keene whom I thought was Ms. Longmoor's husband.

7. Lieutenant Tolomeo made it clear to Ms. Longmoor and Mr. Keene that the quit claim deed they had shown him did not clarify their right to the property in question. I personally

2

never saw the quit claim deed. Ms. Longmoor showed the Lieutenant a big map. Lieutenant Tolomeo said that he would have the resident trooper look further into the issues, and would consult with the State's Attorney. Lieutenant Tolomeo repeated several times, however, that the materials which Ms. Longmoor and Mr. Keene had shown them did not establish an absolute ownership right in the roadway. Both Trooper Bement and Lieutenant Tolomeo advised Ms. Longmoor and Mr. Keene that they should go to court to clarify their ownership rights in the property.

8. During the meeting, I received a telephone call from the troop dispatcher and was called away from the conversation temporarily. I do not recall any further detail regarding what was said. I do know, however, that Lieutenant Tolomeo and Trooper Bement repeatedly advised Ms. Longmoor and Mr. Keene that they needed to clarify their property rights by going to court. I never personally spoke with either Ms. Longmoor or Mr. Keene.

9. The only other encounter I had with the parties to the Woodland Acres land dispute was sometime after May 17, 2000, when I was dispatched by the troop to speak with a complainant by the name of William Langer who also resided on Woodland Acres Road. Mr. Langer complained that he thought someone may have tampered with his well located on his property. I observed that the wellhead cap had been removed, but that there appeared to be no further evidence of tampering. As I was leaving, I walked down Mr. Langer's driveway to where I had parked my cruiser. I observed Lyndsey Keene emerge from some bushes along Woodland Acres Road with a video camera. He appeared to be filming something. However, I did not approach Mr. Keene, nor did I ask him what he was filming. I simply departed the area. Tests conducted on the well water came back negative, and the case was closed.

3

...
...

I have read the foregoing affidavit consisting of four pages. It is true and accurate to the best of my knowledge.

_____
Affiant

Subscribed and sworn to before me this 23rd day of October, 2003.

_____
~~Notary Public~~/Commissioner of the
Superior Court

4