UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| LORRAINE LONGMOOR, *et al.*, *plaintiff,* | : NO. 3:02CV-1595 (JBA) |
| V. | : |
| KARL NILSEN, *et al.*, *defendants.* | : OCTOBER 24, 2003 |

## AFFIDAVIT OF MATTHEW HAZEN

I, Matthew Hazen, being of sound mind and legal age, and having been duly sworn, do hereby depose and say:

1. For the purposes of identification, my full name is Matthew Ralph Hazen. I am currently employed by the State of Connecticut, Department of Public Safety, Division of State Police. I have been so employed for about eleven years. I am currently assigned to the patrol division at Troop B in North Canaan, Connecticut. I have been so assigned for approximately eleven years.

2. In the spring of 2000, I held the rank of Trooper First Class, and was assigned to the patrol division at Troop B in Canaan, Connecticut. As a uniformed patrol trooper, I was responsible for patrolling and handling law enforcement matters in an assigned geographical area.

3. On April 30, 2000, I was working the day shift. I was assigned Patrol 3, supervising Trooper Patrick Sweeney as part of his field training program after having just graduated from the Connecticut State Police Academy in March of that year. Patrol 3 included responsibility for the towns of Colebrook, Norfork, Winsted and Torrington, as well as the portion of Route 8 which traveled through these towns. Sometime during the morning, we went to the Barkhamsted

firehouse on Route 318 just east of the Farmington River in Barkhamsted with to complete paperwork unrelated to this lawsuit. While we were there, the troop dispatcher contacted Trooper Sweeney and myself by radio and sent us to Woodland Acres Road in Barkhamsted to meet a party regarding an illegal dumping complaint. We were told we were sent to a complaint outside our assigned patrol area because we were the closest troopers to the location.

4. Upon arrival, Trooper Sweeney and myself were met by the complainant, Lyndsey Keene. I do not recall seeing Lorraine Longmoor on that date. Prior to this date, I had never before met Mr. Keene or Ms. Longmoor, nor had I been in the Woodland Acres subdivision. I observed that Mr. Keene's vehicle was blocking Woodland Acres Road in the area where a chain had been erected across the road. I could see that the chain was down on the ground across the road, still attached to the wooden posts. One of the posts had been pulled out of the ground and was lying flat on the side of the road.

5. Mr. Keene stated that he wanted to report vandalism to his girlfriend's (Lorraine Longmoor of 24 Woodland Acres Road) property, indicating to us the posts and chain. Mr. Keene stated that the posts and chain had been erected by Lorraine Longmoor to prevent vehicles from trespassing across Woodland Acres Road where it crossed her property. Mr. Keene stated that someone had tampered with the posts and chain. I could see that one of the posts had been uprooted -- apparently by hand -- and had been laid down on the ground at the side of the road.

6. Based upon my observations at the time, I could see that Woodland Acres Road was an unimproved dirt road. Neither Trooper Sweeney nor myself knew whether the road was town owned and maintained or whether it was simply a private road. From its appearance, however, it did not appear to be a town road. I don't recall seeing any posted "No Trespassing" signs in the

area. Mr. Keene and Ms. Longmoor did not show Trooper Sweeney or myself any documentation to indicate who owned the property, or where the property claimed to be owned by Ms. Longmoor was located.

7. While we were speaking with Mr. Keene, a dump truck drove down the road from inside the Woodland Acres subdivision. The gentleman operating the dump truck stopped and identified himself as William Langer and stated that he was a property owner in the process of constructing a home on Woodland Acres Road. Mr. Langer stated that he was bringing in fill for his homesite. Mr. Langer told us that the chain was already down on the ground when he first arrived to haul fill into his property that morning, and that he had just driven across the chain leaving it in place. Mr. Langer also told us that there were other residents who lived along Woodland Acres Road, and that this was the only way in and out of the property. Finally, Mr. Langer informed us that he and other property owners, including a doctor who lived at the end of the road, were involved in litigation initiated by Mr. Keene and Ms. Longmoor over the ownership rights to the property in question.

8. It appeared to me that the removal of the chain was not an act of vandalism. Rather, it appeared that someone had simply removed the post so as to drive into or out of the subdivision on the way to or from their property. I telephoned the Barkhamsted Resident Trooper, John Bement, from a neighbor's home to determine whether anything he knew could be added to what we had been told. It appeared that Trooper Bement knew nothing about the situation between the landowners on Woodland Acres Road. I agreed with Trooper Bement that Mr. Keene and Ms. Longmoor could come to his office and discuss the situation when he returned to duty in a few days.

3

9. Trooper Sweeney and I informed Mr. Keene and Ms. Longmoor that there appeared to be a dispute over who rightfully owned the property, and over who, if anyone, had a right to use the road. We told Mr. Keene and Ms. Longmoor that they should not erect the chain across the road until this dispute could be cleared up, and that they should make an appointment to see the Resident Trooper, John Bement, and the Barkhamsted First Selectman, Michael Fox, to discuss their complaint with them. Neither Trooper Sweeney nor myself threatened to arrest Mr. Keene for blocking the road with the chain. We merely informed him that there was a public safety issue concerning access to the property by residents and emergency vehicles, and that the road should remain open until their ownership rights were clarified.

10. Mr. Keene and Mr. Langer indicated that they understood our position concerning the property dispute. With that, Trooper Sweeney and I left. This was my only encounter with Mr. Keene regarding the property dispute over the ownership rights to Woodland Acres Road. As I said earlier, I do not recall seeing or speaking with Lorraine Longmoor on this date.

11. This is not the first property dispute I have handled in my eleven years as a Connecticut State Police Trooper. However, this is the first time that I have encountered a property owner who claimed to own a part of the road leading into a subdivision who wanted to erect a chain to prevent other landowners from accessing their homes. Even so, I normally advise the parties to property disputes of this sort that they need to seek a civil remedy for their problems. Seldom, when dispatched to such a dispute, do we know who really owns the property in question, or where the property lines are actually located. Lacking any technical expertise in engineering or surveying skills, we generally advise the parties to seek legal advice from a lawyer as to their rights, and to go to civil court to enforce their rights if they need to.

Mr. Keene and Ms. Longmoor were not treated any differently than any other person whom I have encountered with similar complaints.

I have read the foregoing affidavit consisting of five pages. It is true and accurate to the best of my knowledge.

_____
Affiant

Subscribed and sworn to before me this 24 day of October 2003.

_____
Notary Public/Commissioner of the
Superior Court

5