## UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| LORRAINE LONGMOOR, *et al.*, | : | NO. 3:02CV-1595 (JBA) |
| *plaintiff,* | : | |
| | : | |
| V. | : | |
| | : | |
| KARL NILSEN, *et al.*, | : | |
| *defendants.* | : | NOVEMBER 7, 2003 |

### STATEMENT OF MATERIAL FACTS AND
### LOCAL RULE 56(a)1 STATEMENT IN SUPPORT OF
### MOTION FOR SUMMARY JUDGMENT

Pursuant to Rule 9(c) of the Local Rules of Civil Procedure, the below named defendants respectfully offer the following statement of material facts in support of the motion for summary judgment.

1. The plaintiff, Lorraine Longmoor, resides at 24 Woodland Acres Road in Barkhamsted, Connecticut, with her live-in boyfriend, Lyndsey Keene. *See* Deposition Transcript of Lorraine Longmoor, pp. 5, 7.

2. Lorraine Longmoor first moved to the Woodland Acres subdivision in 1973, purchasing Lots 6, 9, 10 and 11 consisting, in total, of about eight acres of contiguous property. *See* Deposition Transcript of Lorraine Longmoor, pp. 14-16, 22.

3. At the time Lorraine Longmoor first moved to Woodland Acres, she accessed her home by driving up an approximately 900 foot-long unimproved dirt and gravel road called "Woodland Acres Road" constructed by the subdivision developer, Burton Carroll. *See* Deposition Transcript of Lorraine Longmoor, pp. 17, 238.

4. Woodland Acres Road is a private right of way owned by the developer, Burton

Carroll, and has never been accepted by the Town of Barkhamsted as a public road. *See*

Deposition Transcript of Lorraine Longmoor, pp. 22, 47.

5. In the mid-1970's, Lorraine Longmoor discovered that Woodland Acres Road had not

been constructed entirely within the 50-foot wide published right of way depicted in the

subdivision plot plan filed with the Town of Barkhamsted, but instead encroached onto her

property and the property of at least one other landowner in the Woodland Acres subdivision.

*See* Deposition Transcript of Lorraine Longmoor, pp. 24-25, 41, 47.

6. In 1981, David Knauf, the prospective buyer of Lot 14 in the Woodland Acres

subdivision, onto whose land Woodland Acres Road encroached, was having difficulty securing

a mortgage with which to build a home because Woodland Acres Road ran off the published

right of way across a small portion of Lot 14 where it abutted the road. *See* Deposition

Transcript of Lorraine Longmoor, p. 32.

7. David Knauf asked Lorraine Longmoor if she would accept a quit claim deed to a

small portion of Lot 14, to be redesignated as Lot 14A, to eliminate the encroachment problem

which was holding up the approval of his mortgage. Lorraine Longmoor agreed to accept a quit

claim deed from Mr. Knauf for Lot 14A, giving him $1.00 as consideration for the transfer. *See*

Deposition Transcript of Lorraine Longmoor, pp. 32-33, 43-44, 49.

8. The seller, David Knauf, retained an easement to cross Lot 14A where Woodland

Acres Road crossed the property. *See* Deposition Transcript of Lorraine Longmoor, p. 56.

2

9. At the time Lorraine Longmoor accepted the quit claim deed to Lot 14A in 1981, she was aware that Woodland Acres Road traveled across the property which she had just acquired. *See* Deposition Transcript of Lorraine Longmoor, pp. 46-47.

10. Lot 14A is not contiguous to the rest of Lorraine Longmoor's property. *See* Deposition Transcript of Lorraine Longmoor, p. 23.

11. Lot 14A is about one-tenth of an acre in size. *See* Deposition Transcript of Lorraine Longmoor, p. 376.

11. As other lots in the Woodland Acres subdivision were bought and sold over the ensuing years, other residents in the subdivision also crossed Lot 14A on Woodland Acres Road in order to gain access to and egress from their respective homes and properties. *See* Deposition Transcript of Lorraine Longmoor, pp. 55-57.

12. In 1988, Lorraine Longmoor paid to have that portion of Woodland Acres Road which encroached upon her property at Lots 6, 9 and 10 moved onto to the published right of way depicted in the subdivision plot plan filed with the Town of Barkhamsted where it should have been in the first place. This project did not affect Woodland Acres Road where it crossed Lot 14A. *See* Deposition Transcript of Lorraine Longmoor, pp. 61-64.

13. Lorraine Longmoor believed that the other residents of Woodland Acres should have been required to share in the expenses she incurred to relocate Woodland Acres Road. *See* Deposition Transcript of Lorraine Longmoor, p. 85.

14. Lorraine Longmoor planned to use her ownership of Lot 14A to force other landowners to share in her costs of relocating Woodland Acres Road where it abutted Lots 6, 9 and 10. *See* Deposition Transcript of Lorraine Longmoor, p. 87.

3

15. In 1988, the O'Gara's, owners of Lot 5 in the Woodland Acres subdivision, asked Lorraine Longmoor for an easement to use Woodland Acres Road where it crossed Lot 14A. Lorraine Longmoor did not grant the O'Gara's an easement, but gave them permission to use the road where it crossed her property at Lot 14A. *See* Deposition Transcript of Lorraine Longmoor, pp. 76-78.

16. Lorraine Longmoor did not give anyone else permission to use Woodland Acres Road where it crossed her property on Lot 14A. *See* Deposition Transcript of Lorraine Longmoor, p. 79.

17. According to Lorraine Longmoor, Richard Case, owner of Lot 13 in the Woodland Acres subdivision, had prescriptive rights to use Woodland Acres Road where it crossed Lot 14A because he had been using the road for thirty years. *See* Deposition Transcript of Lorraine Longmoor, p. 95.

18. When Richard Case sold his property to Wayne Gracie and Tracy Garafolo, Lorraine Longmoor orally gave the new owners permission to use Woodland Acres Road where it crossed her property at Lot 14A. *See* Deposition Transcript of Lorraine Longmoor, p. 309.

19. In 1998, Lorraine Longmoor first asked the O'Gara family to pay for an easement to use Woodland Acres Road where it crossed her property at Lot 14A. The O'Gara's did not pay for an easement at that time. *See* Deposition Transcript of Lorraine Longmoor, p. 88.

20. Lorraine Longmoor met with the other landowners and residents of the Woodland Acres subdivision in March of 2000 to discuss easements for them to use Woodland Acres Road where it crossed Lot 14A. No easements were agreed to at this meeting. *See* Deposition Transcript of Lorraine Longmoor, pp. 322-323.

4

21. In April of 2000, based on the advice of her personal lawyer that she possessed the legal right to do so, Lorraine Longmoor first installed two posts and a chain across Woodland Acres Road to block vehicular access into and egress from the subdivision using Woodland Acres Road where it crossed Lot 14A. *See* Deposition Transcript of Lorraine Longmoor, pp. 93-98, 104.

22. On April 25, 2000, the Connecticut State Police were called to the Woodland Acres subdivision on an anonymous complaint concerning the chain blocking Woodland Acres Road. *See* Deposition Transcript of Lorraine Longmoor, p. 98.

23. The responding trooper told Lorraine Longmoor to take the chain down. The trooper did not threaten Lorraine Longmoor with arrest, however, and Lorraine Longmoor did not remove the chain while the trooper was present. *See* Deposition Transcript of Lorraine Longmoor, pp. 99, 113.

24. Lorraine Longmoor does not know the identity of the trooper with whom she spoke on April 25, 2000, but believes it might have been Trooper David Laboy. *See* Deposition Transcript of Lorraine Longmoor, pp. 99, 108-109.

25. Trooper Laboy worked the midnight shift from 11:00 p.m. to 7:00 p.m. on both April 24th and April 25th of 2000 as a uniformed patrol trooper out of the North Canaan State Police barracks. He was assigned to Patrol 3 on both nights, encompassing the towns of Colebrook, Norfork, Winsted and Torrington. He did not respond to any complaint at the Woodland Acres subdivision in the Town of Barkhamsted. *See* Affidavit of Trooper David Laboy, ¶¶ 1-3.

5

26. After the unidentified trooper left on April 25, 2000, Lorraine Longmoor discovered that someone had broken one of the supporting posts to the chain across Woodland Acres Road at Lot 14A, causing the chain to fall to the ground across the road. *See* Deposition Transcript of Lorraine Longmoor, pp. 100, 102, 114.

27. Lorraine Longmoor fixed the broken post and replaced the chain across Woodland Acres Road on April 28, 2000. *See* Deposition Transcript of Lorraine Longmoor, p. 102.

28. On April 28, 2000, Lorraine Longmoor telephoned the office of the Barkhamsted Resident Trooper and left a telephone message for the resident trooper to return her call in reference to someone having broken the post supporting the chain across Woodland Acres Road. *See* Deposition Transcript of Lorraine Longmoor, pp. 112-113.

29. On April 30, 2000, Lorraine Longmoor saw one of the subdivision landowners, Robert Langer, with his vehicle on his property. Lorraine Longmoor checked the chain at Lot 14A and discovered that someone had lifted one of the supporting posts out of the ground and laid it at the side of the road, causing the chain to fall to the ground. *See* Deposition Transcript of Lorraine Longmoor, pp. 115-116.

30. Lorraine Longmoor replaced the chain to block the road. However, when several friends of Robert Langer expressed their desire to leave the subdivision in their vehicle, Lorraine Longmoor lowered the chain and permitted them to depart. *See* Deposition Transcript of Lorraine Longmoor, pp. 118-119.

31. Someone called the State Police on April 30, 2000. Lorraine Longmoor does not remember who made the call. Troopers Matthew Hazen and Patrick Sweeney responded to the

6

Woodland Acres subdivision to investigate the complaint. *See* Deposition Transcript of Lorraine Longmoor, p. 119.

32.  Upon arrival, Troopers Hazen and Sweeney were met by the complainant, Lyndsey Keene. Prior to this date, the troopers had never before met Mr. Keene or Ms. Longmoor, nor had they been in the Woodland Acres subdivision. *See* Affidavit of Trooper Hazen, ¶ 4; Affidavit of Trooper Sweeney, ¶ 4.

33.  The two troopers observed that Mr. Keene's vehicle was blocking Woodland Acres Road in the area where the chain had been erected across the road. They could see that the chain was down on the ground across the road, still attached to the wooden posts. One of the posts had been pulled out of the ground and was lying flat on the side of the road. *See* Affidavit of Trooper Hazen, ¶ 5; Affidavit of Trooper Sweeney, ¶ 5.

34.  Lyndsey Keene stated that he wanted to report vandalism to his girlfriend's (Lorraine Longmoor of 24 Woodland Acres Road) property, indicating to the troopers the posts and chain. Mr. Keene stated that the posts and chain had been erected by Lorraine Longmoor to prevent vehicles from trespassing across Woodland Acres Road where it crossed her property. Mr. Keene stated that someone had tampered with the posts and chain. *See* Affidavit of Trooper Hazen, ¶ 6; Affidavit of Trooper Sweeney, ¶ 6.

35.  Lorraine Longmoor told the troopers that she had a quit claim deed to the property, but never actually showed the deed to the troopers. *See* Deposition Transcript of Lorraine Longmoor, p. 130.

36.  Based upon their observations at the time, the troopers could see that Woodland Acres Road was an unimproved dirt road. Neither Trooper Sweeney nor Trooper Hazen knew

7

whether the road was town owned and maintained or whether it was simply a private road. From its appearance, however, it did not appear to be a town road. *See* Affidavit of Trooper Hazen, ¶ 6; Affidavit of Trooper Sweeney, ¶ 6.

37. While the troopers were speaking with Mr. Keene, a dump truck drove down the road from inside the Woodland Acres subdivision. The gentleman operating the dump truck stopped and identified himself as William Langer and stated that he was a property owner in the process of constructing a home on Woodland Acres Road. Mr. Langer stated that he was bringing in fill for his homesite. Mr. Langer told the troopers that the chain was already down on the ground when he first arrived to haul fill into his property that morning, and that he had just driven across the chain leaving it in place. Mr. Langer also told the troopers that there were other residents who lived along Woodland Acres Road, and that this was the only way in and out of the property. Finally, Mr. Langer informed the troopers that he and other property owners, including a doctor who lived at the end of the road, were involved in litigation initiated by Mr. Keene and Ms. Longmoor over the ownership rights to the property in question. *See* Affidavit of Trooper Hazen, ¶ 7; Affidavit of Trooper Sweeney, ¶ 7.

38. It appeared to troopers that the removal of the chain was not an act of vandalism. Rather, it appeared that someone had simply removed the post so as to drive into or out of the subdivision on the way to or from their property. *See* Affidavit of Trooper Hazen, ¶ 8; Affidavit of Trooper Sweeney, ¶ 8.

39. Trooper Hazen telephoned the Barkhamsted Resident Trooper, John Bement, from a neighbor's home to determine whether anything he knew could be added to what the troopers had been told. It appeared that Trooper Bement knew nothing about the situation between the

landowners on Woodland Acres Road.  Trooper Hazen agreed with Trooper Bement that Mr.

Keene and Ms. Longmoor could come to his office and discuss the situation when he returned to

duty in a few days.  *See* Affidavit of Trooper Hazen, ¶ 8; Affidavit of Trooper Sweeney, ¶ 8;

Affidavit of Trooper Bement, ¶ 3.

     40.  The troopers informed Mr. Keene and Ms. Longmoor that there appeared to be a

dispute over who rightfully owned the property, and over who, if anyone, had a right to use the

road.  The troopers told Mr. Keene and Ms. Longmoor that they should not erect the chain across

the road until this dispute could be cleared up, and that they should make an appointment to see

the Resident Trooper, John Bement, and the Barkhamsted First Selectman, Michael Fox, to

discuss their complaint with them.  Lorraine Longmoor and Lyndsey Keene were told to bring

any paperwork which they felt helped to establish their claim to the property to Trooper

Bement's office when they visited him.  *See* Affidavit of Trooper Hazen, ¶ 9; Affidavit of

Trooper Sweeney, ¶ 9; Affidavit of Trooper Bement, ¶ 3.

     41.  The troopers told Lyndsey Keene and Lorraine Longmoor to remove the chain.

Neither Trooper threatened to arrest Mr. Keene or Ms. Longmoor for blocking the road with the

chain.  The troopers merely informed them that there was a public safety issue concerning access

to the property by residents and emergency vehicles, and that the road should remain open until

their ownership rights were clarified.  *See* Affidavit of Trooper Hazen, ¶ 9; Affidavit of Trooper

Sweeney, ¶ 9; Deposition Transcript of Lorraine Longmoor, pp. 124, 160.

     42.  No arrests were made as a result of the April 30, 2000 complaint regarding the chain

across Woodland Acres Road.  However, Lorraine Longmoor and Lyndsey Keene left Lot 14A

leaving the chain down on the ground as directed. *See* Deposition Transcript of Lorraine Longmoor, p. 129.

43. This was not the first property dispute that Trooper Hazen handled as a Connecticut State Police Trooper. However, this was the first time that he encountered a property owner who claimed to own a part of the road leading into a subdivision, and who wanted to erect a chain to prevent other landowners from accessing their homes. Even so, Trooper Hazen normally advised the parties to property disputes of this sort that they need to seek a civil remedy for their problems. Seldom, when dispatched to such a dispute, did Trooper Hazen know who really owned the property in question, or where the property lines were actually located. Lacking any technical expertise in engineering or surveying skills, Trooper Hazen generally advised the parties to seek legal advice from a lawyer as to their rights, and to go to civil court to enforce their rights if they needed to. Mr. Keene and Ms. Longmoor were not treated any differently than any other person whom Trooper Hazen encountered with similar complaints. *See* Affidavit of Trooper Hazen, ¶ 11.

44. At the time, Trooper Sweeney had just graduated from the Connecticut Police Academy and was being supervised by Trooper Hazen. Trooper Sweeney had limited experience as a police officer, and had never before handled a similar property dispute complaint. *See* Affidavit of Trooper Hazen, ¶ 3; Affidavit of Trooper Sweeney, ¶ 3.

45. On May 1, 2000, Lorraine Longmoor and Lyndsey Keene went to the Barkhamsted Resident Trooper's office to speak with Trooper Bement. Trooper Bement was not in. Lorraine Longmoor slipped a copy of her quit claim deed under the locked door of his office along with a

10

partial plot map of the Woodland Acres subdivision, intending to return to speak with him the following day. *See* Deposition Transcript of Lorraine Longmoor, p. 169.

46.    Trooper Bement was off-duty from April 29 through May 1, 2000. When Trooper Bement returned to his office on Tuesday, May 2, 2000, he did some independent research in the land records for the Town of Barkhamsted in order to prepare for the upcoming meeting with Lorraine Longmoor and Lyndsey Keene. With the assistance of the town clerk, he located a subdivision plot plan for Woodland Acres and learned that the developer was Burton Carroll. In checking the land records, he learned that Lorraine Longmoor possessed two parcels of land in Woodland Acres -- a large multi-acre plot, and a small .12 acre parcel of land recorded as Lot 14A. Because of his familiarity with the area, he immediately recognized that the actual roadway into Woodland Acres was not in the location depicted on Burton Carroll's subdivision plot plan on file in the town clerk's office. Trooper Bement also recognized that Lot 14A was not a properly configured building lot. He knew that Woodland Acres Road was a private, gravel right of way which had never been accepted as a public road by the Town of Barkhamsted, and surmised that the dispute probably centered around this parcel of land in some way. *See* Affidavit of Trooper Bement, ¶ 4.

47.    Lorraine Longmoor and Lyndsey Keene came to Trooper Bement's office between 10:00 and 11:00 a.m. on Tuesday morning, May 2, 2000. Trooper Bement, Longmoor and Keene all sat down and Longmoor began to explain the problem. Longmoor explained that she was the sole owner of a parcel of land in the Woodland Acres subdivision known as Lot 14A. She showed Trooper Bement a quit claim deed which she said established her title to the property. She also showed Trooper Bement a partial map of the subdivision depicting the area

11

surrounding Lot 14A, but then Trooper Bement showed her the copy of the entire subdivision map he had just obtained from the town records. Using the big map, Trooper Bement, Longmoor and Keene all agreed that the road which crossed Lot 14A was the only access into the subdivision, and that the road depicted on the subdivision map did not exist. Trooper Bement asked why the road had not been constructed in the location shown on the map. Lyndsey Keene responded that because there was ledge rock in the right of way depicted on the plot plan, the builder had taken a short cut. *See* Affidavit of Trooper Bement, ¶ 5; Deposition Transcript of Lorraine Longmoor, p. 174.

48. Trooper Bement knew from his own experience that Woodland Acres Road had been in existence in its present location for a number of years. He asked Longmoor why now, after all these years, it became important to put up a chain to block access to the subdivision. Lyndsey Keene stated that it was Longmoor's legal right to put up a chain on their property. Keene said that Longmoor had negotiated the possibility of creating easements to cross Lot 14A with each of the neighbors, but that they had not been totally successful. Keene stated that all of the other landowners in the subdivision admitted that Lorraine Longmoor owned Lot 14A. *See* Affidavit of Trooper Bement, ¶ 6.

49. Trooper Bement acknowledged that Lot 14A appeared to be Longmoor's property. However, he told Longmoor and Keene that it didn't make sense that all of the lots in the subdivision beyond where the road crossed Lot 14A would be landlocked. Trooper Bement told Longmoor and Keene that he knew that the road had existed for a period of time far longer than the quit claim deed indicated that Lot 14A belonged to Lorraine Longmoor. Trooper Bement told Longmoor and Keene that the quit claim deed they had shown him did not address the

12

possibility that there could be a pre-existing easement or some other similar claim to use

Woodland Acres Road where it crossed Lot 14A. Trooper Bement told Longmoor and Keene

that based on the information he had been provided, he could not agree that Longmoor and

Keene had an absolute ownership interest in Lot 14A such that they could lawfully place a chain

across Woodland Acres Road where it crossed Lot 14A to prevent access to the remainder of the

subdivision. *See* Affidavit of Trooper Bement, ¶ 7.

50. Trooper Bement told Longmoor and Keene that they should go to court to clarify the

extent of the ownership interest in Woodland Acres Road where it crossed Lot 14A, and to

determine whether they had a legal right to landlock the other property owners. *See* Affidavit of

Trooper Bement, ¶ 7.

51. Trooper Bement told Longmoor and Keene that he was going to seek the advice of

the assistant state's attorney in the Bantam courthouse who would, in any event, be called upon

to prosecute the case if someone was arrested. Trooper Bement told Longmoor and Keene that,

at this point, he couldn't tell them whether to take down the chain or to put it up. Trooper

Bement did, however, advise them that their actions could create circumstances in which the

State Police would have to become involved if there occurred a physical or verbal altercation

between the neighbors. *See* Affidavit of Trooper Bement, ¶ 7.

52. Before they left, Trooper Bement asked Longmoor and Keene whether they had

provided a key to the chain lock to the local fire department in case emergency vehicles required

access to Woodland Acres. Longmoor replied that she had. After they left, Trooper Bement

telephoned the head of the Barkhamsted Fire District, Richard Winn, and confirmed that keys to

13

the chain lock had been provided. *See* Affidavit of Trooper Bement, ¶ 8; Deposition Transcript of Lorraine Longmoor, pp. 133-134, 157-157, 176.

53. Lorraine Longmoor did not give a key to allow passage along Woodland Acres Road where it crossed Lot 14A to anyone from the Connecticut State Police, the local ambulance service, or to any of the local utility companies. *See* Deposition Transcript of Lorraine Longmoor, pp. 157-158.

54. Trooper Bement telephoned Assistant State's Attorney Andrew Wittstein at the Bantam courthouse at about 12:30 p.m. on May 2, 2000. Trooper Bement explained the situation to Attorney Wittstein as he understood it. Attorney Wittstein advised Trooper Bement that Longmoor had a legal right to place a chain across the gravel road within the boundaries of her property. Attorney Wittstein said that Trooper Bement should take a case number if the chain across the road was damaged, and submit an arrest warrant affidavit based on the facts. Attorney Wittstein told Trooper Bement that under the circumstances, it was not likely that such an arrest warrant affidavit would be signed. Attorney Wittstein told Trooper Bement not to arrest anyone for trespassing simply for crossing Lot 14A unless Lorraine Longmoor first obtained an injunction barring others from using Woodland Acres Road where it crossed her property. Trooper Bement advised Attorney Wittstein that Longmoor had been advised that a civil remedy was the best course of action, and he agreed. *See* Affidavit of Trooper Bement, ¶ 9.

55. After finishing with Attorney Wittstein, Trooper Bement spoke with Lieutenant Tolomeo, the commanding officer of the North Canaan State Police barracks, and advised him of the property dispute ongoing in the Woodland Acres subdivision in Barkhamsted. Lieutenant Tolomeo advised Trooper Bement to put a memorandum regarding this situation in writing, and

to put it into the roll call book so other troopers would be aware of the status of Lorraine

Longmoor's claims regarding Lot 14A and Woodland Acres Road.  *See* Affidavit of Trooper

Bement, ¶ 10; Affidavit of Lieutenant Tolomeo, ¶¶ 2-4.

56.  Lieutenant Tolomeo then telephoned Assistant State's Attorney Wittstein to discuss

the matter with him personally to make sure his directions and advice were clear.  Attorney

Wittstein and Lieutenant Tolomeo agreed that no arrests would be made simply for crossing the

property until such time as the property rights issue was clarified in court.  Assistant State's

Attorney and Lieutenant Tolomeo also agreed, however, that arrest could be made, if necessary,

for criminal incidents such as assaults, breaches of the peace or threatening which occurred on

the property.  Attorney Wittstein emphasized that the role of the State Police was not to

determine who owned the land, or to what extent the landowner was justified in preventing

others from crossing it on the road, but merely to maintain public safety and preserve the peace

until the controversy could be ironed out in court.  *See* Affidavit of Lieutenant Tolomeo, ¶ 5.

57.  Following Lieutenant Tolomeo's advice, Trooper Bement completed the

memorandum, and attached to it the map depicting Lot 14A given to him by Lorraine Longmoor

as well as a partial map of the subdivision also given to Trooper Bement by Lorraine Longmoor.

Trooper Bement faxed his memorandum to Lieutenant Tolomeo from the resident trooper's

office.  Lieutenant Tolomeo told Trooper Bement that he had also spoken with Attorney

Wittstein, and that he was going to come out to Barkhamsted so he could view the scene and

meet with Lorraine Longmoor and Lyndsey Keene to be sure there was no lack of clarity

regarding the position of the State Police in the ongoing property dispute.  *See* Affidavit of

Trooper Bement, ¶¶ 10-11; Affidavit of Lieutenant Tolomeo, ¶ 6.

15

58. Before going to the Longmoor property, Trooper Bement and Lieutenant Tolomeo met with Michael Fox, First Selectman of the Town of Barkhamsted at a location near the Woodland Acres subdivision. Trooper David Laboy also joined the group because he was on duty and had the patrol area that day which included Woodland Acres. Mr. Fox was unable to clarify for the troopers the ownership situation of the Longmoor property known as Lot 14A. Mr. Fox did tell Lieutenant Tolomeo that Lorraine Longmoor had instituted several lawsuits against him and the Town of Barkhamsted as a result of the land dispute. *See* Affidavit of Lieutenant Tolomeo, ¶ 7.

59. Lieutenant Tolomeo, Trooper David Laboy and Trooper Bement met with Lorraine Longmoor and Lyndsey Keene at their home at 24 Woodland Acres Road in Barkhamsted at about 2:00 p.m. on the afternoon of May 2, 2000. Trooper Laboy accompanied the group because he had the patrol assignment that day which included Woodland Acres. *See* Affidavit of Trooper Bement, ¶ 12; Affidavit of Trooper Laboy, ¶ 6.

60. This was Trooper Laboy's first encounter with Lorraine Longmoor and Lyndsey Keene. Trooper Laboy had no previous knowledge of any property dispute involving Woodland Acres Road. *See* Affidavit of Trooper Laboy, ¶ 4.

61. Lieutenant Tolomeo clarified to Longmoor and Keene that the State Police would respond to calls for service involving the property dispute over Lot 14A, but that it was primarily a civil matter. He told them that the State Police recognized the fact that Longmoor owned Lot 14A, but that the existence of other property claims could not be discounted based on the quit claim deed she had shown them. Longmoor showed the troopers a document which appeared to be an agreement between her and other subdivision landowners creating easements in favor of

16

William Langer and Richard Zappulla, also landowners in the subdivision. It was unclear to the troopers what rights, if any, this document created. *See* Affidavit of Trooper Bement, ¶ 12; Affidavit of Trooper Laboy, ¶ 7; Affidavit of Lieutenant Tolomeo, ¶ 8.

62. Lieutenant Tolomeo emphasized that Longmoor needed to go to court to clarify the precise extent of her ownership interest in Lot 14A before the State Police could enforce whatever ownership rights existed. Despite the lieutenant's encouragement to clarify their legal rights to Lot 14A before putting the chain across Woodland Acres Road, Longmoor and Keene remained adamant that they wanted to block the road. Lieutenant Tolomeo did not tell them that they couldn't block the road. He did tell them, however, that if any confrontations resulted from the situation, such as a breach of the peace or an assault, people could be arrested. Lieutenant Tolomeo told Longmoor and Keene that until the property rights were clarified, the State Police would simply enforce the public safety aspects of any situation that erupted on Lot 14A. *See* Affidavit of Trooper Bement, ¶ 13; Affidavit of Lieutenant Tolomeo, ¶9.

63. On May 2, 2000, Lieutenant Tolomeo was an attorney admitted to the Bar of the State of Connecticut. He maintained a private practice of law outside of his duties as a State Police Lieutenant. Lorraine Longmoor was only able to produce a quit claim deed to the property known as Lot 14A. Lieutenant Tolomeo knew because of his training and experience as an attorney, that a quit claim deed passes only the rights and title to property that the previous owner may have held. A quit claim deed does not pass a fee simple interest in property unless that is what was held by the previous owner. Lieutenant Tolomeo did not know whether any easements, covenants, rights of way or other adverse possessory interests might exist giving others the right to use all or a portion of the property in question. He did not convey this

17

information to Ms. Longmoor. However, Lieutenant Tolomeo did tell Ms. Longmoor that it was not the responsibility of the State Police to conduct a title search to clarify the ownership rights to Lot 14A. He told Ms. Longmoor that she needed to hire a private attorney to advise her as to how best to clarify the extent of her property rights to Lot 14A. Lieutenant Tolomeo told Ms. Longmoor that the State Police would enforce whatever rights the court determined she ultimately possessed. *See* Affidavit of Lieutenant Tolomeo, ¶ 10.

64. This was the first time that lieutenant Tolomeo had become involved in a property dispute between property owners in a subdivision such as Woodland Acres. Despite this, Lieutenant Tolomeo treated the parties involved in the same way as anyone else with a similar complaint or problem. *See* Affidavit of Lieutenant Tolomeo, ¶ 11.

65. On May 4, 2000, Trooper Bement was copied on a letter faxed to him from Lorraine Longmoor addressed to the Barkhamsted First Selectman, Michael Fox. The letter informed Mr. Fox that an oversized modular home was to be delivered to the Woodland Acres subdivision and was to be brought across Lot 14A. The letter indicated that Longmoor considered this to be a health and safety issue. Longmoor asked Mr. Fox to revoke the building permit for Lot #2 until the problem could be addressed. Trooper Bement determined that the complaint in the letter did not pertain to his functions as the resident trooper, but was best handled by town officials. *See* Affidavit of Trooper Bement, ¶ 14.

66. On May 5, 2000, Lyndsey Keene contacted the State Police at about 8:35 a.m. to complain that a well-driller was in the subdivision and presumably had removed the chain and crossed Lot 14A without permission. Upon arrival, Trooper Bement spoke with Keene and inspected the chain which was up and blocking Woodland Acres Road. The well-driller was

inside the chain operating a large utility truck and wanted to leave the area. His egress from Woodland Acres was being blocked by the chain. According to the driller, he did not remove the chain in order to gain access to the subdivision. The chain was not damaged. Trooper Bement advised Keene that he could not imprison the well-driller and his vehicle in the subdivision by blocking the road with a chain. Trooper Bement told Keene that he would have to remove the chain to permit the well-driller to leave or he would arrest him for unlawful restraint. Keene agreed and removed the chain, allowing the well-driller to leave. Trooper Bement took no further action and left after the well-driller departed. *See* Affidavit of Trooper Bement, ¶ 14.

67. On May 17, 2000, someone called the Troop B State Police dispatcher and complained that a modular home was blocking Woodland Acres Road. Trooper Bement responded to the scene and observed that Woodland Acres Road was not being blocked by a modular home, but by an unoccupied private automobile parked inside the chain where Woodland Acres Road crossed Lot 14A. Trooper Bement observed that the chain was down and, but for the car blocking the roadway, the truck towing the modular home could have entered the property to deliver the home. *See* Affidavit of Trooper Bement, ¶ 15.

68. Lorraine Longmoor had placed per personal automobile on Woodland Acres Road where it crossed Lot 14A to block her neighbor, Robert Langer from bringing in a modular home to put on his property. *See* Deposition Transcript of Lorraine Longmoor, p. 193.

69. Trooper Bement was approached by William Langer, a property owner in the subdivision. Langer told Trooper Bement that the car was blocking access to the subdivision. Langer wanted Trooper Bement to tow the car out of the way. Trooper Bement told Langer that Woodland Acres Road was a private right of way and that he had no authority to tow the car

which was blocking the road. Langer asked Trooper Bement if he could have the car towed.
Trooper Bement told him that was a matter between him and the tow truck operator. Langer told
Trooper Bement he was going to call a tow truck. Trooper Bement remained on the scene to
preserve the peace if it became necessary to do so. *See* Affidavit of Trooper Bement, ¶ 16.

70. Neither Trooper Bement nor anyone else from the State Police called a tow truck to
have the car blocking Woodland Acres Road removed. *See* Affidavit of Trooper Bement, ¶ 16,
17; Deposition Transcript of Lorraine Longmoor, p. 195.

71. About thirty minutes later, a tow truck from PJ's Towing arrived. Lyndsey Keene
arrived about the same time. Lorraine Longmoor was with him. The tow truck operator tried to
open the car door and found that it was locked. The tow truck operator said that it would be
easier if he had the keys. Langer spoke with Longmoor and Keene about the keys, telling
Longmoor that it would be much easier if she just moved the car. Longmoor refused to remove
the car. The tow truck operator then approached Trooper Bement and asked if he was going to
get into trouble if he towed the car. Trooper Bement told him that towing the car was a private
business arrangement between him and whomever called him, and that the State Police was just
there to keep the peace. *See* Affidavit of Trooper Bement, ¶ 17.

72. As the tow truck operator was preparing to hook up the locked car, Keene
approached Trooper Bement and asked what was going to happen if the tow truck operator
damaged the car. Trooper Bement told Keene that it was a civil matter, but that the car could be
damaged if towed in gear. While Trooper Bement was having this discussion with Keene,
Longmoor gave her keys to the tow truck operator. The tow truck operator then opened the car,
put it in neutral and pulled it up onto his flatbed truck. The tow truck operator then backed up

Woodland Acres Road and deposited the vehicle in Longmoor's driveway up the road. *See* Affidavit of Trooper Bement, ¶ 17; Deposition Transcript of Lorraine Longmoor, pp. 201, 415, 417.

73. Lorraine Longmoor's car was not damaged as a result of this incident. *See* Deposition Transcript of Lorraine Longmoor, pp. 202, 415.

74. Once the obstructing vehicle was removed, the truck towing the modular home entered the subdivision via Woodland Acres Road and delivered the home to Langer's property. Trooper Bement remained in the area for another thirty minutes or so to be sure that there would be no further problems. Once Longmoor and Keene departed, Trooper Bement also departed. *See* Affidavit of Trooper Bement, ¶ 18; Deposition Transcript of Lorraine Longmoor, p. 201.

75. While talking with Lyndsey Keene, Trooper Bement reiterated to Keene that he couldn't tell him whether or not to put up the chain, but that, if he did, Keene could not block anyone from leaving the subdivision. Trooper Bement told Lyndsey Keene that if he prevented someone from leaving the subdivision, he would be arrested for unlawful restraint. Trooper Bement reminded Lyndsey Keene that the State Police was only there for public safety purposes until the property dispute issues were clarified in court, and that Trooper Bement would not tell anyone whether they could put up the chain or take it down. Trooper Bement told Keene that he should do what he considered to be in his own best interests. *See* Affidavit of Trooper Bement, ¶ 19.

76. At this time, William Langer and his wife were also present. Trooper Bement also told them that they should do what they felt was in their best interests. Trooper Bement advised everyone that, while the State Police acknowledged Longmoor's ownership of Lot 14A, it had

21

83. Neither Lieutenant Tolomeo, Trooper Bement, Trooper Laboy, Trooper Hazen or

Trooper Sweeney had any further involvement with Lorraine Longmoor or Lyndsey Keene

regarding the property dispute involving Lot 14A in the Woodland Acres subdivision.

DEFENDANTS
Trooper David Laboy, Trooper Hazen,
Trooper Sweeney, and Lieutenant Tolomeo

RICHARD BLUMENTHAL
ATTORNEY GENERAL

By: _____
Stephen R. Sarnoski
Assistant Attorney General
MacKenzie Hall
110 Sherman Street
Hartford, Connecticut 06105
Tel. (860) 808-5450
Federal bar #c05129
E-mail: stephen.sarnoski@po.state.ct.us

24