**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| LORRAINE LONGMOOR, *et al.*, | : | NO. 3:02CV-1595(JBA) |
|     *plaintiff*, | : | |
| | : | |
| V. | : | |
| | : | |
| KARL NILSEN, *et al.*, | : | |
|     *defendants.* | : | NOVEMBER 20, 2003 |

**LOCAL 56(a)(1) STATEMENT IN SUPPORT OF**
**BARKHAMSTED DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

    Pursuant to Rule 56(a) of the Local Rules of Civil Procedure, the defendants, Karl Nilsen, Michael Fox, the Town of Barkhamsted, and the Barkhamsted Inland Wetlands Commission (collectively, the "Barkhamsted Defendants") respectfully offer the following Statement of Undisputed Material Facts in support of their Motion for Summary Judgment.

    1.    The plaintiff, Lorraine Longmoor, resides at 24 Woodland Acres Road in Barkhamsted, Connecticut, with her live-in boyfriend, Lyndsey Keene. Deposition Transcript of Lorraine Longmoor ("Longmoor Dep.") at 5, 7.

    2.    Mr. Keene did not acquire an ownership interest in the property at issue until around July of 2001. Longmoor Dep. at 188-89.

343600

3.  Woodland Acres Road is a private dirt road that provides residents of the Woodland Acres subdivision in Barkhamsted, Connecticut, with access to their property. Affidavit of Michael Fox, dated November 17, 2003, Exhibit 2, ¶ 5.

4.  The Woodland Acres subdivision consists of 14 lots off a private, gravel road, and came into existence before there were any zoning regulations in Barkhamsted. Fox Aff. ¶ 6.

5.  Beginning in 1969, lots were sold in the Woodland Acres subdivision, and lot buyers began building homes on those lots. With each new home there was a pre-construction building permit and a post-construction certificate of occupancy. Fox Aff. ¶ 7.

6.  The plaintiff, Lorraine Longmoor, obtained a building permit in 1972. Fox Aff. ¶ 8.

7.  Lorraine Longmoor first moved to the Woodland Acres subdivision in 1973, purchasing Lots 6, 9, 10 and 11 consisting, in total, of about eight acres of contiguous property. Longmoor Dep. at 14-16, 22.

8.  At the time Lorraine Longmoor first moved to Woodland Acres, she accessed her home by driving up an approximately 900 foot-long unimproved dirt and gravel road called "Woodland Acres Road" constructed by the subdivision developer, Burton Carroll. Longmoor Dep. at 17, 238.

9. Woodland Acres Road is a private right of way owned by the developer, Burton Carroll, and has never been accepted by the Town of Barkhamsted as a public road. Longmoor Dep. at 22, 47.

10. In the mid-1970's, Lorraine Longmoor discovered that Woodland Acres Road had not been constructed entirely within the 50-foot wide published right of way depicted in the subdivision plot plan filed with the Town of Barkhamsted, but instead encroached onto her property and the property of at least one other landowner in the Woodland Acres subdivision. Longmoor Dep. at 24-25, 41, 47.

11. In 1981, David Knauf, the prospective buyer of Lot 14 in the Woodland Acres subdivision, onto whose land Woodland Acres Road encroached, was having difficulty securing a mortgage with which to build a home because Woodland Acres Road ran off the published right of way across a small portion of Lot 14 where it abutted the road. Longmoor Dep. at 32.

12. David Knauf asked Lorraine Longmoor if she would accept a quitclaim deed to a small portion of Lot 14, to be redesignated as Lot 14A, to eliminate the encroachment problem, which was holding up the approval of his mortgage. Lorraine Longmoor agreed to accept a quitclaim deed from Mr. Knauf for Lot 14A, giving him $1.00 as consideration for the transfer. Longmoor Dep. at 32-33, 43-44, 49.

13. The Seller, David Knauf, retained an easement to cross Lot 14A where Woodland Acres Road crossed the property. Longmoor Dep. at 56.

14. At the time Lorraine Longmoor accepted the quitclaim deed to Lot 14A in 1981, she was aware that Woodland Acres Road traveled across the property, which she had just acquired. Longmoor Dep. at 46-47.

15. Lot 14A is not contiguous to the rest of Lorraine Longmoor's property. Longmoor Dep. at 23.

16. Lot 14A is about one-tenth of an acre in size. Longmoor Dep. at 376.

17. As other lots in the Woodland Acres subdivision were bought and sold over the ensuing years, other residents in the subdivision also crossed Lot 14A on Woodland Acres Road in order to gain access to and egress from their respective homes and properties. Longmoor Dep. at 55-57.

18. In 1988, Lorraine Longmoor paid to have that portion of Woodland Acres Road that encroached upon her property at Lots 6, 9 and 10 moved onto to the published right of way depicted in the subdivision plot plan filed with the Town of Barkhamsted where it should have been in the first place. This project did not affect Woodland Acres Road where it crossed Lot 14A. Longmoor Dep. at 61-64.

19. Ms. Longmoor did not obtain a permit to move the road. Longmoor Dep. at 353.

20. Lorraine Longmoor believed that the other residents of Woodland Acres should have been required to share in the expenses she incurred to relocate Woodland Acres Road Longmoor Dep. at 85.

21. Lorraine Longmoor planned to use her ownership of Lot 14A to force other landowners to share in her costs of relocating Woodland Acres Road where it abutted Lots 6, 9 and 10. Longmoor Dep. at 87.

22. In 1988, the O'Gara's, owners of Lot 5 in the Woodland Acres subdivision, asked Lorraine Longmoor for an easement to use Woodland Acres Road where it crossed Lot 14A.

23. Lorraine Longmoor did not grant the O'Gara's an easement, but gave them permission to use the road where it crossed her property at Lot 14A. Longmoor Dep. at 76-78.

24. Lorraine Longmoor did not give anyone else permission to use Woodland Acres Road where it crossed her property on Lot 14A. Longmoor Dep. at 79.

25. According to Lorraine Longmoor, Richard Case, owner of Lot 13 in the Woodland Acres subdivision, had prescriptive rights to use Woodland Acres Road where it crossed Lot 14A because he had been using the road for thirty years. Longmoor Dep. at 95.

26. When Richard Case sold his property to Wayne Gracie and Tracy Garafolo, Lorraine Longmoor orally gave the new owners permission to use Woodland Acres Road where it crossed her property at Lot 14A. Longmoor Dep. at 309.

26. In 1998, Lorraine Longmoor first asked the O'Gara family to pay for an easement to use Woodland Acres Road where it crossed her property at Lot 14A. The O'Gara's did not pay for an easement at that time. Longmoor Dep. at 88.

27. Lorraine Longmoor met with the other landowners and residents of the Woodland Acres subdivision in March of 2000 to discuss easements for them to use Woodland Acres Road where it crossed Lot 14A.

28. Although no easements were agreed to at this meeting, Ms. Longmoor executed two documents whereby she agreed to grant and sign easements in favor of William J. Langer and Kevin and T. Chandler O'Gara, in exchange for their agreeing to make improvements to the Woodland Acres Road. Longmoor Dep. at 324-26. Copies of those documents are attached to the Motion as Exhibit 3.

29. Lorraine Longmoor never granted the easements to William J. Langer and the O'Garas. Longmoor Dep. at 328-38.

30. On March 21, 2000, William and Kate Langer applied to the Zoning Enforcement Officer in Barkhamsted for a permit to build a home on Lot 2 in the Woodland Acres subdivision. Fox Aff. ¶ 9.

31. Lot 2 is across Woodland Acres Road from the property owned by Ms. Longmoor. Fox Aff. ¶ 10.

32.     As was the case with all of the previous persons who had built homes in the Woodland Acres subdivision, the Zoning Enforcement Officer granted the Langers a permit to begin building their home.  Fox Aff. ¶ 11.

33.     The building permit was issue on April 4, 2000, and the Langer's began construction on the property.  Fox Aff. ¶ 11.

34.     Also in April of 2000, based on the advice of her personal lawyer that she possessed the legal right to do so, Lorraine Longmoor first installed two posts and a chain across Woodland Acres Road to block vehicular access into and aggress from the subdivision using Woodland Acres Road where it crossed Lot 14A.  Longmoor Dep. at 93-98, 104, 338.

35.     The neighbors continued to dispute the use of Woodland Acres Road where it crossed Lot 14A, in particular the placement of the chain across the road.  Id.

36.     No official from the Town of Barkhamsted was involved in the dispute involving Ms. Longmoor's placement of the chain.  Longmoor Dep. at 252.

37.     On May 9, 2000, Lorraine Longmoor wrote a letter to Karl Nilsen and complained that excavation and construction, occurring on Mr. Langer's property at 13 Woodland Acres, was not completely protected by a siltation fence and that runoff from Mr. Langer's property was draining under Woodland Acres Road, onto her property, and into a pond located on her property.

38. Ms. Longmoor requested immediate enforcement of zoning regulations. Ltr. From Lorraine Longmoor to Karl Nilsen, dated May 9, 2000, Exhibit 4.

39. As of May 9, 2000, and throughout the time relevant to this litigation, Karl Nilsen was the Zoning Enforcement Officer and the Inland Wetlands Officer in the Town of Barkhamsted, Connecticut. Aff. of Karl Nilsen, dated November 17, 2003, Exhibit 5, ¶ 4.

40. On May 11, 2000, Ms. Longmoor sent another letter to Mr. Nilsen informing him that after heavy rains, her pond was full of silt. Ltr. From Lorraine Longmoor to Karl Nilsen, dated May 11, 2000, Exhibit 6.

41. She stated that she was aware that a silt fence had been installed on the Langer property, but surmised that if the silt fence was effective there must be another source of the alleged siltation problem. Id.

42. In response to Ms. Loongmoor's request, on May 11, 2000, Mr. Nilsen went to Lorraine Longmoor's house and conducted an inspection of her property, including the pond. Nilsen Aff. ¶ 6.

43. Upon inspection, Mr. Nilsen could not see any evidence of siltation. Nilsen Aff. ¶ 7.

44. Mr. Nilsen also inspected the construction site on the Langer's property. Nilsen Aff. ¶ 7.

45. On May 15, 2000, Mr. Nilsen sent a letter to Ms. Longmoor informing her that he had found "no evidence of siltation at the site and . . . was unable to trace it to [Ms. Longmoor's] pond." Ltr. From Karl Nilsen to Lorraine Longmoor, dated May 15, 2000, Exhibit 7.

46. Ms. Longmoor also made a complaint about the alleged siltation problem to the State of Connecticut Department of Environmental Protection ("DEP"). Longmoor Dep. at 347.

47. In response, Brian Golembieski of the DEP conducted an inspection of Ms. Longmoor's pond. Longmoor Dep. at 347-9.

48. The DEP concurred with Mr. Nilsen's findings that there were no wetlands violations caused by the construction on the Langer property. Id. at 349.

49. In addition to the complaints she lodged with the DEP and Mr. Nilsen, Ms. Longmoor sent a letter to Michael Fox on May 19, 2000. Ltr. From Lorraine Longmoor to Michael Fox, dated May 19, 2000, Exhibit 8.

50. As of May 19, 2000, and throughout the time relevant to this litigation, Michael Fox was the First Selectman of the Town of Barkhamsted, Connecticut. Fox Aff. ¶ 3.

51. In her letter to Mr. Fox, Ms. Longmoor requested a cease and desist order on all construction occurring on the Langer property. Fox Aff. ¶ 3.

52. She again maintained that runoff from the Langer property was depositing silt in her pond and the wetlands downstream of the pond. Fox Aff. ¶ 3.

53. She also complained that the runoff was causing serious erosion on the portion of Woodland Acres Road that crossed lot 14A. Exhibit 8.

54. On June 6, 2000, Ms. Longmoor sent a similar letter to Karl Nilsen. Ltr. From Lorraine Longmoor to Karl Nilsen, dated June 6, 2000, Exhibit 9.

55. Again, Ms. Longmoor requested a cease and desist order on all construction occurring on the Langer property. Id.

56. She also complained that the construction was resulting in erosion of Woodland Acres Road and siltation of her pond. Id.

57. On June 14, 2000, Ms. Longmoor sent another letter to Mr. Nilsen, requesting that the Barkhamsted Inland Wetlands Commissions require a permit in order for "work to be performed on Woodland Acres Road." Ltr. From Lorraine Longmoor to Karl Nilsen, dated June 14, 2000, Exhibit 10.

58. According to Ms. Longmoor, she wrote this letter so that in the future, when the neighbors decided to relocate the road by developing the right of way next to Lot 14A, a permit would be required. Longmoor Dep. at 352.

59. In response to these several complaints, Mr. Nilsen sent a letter to Ms. Longmoor on June 27, 2000. Ltr. From Karl Nilsen to Lorraine Longmoor, dated June 27, 2000, Exhibit 11.

60. Mr. Nilsen again indicated that when he conducted an inspection of Mr. Langer's property, he found that there were "no violations as to zoning and or wetlands regulations of the Town of Barkhamsted." Id.

61. He further indicated that that the inspections conducted by the DEP confirmed his findings. Id.

62. Beyond the siltation problem, when Mr. Nilsen visited Ms. Longmoor's property, he observed that the section of Woodland Acres Road owned by Ms. Longmoor was in a state of disrepair. Nilsen Aff. ¶ 10.

63. He observed that there had been significant erosion. Nilsen Aff. ¶ 10.

64. Mr. Nilsen also received several complaints from Ms. Longmoor's neighbors maintaining that because Ms. Longmoor failed to adequately maintain the portion of Woodland Acres Road that passes through lot 14A, silting and erosion had occurred. Nilsen Aff. ¶ 15. Copies of the complaints are attached hereto as Exhibit 12.

65. William Langer also complained that Ms. Longmoor had cut a significant number of trees on her property, leading right up to the edge of her pond and adjacent to other properties in the subdivision. Exhibit 12.

66. Mr. Langer complained that Ms. Longmoor did this with no siltation and sediment controls. Exhibit 12.

67. In light of the erosion problem that he observed, and the several complaints of her neighbors, Mr. Nilsen requested that Ms. Longmoor submit a reconstruction plan for the section of Woodland Acres that was subject to erosion. Nilsen Aff. ¶ 18 .

68. He requested that the plans for the reconstruction be submitted to the Planning and Zoning Office of the Town of Barkhamsted on July 11, 2000. Exhibit 11.

69. Upon receipt of Mr. Nilsen's request for a reconstruction plan, Ms. Longmoor hired an engineer. Longmoor Dep. at 356.

70. She ultimately concluded that the erosion of the portion of Woodland Acres Road that passed through Lot 14A was not her fault. Longmoor Dep. at 356.

71. Accordingly, in spite of Mr. Nilsen's request, Ms. Longmoor did not submit a reconstruction plan. Longmoor Dep. at 356.

72. Even though Ms. Longmoor did not submit the required plan, Mr. Nilsen took no enforcement action against Ms. Longmoor with regard to the erosion or tree cutting. Nilsen Aff. ¶ 19; Longmoor Dep. at 357.

73. In fact, with respect to the tree cutting, Mr. Nilsen concluded that because the logging took place solely on Ms. Longmoor's property, he could not take any action. Nilsen Aff. ¶ 20.

74. In addition to the complaints that Mr. Nilsen received regarding the erosion of Woodland Acres Road, he received several complaints from her neighbors regarding certain zoning violations. Nilsen Aff., ¶ 21.

75. In particular, Ms. Longmoor's neighbors complained that she was operating a boarding house on her residence in violation of zoning regulations of the Town of Barkhamsted. Nilsen Aff. ¶ 22. Copies of these complaints are attached hereto as Exhibit 13.

76. In spite of these complaints regarding alleged zoning violations by Ms. Longmoor, Mr. Nilsen took no enforcement action with respect to any of these claims. Longmoor Dep. at 358

77. By early July 2000, the Langers had essentially completed their construction. On July 13, 2000, the Langer's applied for a certificate of occupancy. Fox Aff. ¶ 12.

78. On July 15, 2000, the Zoning Enforcement Officer signed off on a temporary certificate. Fox Aff. ¶ 12.

79. The final certificate of occupancy was issued on July 19, 2000. Fox Aff. ¶ 12.

80. On August 17, 2000, Ms. Longmoor filed an appeal to the Zoning Board of Appeals in Barkhamsted. Fox Aff. ¶ 13.

81. She contended that the certificate of occupancy should not have been issued because in order for the Langers to access their property, they had to pass over the portion of Woodland Acres

Road that crosses Lot 14A. Lot 14A was owned by Ms. Longmoor, and she had not granted the Langers permission to cross Lot 14A. Fox Aff. ¶ 13.

82. The Zoning Board of Appeals held a hearing on her appeal. The board heard Ms. Longmoor's appeal on November 29, 2000. Fox Aff. ¶ 14.

83. The board denied the appeal on December 6, 2000. The Board ruled that the original transfer of Lot 14A to Ms. Longmoor was improper. Fox Aff. ¶ 15.

84. The Board also found that Ms. Longmoor's appeal was untimely, in that it should have been brought within 30 days from the issuance from the zoning permit for construction. Fox Aff. ¶ 15.

85. They further ruled that Ms. Longmoor admitted that she was aware of the construction and should have appealed earlier. Fox Aff. ¶ 15.

86. Ms. Longmoor appealed the decision of the Zoning Board of Appeals to the Superior Court of Connecticut. Fox Aff. ¶ 16.

87. The court upheld the decision of the Zoning Board of Appeals and the validity of the Langer's certificate of occupancy. Fox Aff. ¶ 16.

88. On or about June 15, 2000, Lorraine Longmoor filed a quiet title action in Connecticut Superior Court, Judicial District of Litchfield, Docket No. CGV-00-0092632S, seeking to clarify her

ownership rights to the property known as Lot 14A in the Woodland Acres subdivision. Longmoor Dep. at 307.

89.	Wholly apart from Ms. Longmoor's dispute regarding with her neighbors, on September 7, 2000, Lorraine Longmoor submitted an Open Burning Application to the Town of Barkhamsted. A copy of the Open Burning Application is attached hereto as Exhibit 14.

90.	According to the application, Ms. Longmoor planned to burn several piles of brush on her property between September 11, 2000 and October 10, 2000. Fox Aff. ¶ 24.

91.	The burn permit was signed and approved by Michael Fox, who, in addition to serving as the First Selectman of the Town of Barkhamsted, served as the town's Open Burn Official. Fox Aff., ¶ 23.

92.	In accordance with his duties as Open Burn Official, Mr. Fox traveled to Ms. Longmoor's residence to inspect the burn piles. Fox Aff., ¶ 25.

93.	It was not uncommon for Mr. Fox to personally inspect burn piles after he received an open burn application. Fox Aff. ¶ 26.

94.	Mr. Fox inspected the burn piles and noticed that they contained clean stumps and roots and slightly larger trees than allowed on the burning permit. Fox Aff. ¶ 27.

95.	He asked that one stump be removed. Fox Aff. ¶ 27.

96.     Despite the fact that Ms. Longmoor was proposing to burn material that exceeded the burn permit allowance, Mr. Fox took no enforcement action against Ms. Longmoor.  Fox Aff. ¶ 28.

97.     Instead, Ms. Longmoor said that she intended to burn the brush in smaller piles and to simply be careful.  Fox Aff. ¶ 29.

98.     Moreover, in or around October 2000, it came to the attention of Karl Nilsen that Ms. Longmoor ha d dug a ditch on her property, across her lawn and to the edge of a wetland bog adjacent to her property.  Nilsen Aff. ¶ 24.

99.     On October 10, 2000, Mr. Nilsen sent a letter to Ms. Longmoor concerning the ditch. Nilsen Aff. ¶ 25.

100.    Mr. Nilsen indicated that it had come to his attention that "she had performed a regulated activity in the wetlands and buffer area of wetlands regulated by the Barkhamsted Wetlands Commissions."  Ltr. From Karl Nilsen to Lorraine Longmoor, dated October 10, 2000, Exhibit 15.

101.    The letter instructed Ms. Longmoor to immediately cease work with respect to the ditch, to install sediment controls, and to appear before the Inland Wetland Commission to show cause why she should have been permitted to dig the ditch.  Id.

102.    In response to Mr. Nilsen's letter regarding the ditch, Ms. Longmoor prepared a two page document explaining why, in her opinion, it was permissible for her to have dug the ditch.  A copy of that document is attached hereto as Exhibit 16.

103. Ms. Longmoor attended a hearing before the Inland Wetland Commission on November 7, 2000 where she read her two-page response to Mr. Nilsen's letter to the Inland Wetland Commission. Longmoor Dep. at 360.

104. Following Ms. Longmoor's presentation at the hearing, no further enforcement action has been taken against her with respect to the ditch. Nilsen Aff. ¶ 28.

        RESPECTFULLY SUBMITTED,
        DEFENDANTS,
        KARL NILSEN, MICHAEL FOX,
        TOWN OF BARKHAMSTED, and BARKHAMSTED
        INLAND WETLAND COMMISSION


By:_____
        JAMES N. TALLBERG, ESQ.
        Federal Bar Number Ct17849
        MATTHEW FREIMUTH, ESQ.
        Federal Bar Number Ct25245
        UPDIKE, KELLY & SPELLACY, P.C.
        One State St., P.O. Box 231277
        Hartford, CT 06123-1277
        Tel. No. (860) 548-2600

**CERTIFICATION**

I hereby certify that a copy of the foregoing has been sent via U.S. Mail, postage prepaid, to the following counsel of record, this ____ day of November 20003:

John R. Williams, Esq.
William & Pattis, LLC
51 Elm Street, Suite 409
New Haven, CT 06510

Stephen R. Sarnoski, Esq.
Assistant Attorney General
MacKenzie Hall
110 Sherman Street
Hartford, CT 06105

Jason Vicente, Esq.
Pepe & Hazard
Goodwin Square
Hartford, CT 06103

By:_____
    MATTHEW FREIMUTH, ESQ.