**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| LORRAINE LONGMOOR, *et al.*, | : | NO. 3:02CV-1595(JBA) |
| *plaintiff*, | : | |
| | : | |
| V. | : | |
| | : | |
| KARL NILSEN, *et al.*, | : | |
| *defendants.* | : | NOVEMBER 20, 2003 |

## <u>BARKHAMSTED DEFENDANTS' MOTION FOR SUMMARY JUDGMENT</u>

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, and Local Rule 56, the defendants, Karl Nilsen, Michael Fox, the Town of Barkhamsted, and the Barkhamsted Inland Wetlands Commission (collectively, the "Barkhamsted Defendants"), move for summary judgment with respect to plaintiffs' remaining claims, as stated in the Amended Complaint, dated November 7, 2002. There remains no genuine issue to be tried in the above-captioned matter because: 1) the Barkhamsted Defendants did not violate plaintiffs' equal protection or due process rights as guaranteed under the 14th Amendment to the United States Constitution; 2) the Barkhamsted Defendants are not liable for intentional infliction of emotional distress in violation of the Connecticut common law; and 3) the individual Barkhamsted Defendants are entitled to qualified immunity for their actions as alleged in the Complaint.

343921

In support of this motion for summary judgment, the defendants offer the following documents:

1.  Excerpts from Deposition Transcript of Lorraine Longmoor (various dates);

2.  Affidavit of Michael Fox, dated November 17, 2003;

3.  One agreement for easement to Kevin and Chandler O'Gara, dated March 19, 2000 and one agreement for easement to William J. Langer, dated March 19, 2000;

4.  Letter from Lorraine Longmoor to Karl Nilsen, dated May 9, 2000;

5.  Affidavit of Karl Nilsen, dated November 17, 2003;

6.  Letter from Lorraine Longmoor to Karl Nilsen, dated May 11, 2000;

7.  Letter from Karl Nilsen to Lorraine Longmoor, dated May 15, 2000;

8.  Letter from Lorraine Longmoor to Michael Fox, dated May 19, 2000;

9.  Letter from Lorraine Longmoor to Karl Nilsen, dated June 6, 2000;

10. Letter from Lorraine Longmoor to Karl Nilsen, dated June 14, 2000;

11. Letter from Karl Nilsen to Lorraine Longmoor, dated June 27, 2000;

12. Complaints submitted to Planning and Zoning / Inland Wetlands from Ms. Longmoor's neighbors Re: Inadequate maintenance (various dates);

13. Complaints submitted to Planning and Zoning / Inland Wetlands from Ms. Longmoor's neighbors Re: Boarding House (various dates);

14.     Open Burning Application to the Town of Barkhamsted submitted by Lorraine

      Longmoor, dated September 2, 2000;

15.     Letter from Karl Nilsen to Lorraine Longmoor, dated October 10, 2000; and

16.     Statement to Show Cause submitted by Lorraine Longmoor.


      WHEREFORE, the Barkhamsted Defendants respectfully request summary judgment be

entered in their favor.

                  RESPECTFULLY SUBMITTED,
                  DEFENDANTS,
                  KARL NILSEN, MICHAEL FOX,
                  TOWN OF BARKHAMSTED, and BARKHAMSTED
                  INLAND WETLAND COMMISSION


                  By:_____
                      JAMES N. TALLBERG, ESQ.
                      Federal Bar Number Ct17849
                      MATTHEW FREIMUTH, ESQ.
                      Federal Bar Number Ct25245
                      UPDIKE, KELLY & SPELLACY, P.C.
                      One State St., P.O. Box 231277
                      Hartford, CT 06123-1277
                      Tel. No. (860) 548-2600

## **CERTIFICATION**

I hereby certify that a copy of the foregoing has been sent via U.S. Mail, postage prepaid, to

the following counsel of record, this _____ day of November 20003:

John R. Williams, Esq.
William & Pattis, LLC
51 Elm Street, Suite 409
New Haven, CT 06510

Stephen R. Sarnoski, Esq.
Assistant Attorney General
MacKenzie Hall
110 Sherman Street
Hartford, CT 06105

Jason Vicente, Esq.
Pepe & Hazard
Goodwin Square
Hartford, CT 06103

By:_____
        MATTHEW FREIMUTH, ESQ.

343921

# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| LORRAINE LONGMOOR, *et al.*, | : | NO. 3:02CV-1595(JBA) |
| *plaintiff*, | : | |
| | : | |
| V. | : | |
| | : | |
| KARL NILSEN, *et al.*, | : | |
| *defendants.* | : | NOVEMBER 20, 2003 |

## MEMORANDUM OF LAW IN SUPPORT OF
## BARKHAMSTED DEFENDANTS' MOTION FOR SUMMARY JUDGEMENT

Plaintiffs, Lorraine Longmoor and Lyndsey Keene, bring this action pursuant to 42 U.S.C. § 1983, alleging that the defendants, Karl Nilsen, Michael Fox, the Town of Barkhamsted, and the Barkhamsted Inland Wetlands Commission (collectively, the "Barkhamsted Defendants"), violated their federal civil rights.  In particular, plaintiffs allege that the Barkhamsted Defendants violated their rights guaranteed under the equal protection and due process clauses of the Fourteenth Amendment to the United States Constitution.  Plaintiffs also bring a claim under Connecticut law for intentional infliction of emotion distress.

The undisputed facts do not support any of these claims.  The evidence reveals that beginning around March 2000, through the present, the plaintiffs were engaged in a bitter property rights dispute with their neighbors.  In the course of that private dispute, Ms. Longmoor and the neighboring property owners sought to draw the Barkhamsted Defendants into the dispute by filing

complaints about each other. The evidence demonstrates the Barkhamsted Defendants handled the complaints of Ms. Longmoor and her neighbors in a perfectly reasonable, rational and fair manner. Contrary to the facts, however, Ms. Longmoor brings this action alleging that in violation of her equal protection rights, the Barkhamsted Defendants required her to obtain certain permits while concomitantly refusing to enforce wetlands regulations against her neighbors. She also alleges that by issuing a cease and desist order against her, the Barkhamsted Defendants violated her due process rights. Based in part on these unsupported allegations, the plaintiffs seek compensatory damages, punitive damages, and attorneys fees pursuant to 42 U.S.C. § 1988.

On September 26, 2003, the Court, pursuant to the Barkhamsted Defendants' Motion to Dismiss, dismissed plaintiffs' claim that the actions of the Barkhamsted Defendants constituted a Bill of Attainder. Because the evidence cannot support plaintiffs' remaining causes of action, the Barkhamsted Defendants now move for summary judgment with respect to plaintiffs' claims for violation of their rights under the equal protection and due process clauses and the state law claim for intentional infliction of emotional distress.

**FACTUAL BACKGROUND**

I.     **The History of Woodland Acres Road and the Woodland Acres Subdivision**

      The plaintiff, Lorraine Longmoor, resides at 24 Woodland Acres Road in Barkhamsted, Connecticut, with her live-in boyfriend, Lyndsey Keene.[1]  Deposition Transcript of Lorraine Longmoor ("Longmoor Dep."), at 5, 7.  Quoted excerpts from Ms. Longmoor's deposition transcript are attached as Exhibit 1.  Woodland Acres Road is a private dirt road that provides residents of the Woodland Acres subdivision in Barkhamsted, Connecticut, with access to their property.  Affidavit of Michael Fox, dated November 17, 2003, Exhibit 2, ¶ 5. Woodland Acres Road is approximately 900 feet-long and completely unimproved.  The road was constructed by the subdivision developer, Burton Carroll.  Longmoor Dep. at 17, 238.  Mr. Burton still owns the road, and it has never been accepted by the Town of Barkhamsted as a public road.  Id. at 24-25, 41-47.  Accordingly, Mr. Carroll and the property owners in the Woodland Acres subdivision are generally responsible for the road's maintenance and upkeep.  Id. at 95, 324-25.  The Town of Barkhamsted is not.

_____

[1] During the time of the events at issue, Mr. Keene did not have an ownership interest in the property. Longmoore Dep. at 188-89.  Accordingly, the Court dismissed Mr. Keene's claims against the other defendants on September 26, 2003.  Ruling on Motion to Dismiss, dated Sept. 26, 2003.  We respectfully request that the court dismiss Mr. Keene's claims against the Barkhamsted Defendants as well.

Woodland Acres subdivision came into existence before there were any zoning regulations in Barkhamsted.  Id. ¶ 6.  Beginning in 1969, lots were sold and lot buyers began building homes.  With each new home, the Town of Barkhamsted issued a pre-construction building permit and a post-construction certificate of occupancy.  Id. ¶ 7.  Lorraine Longmoor obtained a building permit in 1972 and first moved to the Woodland Acres subdivision in 1973, purchasing Lots 6, 9, 10 and 11.  Her property consisted, in total, of about eight acres of contiguous land.  Longmoor Dep. at 14-16, 22.

At the time Lorraine Longmoor first moved to Woodland Acres, she accessed her home via Woodland Acres Road  Id. at 17, 238.  In the mid-1970's, Lorraine Longmoor discovered that Woodland Acres Road had not been constructed entirely within the 50-foot wide published right of way depicted in the subdivision plot plan filed with the Town of Barkhamsted.  Instead the road encroached onto her property and onto the then designated Lot 14.  Id. at 24-25, 41, 47.  In 1981, David Knauf, the purchaser of Lot 14, was having difficulty securing a mortgage with which to build a home.  Id. at 32.  David Knauf asked Lorraine Longmoor if she would accept a quit claim deed to a small portion of Lot 14, to be redesignated as Lot 14A, to eliminate the encroachment problem.  Lorraine Longmoor agreed to accept a quit claim deed from Mr. Knauf for Lot 14A, giving him $1.00 as consideration for the transfer.  Id. at 32-33, 43-44, 49.

As other lots in the Woodland Acres subdivision were bought and sold over the ensuing years, other residents in the subdivision also crossed Lot 14A on Woodland Acres Road in order to gain access to and egress from their respective homes and properties.  Id. at 55-57.  In 1988, Lorraine Longmoor paid to have that portion of Woodland Acres Road which encroached upon her property at Lots 6, 9 and 10 moved onto the published right of way depicted in the subdivision plot plan filed with the Town of Barkhamsted, where it should have been in the first place.  This project did not affect Woodland Acres Road where it crossed Lot 14A.  Id. at 61-64.  Ms. Longmoor did not take out a permit when she moved the road, nor did she have the road surveyed or engineered.  Id. at 353.  Ms. Longmoor believed that the other residents of Woodland Acres should have been required to share in the expenses she incurred to relocate Woodland Acres Road.  Id. at 87.

II.     **The Dispute Among the Plaintiffs and Their Neighbors**

In 1998, Lorraine Longmoor first asked the O'Gara family, neighboring property owners, to pay for an easement to use Woodland Acres Road where it crossed her property at Lot 14A.  The O'Gara's did not pay for an easement at that time.  Id. at 88.  Lorraine Longmoor also met with the other landowners and residents of the Woodland Acres subdivision in March of 2000 to discuss easements for them to use Woodland Acres Road where it crossed Lot 14A.  Although no easements were agreed to at this meeting, Ms. Longmoor executed two documents whereby she promised to grant and sign easements in favor of the O'Gara's and William and Kate Langer in exchange for their

agreeing to make improvements to the Woodland Acres Road.  Id. at 324-26.  Copies of these

documents are attached as Exhibit 3 to the Motion.  At the time, the Langers had recently acquired a

lot across Woodland Acres Road from Ms. Longmoor and were beginning the process of building a

home.  Id.

Contrary to her promise, however, Lorraine Longmoor never granted the easements to

William J. Langer and the O'Garas.  Id. at 328-38.  Instead, in April of 2000, based on the advice of

her personal lawyer that she possessed the legal right to do so, Lorraine Longmoor first installed two

posts and a chain across Woodland Acres Road to block vehicular access coming into and out of the

subdivision using Woodland Acres Road where it crossed Lot 14A.  Id. at 93-98, 104, 338.  The

neighbors continued to dispute the use of Woodland Acres Road where it crossed Lot 14A, in

particular the placement of the chain across the road.  As the dispute between the neighbors moved

forward, both sides heaped various complaints on the Barkhamsted Defendants.

**III.    The Feuding Neighbors' Complaints to the Barkhamsted Defendants**

On May 9, 2000 and May 11, 2000, Lorraine Longmoor wrote letters to Karl Nilsen, the

Zoning Enforcement Officer and the Inland Wetlands Officer in the Town of Barkhamsted, and

complained that excavation and construction occurring on Mr. Langer's property at 13 Woodland

Acres, was not completely protected by a siltation fence.  She also complained that runoff from Mr.

Langer's property was draining under Woodland Acres Road, onto her property, and into a pond

located on her property.  Ms. Longmoor requested immediate enforcement of zoning regulations.

Ltr. From Lorraine Longmoor to Karl Nilsen, dated May 9, 2000, Exhibit 4.

   In response to Ms. Loongmoor's request, on May 11, 2000, Mr. Nilsen went to Lorraine

Longmoor's house and conducted an inspection of her property, including the pond.  Affidavit of

Karl Nilsen, dated November 17, 2003, Exhibit 5, ¶ 7.  A copy of that letter is attached to the Motion

as Exhibit 6.  Yet upon inspection, Mr. Nilsen could not see any evidence of siltation.  Id. ¶ 7.

Accordingly, on May 15, 2000, Mr. Nilsen sent a letter to Ms. Longmoor informing her that he had

found "no evidence of siltation at the site and  . . . was unable to trace it to [Ms. Longmoor's] pond."

Ltr. From Karl Nilsen to Lorraine Longmoor, dated May 15, 2000, Exhibit 7.  The State of

Connecticut Department of Environmental Protection ("DEP") later confirmed this finding.

Longmoor Dep. at 347-9.  Ms. Longmoor eventually admitted as much in her deposition:

> Q:  Well, do you have a document in which [the DEP] disagree with
>    [Mr. Nilsen's] conclusion?
>
> A:  I don't have the document in front of me.  As I said, they wrote a
>    report, and the report that they wrote was that presently on that day
>    that there were there they found no violation or erosion and
>    sedimentation controls and that the sediment traps and culvert that
>    Mr. Langer had made in front of his house were in their estimation
>    a good thing to do and that they would be – that they would work
>    as long as they were maintained.
>
> Q:  Okay.  Just so it's clear, so the record's clear, the DEP came out,
>    and they said they didn't find any violations on Mr. Langer's
>    property, correct?

   A:  Correct.

Longmoor Dep., Exhibit 1, at 348-49.

  Ms. Longmoor sent another letter a letter to Karl Nilsen on June 6, 2000.  Ltr. From Lorraine Longmoor to Karl Nilsen, dated June 6, 2000, Exhibit 9.  As she had previously requested of Michael Fox, Barkhamsted's First Selectman, Ms. Longmoor requested a cease and desist order on all construction occurring on the Langer property.  She complained that the construction was resulting in erosion of Woodland Acres Road and siltation of her pond.  Id.  On June 14, 2000, Ms. Longmoor sent another letter to Mr. Nilsen, requesting that the Barkhamsted Inland Wetlands Commissions require a permit in order for "work to be performed on Woodland Acres Road."  Ltr. From Lorraine Longmoor to Karl Nilsen, dated June 14, 2000, Exhibit 9 to the 56(c)(1) Statement.

  In response to these several complaints, Mr. Nilsen sent a letter to Ms. Longmoor on June 27, 2000.  Ltr. From Karl Nilsen to Lorraine Longmoor, dated June 27, 2000, Exhibit 10 to the 56(c)(1) Statement.  Mr. Nilsen again indicated that when he conducted an inspection of Mr. Langer's property, he found that there were "no violations as to zoning and or wetlands regulations of the Town of Barkhamsted."  Id.

  The erosion of the portion of Woodland Acres Road that crossed Lot 14A presented a more significant problem, however.  When Mr. Nilsen visited Ms. Longmoor's property, he observed that the section of Woodland Acres Road owned by Ms. Longmoor was in a state of disrepair.  He

observed that there had been significant erosion. Nilsen Aff. ¶ 10. Mr. Nilsen also received several complaints from Ms. Longmoor's neighbors who alleged that because Ms. Longmoor failed to adequately maintain the portion of Woodland Acres Road that passes through Lot 14A, significant erosion had occurred. Id. ¶ 15. Copies of the complaints are attached as Exhibit 12 to the Motion. William Langer also complained that Ms. Longmoor had cut a significant number of trees on her property, leading right up to the edge of her pond and adjacent to other properties in the subdivision. Mr. Langer complained that Ms. Longmoor did this with no siltation and sediment controls.

In light of the erosion problem that he observed, and the several complaints of her neighbors, Mr. Nilsen requested that Ms. Longmoor submit a reconstruction plan for the section of Woodland Acres Road that was subject to erosion. Nilsen Aff. ¶ 18 . He requested that the plans for the reconstruction be submitted to the Planning and Zoning Office of the Town of Barkhamsted on July 11, 2000. Exhibit 11. In spite of Mr. Nilsen's request, Ms. Longmoor did not submit a reconstruction plan. Longmoor Dep. at 356. Even though Ms. Longmoor did not submit the required plan, Mr. Nilsen took no enforcement action against Ms. Longmoor with regard to the erosion or tree cutting. Nilsen Aff. ¶ 19; Longmoor Dep. at 357.[2] In fact, with respect to the tree cutting, Mr. Nilsen

---

[2] In fact, the problems associated with Woodland Acres Road can be attributed to the fact that the owners of this private road have apparently never had it properly surveyed or engineered. Longmoor Dep. 299. Woodland Acres Road is still owned by Burton Carroll, the original developer of the Woodland Acres subdivision. Yet, the plaintiffs have apparently not sought redress from Mr. Carroll,

concluded that because the logging took place solely on Ms. Longmoor's property, he could not take any action.  Nilsen Aff. ¶ 20.

In addition to the complaints that Mr. Nilsen received regarding the erosion of Woodland Acres Road, he received several complaints from her neighbors regarding certain alleged zoning violations.  Id. ¶ 21.  In particular, Ms. Longmoor's neighbors complained that she was operating a boarding house on her residence in violation of zoning regulations of the Town of Barkhamsted.  Id. ¶ 22.  Copies of these complaints are attached as Exhibit 13 to the Motion.  In spite of these complaints regarding alleged zoning violations by Ms. Longmoor, Mr. Nilsen took no enforcement action with respect to any of these claims.  Longmoor Dep. at 358

## IV.    Litigation Between the Woodland Acres Neighbors

Given the dispute between the neighbors regarding the use of Woodland Acres Road and the ownership of Lot 14A, the neighbors properly sought to resolve the disputes in the Connecticut courts.  On or about June 15, 2000, Lorraine Longmoor filed a quiet title action in Connecticut Superior Court, Judicial District of Litchfield, Docket No. GVC-00-00826S, in which she sought clarify her ownership rights to Lot 14A in the subdivision.  Id. at 307.  Ms. Longmoor brought that action against the O'Garas, the Langers and Burton Carroll.  Id.  It was the opinion of the Barkhamsted Defendants, particularly Michael Fox and Karl Nilsen, that this litigation was the result

---

nor have the plaintiffs been able to reach an accord with their neighbors concerning maintenance of

of a private dispute between the neighbors.  The defendants felt it should have been left to the civil courts of the state to resolve this issue.  Fox Aff. ¶ 18; Nilsen Aff. ¶ 29-30.  Accordingly, both Mr. Fox and Mr. Nilsen handled whatever complaints they received from the neighbors about one another with the same degree of care and attention.  Id.

Moreover, on August 17, 2000, Ms. Longmoor filed an appeal to the Zoning Board of Appeals in Barkhamsted contesting the validity of a certificate of occupancy that had been issued to the Langers.  Fox Aff. ¶ 13.  She contended that the certificate of occupancy should not have been issued because in order for the Langers to access their property, they had to pass over the portion of Woodland Acres Road that crosses her property.  Id. ¶ 13.  The Zoning Board of Appeals held a hearing on her appeal and ultimately denied her appeal on December 6, 2000.  Ms. Longmoor appealed the decision of the Zoning Board of Appeals to the Superior Court of Connecticut.  Id. ¶ 16. The court upheld the decision of the Zoning Board of Appeals and the validity of the Langer's certificate of occupancy.  Id.

**V.     The Barkhamsted Defendants' Other Contact with the Plaintiffs**

On September 7, 2000, Lorraine Longmoor submitted an Open Burning Application to the Town of Barkhamsted.  According to the application, Ms. Longmoor planned to burn several piles of brush on her property between September 11, 2000 and October 10, 2000.  Fox Aff. ¶ 24.  The burn

the road they all share.

permit was signed and approved by Michael Fox, who, in addition to serving as the First Selectman of the Town of Barkhamsted, served as the town's Open Burn Official.  Id. ¶ 23.  A copy of the Open Burning Application is attached as Exhibit 14 to the Motion.  In accordance with his duties as Open Burn Official, and in keeping with his relatively common practice, Mr. Fox traveled to Ms. Longmoor's residence to inspect the burn piles.  Id. ¶ 25.  Mr. Fox inspected the burn piles and noticed that they contained clean stumps and roots and slightly larger trees than allowed on the burning permit.  Id. ¶ 27.  He merely asked that one stump be removed.  Id. ¶ 27.  Despite the fact that Ms. Longmoor was proposing to burn material that exceeded the burn permit allowance, Mr. Fox took no enforcement action against Ms. Longmoor.  Id. ¶ 28.

Ms. Longmoor admitted that she was burning materials outside the permitted limits during her deposition:

> Q:    Do you know what the limit was in terms of how wide the limbs could be that could be burned pursuant to the permit?
>
> A.    Yeah, I think it's 3 or 4 inches . . .
>
> Q:    And am I correct in the pile of materials you had set to burn were included branches that were greater than 3 inches in diameter?
>
> A:    Yes, I had everything piled in one pile . . .
>
> Q:    But it was your understanding that the regulations required to only burn materials or limbs of 3 inches or less; isn't that correct?
>
> A.    Correct.

Longmoor Dep. Exhibit 1, at 257-59.

She also admitted that despite the fact that she was planning to burn materials that exceeded

the permit specifications, Mr. Fox took no enforcement action:

> Q:    But am I correct that he didn't prevent you from burning the two
> piles that you had assembled?  He didn't prevent you from doing
> that, did he?
>
> A:    Oh, no.
>
> Q:    And he didn't order you to take any materials off the piles, did he?
> A:    I don't think he ordered me to do anything.  I mean we talked
> about it and that there were some big items in this pile down here
> (indicating) . . .
>
> Q:    But bottom line, he came.  He looked at the piles.  You got your
> permit, and you conducted you burn; is that right?
>
> A:    Yes.

Id. at 264-65.

Moreover, in or around October 2000, it came to the attention of Karl Nilsen that Ms.

Longmoor had dug a ditch on her property, across her lawn and to the edge of a wetland bog adjacent

to her property.  Nilsen Aff. ¶ 24.  On October 10, 2000, Mr. Nilsen sent a letter to Ms. Longmoor

concerning the ditch.  Ltr. From Karl Nilsen to Lorraine Longmoor, dated October 10, 2000, Exhibit

15.  The letter instructed Ms. Longmoor to immediately cease work with respect to the ditch, to

install sediment controls, and to appear before the Inland Wetland Commission to show cause why

she should have been permitted to dig the ditch.  Id.  In response to Mr. Nilsen's letter regarding the ditch, Ms. Longmoor prepared a two page document explaining why, in her opinion, it was permissible for her to have dug the ditch.  A copy of that document is attached as Exhibit 16 to Motion.  Ms. Longmoor attended a hearing before the Inland Wetland Commission on November 7, 2000 where she read her two page response to Mr. Nilsen's letter to the Inland Wetland Commission. Longmoor Dep. at 360.  Following Ms. Longmoor's presentation at the hearing, no further enforcement action has been taken against her with respect to the ditch.  Nilsen Aff. ¶ 28.  Ms. Longmoor confirmed this in her deposition:

> Q:    Has any representative of the Town sent you a letter telling you that you needed to take any action or refrain from taking any action with regard to the ditch that you cut on your property after the show cause hearing?
>
> A:    I don't think so.
>
> Q:    And has any representative of the Town visited your property to discuss that ditch with you after the show cause hearing?
>
> A:    No.

Longmoor Dep., Exhibit 1, at 373.

As articulated more fully below, based on these facts, the Court should grant the Barkhamsted Defendants Motion for Summary Judgment.

## ARGUMENT

A motion for summary judgment should be granted if the court determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the moving party as a matter of law.  Fed. R. Civ. P. 56(c); <u>see</u> generally <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986); <u>Cronin v. Aetna Life Ins. Co.</u>, 46 F.3d 196, 202 (2d Cir. 1995).  The burden of showing that no genuine factual dispute exists rests on the party seeking summary judgment.  <u>Adickes v. S. H. Kress & Co.</u>, 398 U.S. 144 (1970); <u>Cronin</u>, 46 F.3d at 202.

The Second Circuit ruled that "mere conjecture or speculation by the party resisting summary judgment does not provide a basis upon which to deny the motion."  <u>Quarles v. Gen. Motors Corp.</u>, 758 F.2d 839, 840 (2d Cir. 1985).  Instead, "***the plaintiff must offer concrete evidence raising genuine disputes of material fact tending to show that his version of events is more than fanciful.***"  <u>Johnson v. Carpenter Tech. Corp.</u>, 723 F. Supp. 180, 182 (D. Conn. 1989) (emphasis added).  "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]."  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242 (1986).  Thus, once the moving party has satisfied its burden of identifying evidence that demonstrates that no genuine issue of material of fact exists, the party resisting summary judgment is required to go beyond the pleadings, by way of affidavits,

343921                                    15

depositions and interrogatory responses, to demonstrate specific material facts that give rise to a genuine issue.  Celotex, 477 U.S. at 324.

Plaintiffs here can offer no evidence that raises a genuine issue of material fact with respect to any of their remaining claims.  The evidence demonstrates that the claims are not ripe for adjudication given that the Barkhamsted Defendants, particularly the Inland Wetlands Commission, have not made any final determination with respect to Ms. Longmoor's complaints.  Second, even if plaintiffs' claims are ripe, the evidence does not support plaintiffs' claim that the Barkhamsted Defendants violated their equal protection or due process rights.  Moreover, the plaintiffs have no evidence to support their claim for intentional infliction of emotional distress.  Accordingly, summary judgment should be granted in favor of the Barkhamsted Defendants.

I.    **SUMMARY JUDGMENT SHOULD BE GRANTED BECAUSE PLAINTIFFS HAVE NOT OBTAINED A FINAL, REVIEWABLE DECISION FROM THE BARKHAMSTED DEFENDANTS**

All of plaintiffs' federal civil rights claims stem from the Barkhamsted Defendants alleged decision to enforce certain regulations against the plaintiffs, while declining to enforce those same regulations against Ms. Longmoor's neighbors.  The decisions whether or not to not enforce the regulations against the plaintiffs and their neighbors, however, does not constitute final government action, and therefore, plaintiffs' claims are not ripe for adjudication.

343921                                          16

In <u>Williamson County Reg'l Planning Comm'n v. Hamilton Bank</u>, 473 U.S. 172 (1985), the Supreme Court set forth the test for evaluating the ripeness of "takings type claims" that challenge municipal application of land use regulations. Under <u>Williamson</u>, a claim is only ripe when "the government entity charged with enforcing the regulations has rendered a final decision" and where the "plaintiff has sought compensation if the state provides a reasonable certain and adequate provision for obtaining compensation." <u>Id.</u> Cases within the Second Circuit, have applied the <u>Williamson</u> test to equal protection claims and substantive due process claims, like the claims raised here. <u>See, e.g.</u>, <u>Bongartz</u>, 980 F.2d at 96 ("Contrary to [plaintiff's] assertion, a substantive due process claim . . . is subject to both prongs of the <u>Williamson</u> ripeness test."); <u>Celantano v. City of West Haven</u>, 815 F. Supp. 561, 566-67 (D. Conn. 1993) (an equal protection claim in the land use context is similarly subject to the ripeness inquiry). The second prong of the <u>Williamson</u> test does not apply in the present case, however. "The requirement that a plaintiff seek compensation in state court is . . . derived from the Takings Clause" of the Fifth Amendment, to which a due process and equal protection claims are largely unrelated. <u>Bongartz</u>, 980 F.2d at 96. Thus, finality is the key determinative factor for ripeness in the present case.

The finality requirement is concerned with whether the initial decision-maker has arrived at a definitive position on the issue that inflicts an actual concrete injury on the property owner. <u>Williamson</u>, 473 U.S. at 193. Unless a court has a final decision before it, it cannot determine

whether a claimant was deprived of property or whether the government conduct was irrational. Bongrantz, 980 F.2d at 980. Particularly, in the equal protection context, only when the property owner receives a final definitive decision regarding how the local agency will apply the regulations to the property in issue will the district court be able to review the alleged dissimilar treatment accorded similarly situated landowners. Id.

In the present case, it is apparent that the plaintiffs' failed to obtain a final, reviewable decision from the Inland Wetlands Commission or any of the Barkhamsted Defendants regarding the application of regulations to themselves or the neighbors. Mr. Nilsen's determination that there was no siltation resulting from the Langer's construction site, and hence his decision to not enforce any inland wetlands regulations against them, does not constitute a final decision within the meaning of Williamson. Ms. Longmoor could appeal that decision to the entire Inland Wetlands Commission, or, as she ultimately did, to the state DEP. She made no formal petition to the commission or anyone else. Instead, she has prematurely hailed Mr. Nilsen and the Barkhamsted Defendants into court and alleged a violation of her federal rights.

Likewise, Mr. Nilsen's decision to issue a cease and desist order concerning the ditch on her property was not a final government action. With respect to the issuance of a cease and desist order, Ms. Longmoor is entitled to pursue an appeal of the decision to the Connecticut Superior Court under Conn. Gen. Stat. § 22a-43. That section provides that "any person aggrieved by any regulation,

order, decision or action of [a wetlands committee] may appeal to the superior court . . . ."  Indeed, a

similar appeal was taken in Miller v. Conservation Comm. of Salem, 27 Conn. App. 590 (1992).

Again, rather than pursuing her appeal of what is ultimately a private dispute among landowners, Ms.

Longmoor has brought this premature action alleging a federal violation.  This is impermissible under

Williamson and its progeny.  Accordingly, summary judgment should be granted for the

Barkhamsted Defendants.

Even if this court concludes that plaintiffs' claims are ripe, however, the court should grant

summary judgment for the Barkhamsted Defendants on the merits of the claims.

**II.    THE BARKHAMSTED DEFENDANTS ARE ENTITLED TO JUDGMENT
ON THE PLAINTIFFS' CLAIMS FOR VIOLATION OF THEIR EQUAL
PROTECTION RIGHTS GUARANTEED IN THE FOURTHEENTH
AMENDMENT TO THE UNITED STATES CONSTITUTION**

The Fourteenth Amendment to the United States Constitution declares that "no State shall . . .

deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. Amend XIV,

§ 1.  The equal protection clause requires that all similarly situated persons be treated alike."  City of

Cleburne v. Cleburne Living Ctr., Inc., 473 U.S. 432 (1985).  Generally, claims brought pursuant to

the equal protection clause involve discrimination against people based on their membership in a

vulnerable class.  Typical equal protection claims are brought by a plaintiff who alleges that a law or

policy that "expressly classifies persons on the basis of race" or some other prohibited basis for

discriminatory treatment violates the provisions of the Equal Protection clause.  See, e.g., Adarand

Constructors, Inc. v. Pena, 515 U.S. 200  (1995).  A plaintiff may also identify a facially neutral law or policy that had been applied in an intentionally discriminatory manner.  See, e.g., Yick Wo v. Hopkins, 118 U.S. 356 (1886).   In each of these instances, a plaintiff's membership in a particular class of persons is essential to the viability of the equal protection claim.

Courts have long recognized that the equal protection guarantee also extends to individuals who allege no specific class membership, but who allege invidious treatment at the hands of a government actor.  See, e.g., LeClair v. Saunders, 627 F.2d 606, 608-10 (2d Cir. 1980) (recognizing that plaintiff could bring an equal protection claim for "selective enforcement" or prosecution by government actor pursuant to a lawful state regulation even though plaintiff alleges no membership in a particular class of persons).  The Supreme Court affirmed that the equal protection clause encompasses such "class of one" or "selective enforcement" claims and set forth the requirements for pleading such a claim in Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000).  Specifically, the Court held that "our cases have recognized successful equal protection claims broght by a class of one, where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."  Id. at 564.

Plaintiffs' equal protection claims here may only be construed as the kind of  "class of one" or "selective enforcement" claim governed by Olech and similar cases.  Plaintiffs here allege no membership in a specific class of persons.  They seek damages for what they allege to be selective

enforcement of the Town of Barkhamsted's zoning and inland wetlands regulations against them. Specifically, they allege that "all of the defendants have acted . . . with intent to discriminate, and with no rational basis, and have thereby deprived the plaintiffs of equal protection of the laws by treating them differently from similarly situated landowners without any rational basis for the said discrimination."  Am. Compl. ¶ 11.  Plaintiffs set forth several factual allegations to support their allegations that the Barkhamsted Defendants acted in violation of their official duties.  Am. Compl. ¶ 9E, G-R.  While the plaintiffs may have alleged facts sufficient to meet the minimal pleading requirement for a class of one equal protection claim, as established by Olech, they are unable to produce evidence sufficient to overcome higher burden on summary judgment.  See e.g., De Muria v. Hawkes, 328 F.3d 704, 707 (2d Cir. 2003) (acknowledging that although plaintiff successfully pleaded a class of one claim, the plaintiff face a significant hurdle on summary judgment in finding evidence to prove their allegations of an equal protection violation).

        At the summary judgment stage, the Second Circuit requires that in order to prevail on a class of one equal protection claim for selective enforcement of a legitimate government regulation, plaintiffs have traditionally been required to provide evidence that (1) that they were treated differently from other similarly situated individuals, and (2) that such differential treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise

343921                                   21

of constitutional rights, or malicious or bad faith intent to inure a person.  <u>Harlen Assoc. v. Village of Mineola</u>, 273 F.3d 494 (2d Cir. 2001); <u>LeClair</u>, 627 F.2d at 609-10.

   With respect to the first prong, plaintiffs can offer nothing to demonstrate that the Barkhamsted Defendants treated them differently from other similarly situated individuals.  While plaintiffs complaint allege that "all of the defendants . . . have thereby deprived the plaintiffs of equal protection of the laws by treating them differently from similarly situated landowners without any rational basis for the said discrimination," Ms. Longmoor's own deposition testimony indicates that plaintiffs do not have evidence to support such this allegation.

   When asked to identify how Mr. Fox had violated her rights, specifically her equal protection rights, Ms. Longmoor indicated that he had come to inspect her burn piles when he had not done so with others who had applied for burn permits.  In her deposition, Ms. Longmoor admitted, however, that she had no evidence with respect to Mr. Fox's typical practices—specifically, whether he had inspected the burn piles of other permit applicants:

>   Q:    Okay.  And you don't know whether Mr. Fox had ever gone out and taken a look at a burn pile before it was burned; isn't that correct?
>
>   A:    Right.
>
>   Q:    Because you haven't traveled with Mr. Fox on his duties so you don't know if he had ever gone out and examine other burn piles; is that correct?
>
>   A:    Correct.

Longmoor Dep., Exhibit 1, at 268-69.  While Ms. Longmoor does not have the evidence, Mr. Fox's

sworn affidavit indicates that in conformance with his duties as Barkhamsted's Open Burn Official, it

is not uncommon for him to inspect applicants burn piles.  Ms. Longmoor's allegation that she was

treated differently in this regard is unsupported.

     Ms. Longmoor also alleges that the Barkhamsted Defendants enforced zoning and inland

wetlands regulations against her, while failing to enforce the same regulations against her neighbors.

She alleges, for example, that Karl Nilsen ignored evidence that the Langer's construction was

causing her pond to fill with silt, yet required her to submit it reconstruction report with regard to

erosion that occurred on the portion of Woodland Acres Road that crossed Lot 14A.  This allegation

is similarly unsupported by the undisputed facts.  First, the state DEP confirmed that there was no

siltation from the Langer's construction site.  Longmoor Dep. 347-9.  And secondly, there is no

evidence that Mr. Nilsen took any enforcement action against Ms. Longmoor with respect to the

erosion.

     With respect to the ditch Ms. Longmoor dug into a wetland area, Karl Nilsen and the Inland

Wetland Commission required Ms. Longmoor to show cause why she should have been permitted to

dig the ditch.  The ditch was admittedly cut into an environmentally sensitive area, a bog.  Id. at 368.

After a hearing before the commission, and Ms. Longmoor's testimony at that hearing, the

Barkhamsted Defendants took no enforcement action against Ms. Longmoor whatsoever with respect

to the ditch.  As with all these allegations of differential treatment, it cannot be said that Ms.

Longmoor was subject to enforcement of certain regulations, while her neighbors' violations were

ignored.

 As is the case here, where plaintiffs cannot demonstrate unequal treatment, the equal

protection claim must fail on a motion for summary judgment.  See, e.g., Presnick v. Delaney, 33

Fed. Appx. 5, 6 (2d Cir. 2002) (rejecting plaintiffs' claim for violation of the equal protection clause

where "plaintiff has not shown that similarly situated individuals were treated differently."); Rossi v.

City of New York, 75 Fed. Appx. 18, 20-21 (2d Cir. 2003) (rejecting claim of selective enforcement

of vending laws where plaintiff did not point to others who were treated differently by city agency in

application of the laws).

 Even assuming that plaintiffs could demonstrate that the Barkhamsted Defendants treated

them differently from an identifiable group, plaintiffs will be unable to produce evidence to satisfy

the second prong of the Second Circuit's test for liability on a theory of selective enforcement.  The

plaintiffs offer no evidence that any alleged selective enforcement occurred because of their race,

nationality, or other invidious reasons.  Plaintiffs have no evidence to support such a claim.  In fact,

plaintiffs offer nothing but conjecture and speculation with regard to the subjective motivations of the

Barkhamsted Defendants.  Accordingly, the Barkhamsted Defendants summary judgment motion

should be granted.  Harlen, 273 F.3d at 502 ("Although the issue of whether an action was motivated

by malice generally is a question of fact properly left to the jury, we will uphold a grant of summary

judgment where the nonmoving party adduces nothing more than speculation to support its claims.");

Lisa's Party City, Inc. v. Town of Henrietta, 185 F.3d 12, 17 (2d Cir. 1999) (affirming grant of

summary judgment where "appellant's assertion that the Town enforced the ordinance against it with

an impermissible motivation was sheer conjecture and speculation.") (internal quotations omitted);

LeClair, 627 F.2d at 610 (same).

It should be noted that some courts have suggested that the Supreme Court's decision in

Olech modified the two-prong test first established by the Second Circuit in LeClair.  See, e.g.,

Jackson v. Burke, 256 F.3d 93, 97 (2d Cir. 2001) (noting in dicta that in light of Olech's pleading

requirement, "proof of subjective ill will is not an essential element of a class of one equal protection

claim").  Other courts disagree.  See, e.g., Hilton v. City of Wheeling, 209 F.3d 1005, 1008 (7th Cir.

2000) (holding that Olech did not remove the requirement that a plaintiff alleging an equal protection

violation based on selective enforcement prove that the governmental action was motivated by

personal animus); Shipp v. McMahon, 234 F.3d 907, 916 (5th Cir. 2000) (same).  The Second Circuit

has not yet resolved the question of whether a plaintiff must still prove the second prong of the

LeClair test.

Even if the Second Circuit concludes that Olech modified the LeClair two-prong test, under

Olech, the plaintiff still must plead and present evidence that the government action was "irrational

and wholly arbitrary." <u>See, e.g.</u>, <u>Harlen</u>, 273 F.3d at 499-500 (and cases cited therein). Plaintiffs are unable to do so, thus the Barkhamsted Defendants are entitled to summary judgment.

In order to establish that a government official is acting irrationally, the plaintiffs must demonstrate that they acted "with no legitimate reason for its decision." <u>Crowley v. Courville</u>, 76 F.3d 47, 52 (2d Cir. 1996). With respect to all of the actions taken by the Barkhamsted Defendants concerning Ms. Longmoor, their conduct was entirely rational, and a legitimate reason can be found for each.

First, the legitimacy of Mr. Nilsen's decision to take no action after Ms. Longmoor complained that her neighbor's activities were causing siltation on her property is supported by the fact that, like Mr. Nilsen, the DEP concluded that there was no evidence of siltation on Ms. Longmoor's property. Longmoor Dep. at 347-49. Second, Mr. Nilsen's request that Ms. Longmoor provide a reconstruction report after he observed significant erosion on her property seems equally reasonable. The neighbors could not agree on who would be responsible for maintenance of the roadway. The conditions had deteriorated significantly, and several of Ms. Longmoor's neighbors had filed complaints about the condition of Woodland Acres Road.

Third, the decision to require Ms. Longmoor to show cause why she should have been permitted to dig a ditch on her property, seems equally legitimate in light of the fact that Ms. Longmoor cut ditch into a bog adjacent to her property. This constituted a regulated activity

governed by inland wetlands regulations. Contrary to Ms. Longmoor's allegations that her ditch digging activity did not require a permit, Am. Compl. ¶ 9(O), the digging of a ditch into the bog is clearly a regulated activity according to Conn. Gen. Stat. § 22a-9, which defines "regulated activity" as "dredging, excavation or removal of soil . . . from any wetland . . . ." Such a regulated activity certainly requires a permit under Connecticut law. Conn. Gen Stat. § 22a-32 (West 2003) ("No regulated activity shall be conducted upon any wetland without a permit.").

In sum, because plaintiff has no evidence indicating that similarly situated persons were treated differently by the Barkhamsted Defendants, and because plaintiffs cannot demonstrate that the Barkhamsted Defendants were motivated by any invidious reasons or ill-will, bad faith, malice, their equal protection claims fail and summary judgment should be granted in favor of the Barkhamsted Defendants. Moreover, even if plaintiffs are not required to provide evidence with respect to the Barkhamsted Defendants subjective intent, none of the evidence indicates that the Barkhamsted Defendants acted irrationally or without a legitimate purpose. Accordingly, plaintiffs' claims against the Barkhamsted Defendants for violation of the equal protection clause must fail.

III.    **THE DEFENDANTS ARE ENTITLED TO JUDGMENT IN THEIR FAVOR ON THE PLAINTIFF'S DUE PROCESS CLAIMS**

Plaintiffs also bring a claim against the Barkhamsted Defendants alleging that they "deprived the plaintiffs of substantive due process of law and procedural due process of law, in violation of the Fourteenth Amendment to the United States Constitution." Am. Compl. ¶ 14. The Fourteenth

Amendment provides that a state actor may not "deprive any person of life, liberty or property without due process of law[.]"  U.S. Const. Amend. XIV.  In order to maintain his due process claims, the plaintiff must allege, and provide a proper evidentiary foundation for, the existence of some facts that would establish that the defendants deprived him of a constitutionally protected property or liberty interest.  Bd. of Regents v. Roth, 408 U.S. 564, 569-71 (1972).

Plaintiffs have made the conclusory allegation that the defendants' actions have deprived them of their right to both procedural and substantive due process. Am. Compl. ¶ 14.  But plaintiffs have failed to allege any facts that would support either claim.  Accordingly, the Barkhamsted Defendants are entitled to summary judgment.

"In order to sustain an action for deprivation of property without due process of law, a plaintiff must 'first identify a property right, second show that the state has deprived him of that right, and third show that the deprivation was effected without due process.'"  Local 342 v. Town of Huntington, 31 F.3d 1191, 1194 (2d Cir. 1994) (quoting Mehta v. Surles, 905 F.2d 595, 598 (2d Cir. 1990) (per curium)).  The property right that the plaintiff must identify is generally created by state law.  Cybulski v. Cooper, 891 F. Supp. 68, 70 (D. Conn. 1995) (citing Bd. of Regents v. Roth, 408 U.S. at 576-77).  In addition, constitutionally-protected property interests may also be created by contract or mutual agreement.  Id. (citing Brock v. Roadway Express, Inc., 481 U.S. 252, 260-61 (1987)).

The Second Circuit has been hesitant to expand the definition of "property" within the context of the Fourteenth Amendment.  See S&D Maint. Co., Inc. v. Goldin, 844 F.2d 962, 967 (2d Cir. 1988) ("the course of the law in this Circuit has not moved beyond according procedural due process protection to interests other than those well within the contexts illustrated by Goldberg v. Kelley, 3987 U.S. 254 (1970) and Roth").  It is well established and often noted that property rights "are not created by the Constitution . . . but stem from an independent source."  Loudermill, 470 U.S. at 538, 105 S.Ct. at 1491.

Plaintiffs' procedural due process claim is not explicit with regard to exactly what property interest they have been deprived of.  Presumably, plaintiffs mean to allege that Inland Wetlands Commissions' issuance of a cease and desist order affected their property rights without due process of the law.  Indeed, based on the Amended Complaint, the Barkhamsted Defendants cannot conceive of another possible theory whereby plaintiffs could successfully allege a violation of their procedural due process rights.  While the Barkhamsted defendants do not contest that the defendants have a legitimate property interest, whatever effect that Mr. Nilsen's decision to issue a cease and desist order had on the plaintiffs property interest, the plaintiffs were afforded due process.

 "[T]he deprivation by state action of a constitutionally protected interest in 'life, liberty or property' is not itself unconstitutional; what is unconstitutional is the deprivation of such an interest without due process of law."  Zinermon v. Burch, 494 U.S. 113, 125 (1990). The individual is only

entitled to notice and an opportunity to be heard.  <u>Loudermill</u>, 470 U.S. at 546; <u>Roth</u>, 408 U.S. at 570.

"The fundamental requirement of due process is the right to be heard at 'a meaningful time and in a

meaningful manner.'"  <u>Mathews v. Eldridge</u>, 424 U.S. 319, 333 (1976) (quoting <u>Armstrong v.

Manzo</u>, 380 U.S. 545, 552 (1965)).

   After Mr. Nilsen and the Town of Barkhamsted issued the cease and desist order requiring

Ms. Longmoor to show cause why she should be permitted to dig the ditch on her property, the

Inland Wetlands Commission held a duly noticed, public hearing with respect to the order.  Ms.

Longmoor was afforded the opportunity to give testimony at this hearing.  And following the hearing,

no further action was taken against Ms. Longmoor.  In light of the fact that Ms. Longmoor was

afforded notice and an opportunity to be heard, the court should grant summary judgment with

respect to plaintiffs' procedural due process claim.  <u>See, e.g.</u>, <u>Huck v. Inland Wetlands and

Watercourses Agency of the Town of Greenwich</u>, 525 A.2d 940, 945 (Conn. 1987) (where local

inland wetlands agency conducted hearing after due notice and allowed parties to produce relevant

evidence, agency decision complied with due process requirements).

   Moreover, assuming plaintiff could demonstrate that she was deprived of some property right

by virtue of the cease and desist order, there exist adequate and appropriate post-deprivation state

remedies whereby the plaintiff is able to gain redress for any perceived wrongdoing on the part of

Karl Nilsen or the Inland Wetlands Commission.  Conn. Gen. Stat. § 22a-43 provides that the

plaintiffs may appeal a decision of the Inland Wetlands Commission decision to the Connecticut Superior Court. Accordingly, judgment must be issued in favor of the Barkhamsted Defendants on plaintiffs' procedural due process claims.

In addition to the procedural due process claim, plaintiffs allege that the conduct of the Barkhamsted defendants violated their substantive due process rights. The due process clause has historically been held to forbid arbitrary infringements of certain personal immunities that are "implicit in the concept of ordered liberty," Palko v. Connecticut, 302 U.S. 319, 325 (1937), and infringements that "shock the conscience." Rochin v. California, 342 U.S. 165, 172 (1952). Such infringements have been held to violate the due process requirements of the Constitution regardless of the procedures that are employed. Monroe v. Pape, 365 U.S. 167, 171-72 (1961). These infringements implicate the "substantive" component of due process.

The evidence in this case cannot support plaintiffs' substantive due process claim against the Barkhamsted Defendants. First, as discussed above, the Barkhamsted Defendants' conduct with respect to their dealings with the plaintiffs was inherently reasonable. Nothing done by any of the Barkhamsted Defendants can be said to rise to the level of behavior that "shocks the conscious." Therefore, plaintiffs' substantive due process claim should fail.

Moreover, substantive due process claims are disfavored in disputes over land use. The Second Circuit has explicitly stated that "arbitrary conduct that might violate zoning regulations as a

matter of state law is not sufficient to demonstrate conduct so outrageously arbitrary as to constitute a gross abuse of governmental authority that will offend the substantive component of the due process clause." Natale v. Town of Ridgefield, 170 F.3d 258, 262 (2d Cir. 1999). The court noted that "the conventional planning dispute—at least when not tainted with fundamental procedural irregularity, racial animus or the like . . . is a matter primarily of concern to the state and does not implicate the Constitution." Id. Indeed, plaintiffs in this case have sought to resolve some of the issues with their neighbors by bringing claims based on state property law in Connecticut State Court. They brought a quiet title action against their neighbors. The quiet title action sought to resolve a dispute among the neighbors regarding the ownership of Lot 14A. In addition to an appeal of the decision of the Barkamsted Zoning Board of Appeals, which plaintiffs ultimately lost. Fox Aff. ¶ 13.

Only after losing their appeal against the zoning board, do plaintiffs seek to dress up a private property rights dispute into a federal civil rights litigation. Yet because the present case does not involve "fundamental procedural irregularity, racial animus, or the like," plaintiffs' substantive due process claims should not withstand this motion. Such a result is consistent with the United States Supreme Court's admonition that the "substantive due process" doctrine is to be applied with "caution and restraint." Moore v. City of East Cleveland, 431 U.S. 494, 502 (1977) (plurality opinion, Powell, J.).

## IV.    THE BARKHAMSTED DEFENDANTS ARE ENTITLED TO QUALIFIED IMMIUNITY FOR THEIR ACTIONS AS ALLEGED IN PLAINTIFF'S COMPLAINT

Even if the plaintiffs have stated a claim that their constitutional rights were violated, a proposition that the Barkhamsted Defendants dispute, Michael Fox and Karl Nilsen are entitled to qualified immunity.  The qualified immunity defense protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Connell v. Signoracci, 153 F.3d 74, 80 (2d Cir. 1998) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  As such, "qualified immunity is an entitlement not to stand trial or face the burdens of litigation."  Id. (internal quotations omitted); Michell v. Forsyth, 472 U.S. 511, 526 (1985).  "The doctrine protects public officials from the risk of potentially ruinous monetary liability which would deter qualified people from public service and safeguards the public interest in having government employees act with independence and without fear of consequences."  Eng v. Coughlin, 858 F.2d 889, 895 (2d Cir. 1988).  "Because the defense of qualified immunity is designed to relieve government officials of the burdens of litigation as well as the threat of damages, summary judgment is encouraged as a device for disposing of claims barred by such immunity."  In Re State Police Litigation, 88 F.3d 111, 123 (2d Cir. 1996); see also Harlow, 457 U.S. at 818; Behrens v. Pelletier, 516 U.S. 299, 308 (1996); Lee v. Sandberg , 136 F.3d 94, 101 (2d Cir. 1997); Cartier v. Lussier, 955 F.2d 841, 844 (2d Cir. 1992).

To establish this defense at the summary judgment stage, "the [officials] must show upon facts that are undisputed either that their conduct did not violate 'clearly established rights' of which a reasonable person would have known, or that it was objectively reasonable to believe that their acts did not violate those clearly established rights." Soares v. State of Connecticut, 8 F.3d 917, 920 (2d Cir. 1993) (internal quotations omitted). A defendant is entitled to summary judgment when "no reasonable jury looking at the evidence in the light most favorable to, and drawing all inferences most favorable to, the plaintiffs, could conclude that is was objectively unreasonable for the defendant to believe that he was acting in a manner that did not clearly violate an established right." Lennon v. Miller, 66 F.3d 416, 420 (2d Cir. 1995) (quoting Robinson v. Via, 821 F.2d 913, 921 (2d Cir. 1987)). The defense of qualified immunity shields government officials from liability for damages on account of his performance of discretionary official functions if (a) his actions did not violate clearly established law, or (b) it was objectively unreasonable for him to believe that his actions did not violate such law. Anderson v. Creighton, 483 U.S. 635, 641 (1987).

Accordingly, the first step in evaluating a qualified immunity defense is to determine whether the plaintiff has alleged a deprivation of a constitutional right at all. Connell v. Signoracci, 153 F.3d 74, 80 (2d Cir. 1998). Only if the plaintiff has sufficiently alleged a constitutional violation is it necessary to determine whether the government official believed his actions violated plaintiff's rights. Malloy v. Briggs. 475 U.S. 335, 341 (1986). Generally, government officials actions are

considered objectively unreasonable when no official of reasonable competence could have made the same choice in similar circumstances.  Williams v. Lopes, 64 F. Supp. 2d 37 (D. Conn. 1999). Simply stated, the test for qualified immunity is an objective one.

As a threshold matter, the Barkhamsted Defendants, like the state police defendants, do not contest the plaintiffs' rights to equal protection and procedural and substantive due process are clearly established rights.  Regardless, the plaintiffs are unable to show that it was objectively unreasonable for the Barkhamsted Defendants' to believe that their conduct was permissible in light of the clearly established rights.  Under this prong of a qualified immunity analysis, one must consider that "it is sometimes difficult for an [official] to determine who the relevant legal doctrine . . . will apply to the factual situation that the official confronts."  Saucier v. Katz, 533 U.S. 194, 200 (2000).  "If the [official's] mistake as to what the law requires is reasonable, however, the [official] is entitled to qualified immunity.  Id.

As discussed above, it was reasonable for the Barkhamsted to take all of the actions that defendant alleges violates their constitutional rights.  Accordingly, Mr. Nilsen and Mr. Fox are protected by qualified immunity.  See, e.g., Salim v. Proulx, 93 F.3d 86, 89 (2d Cir. 1996); Natale v. Town of Ridgefield, 927 F.2d 101, 105 (2d Cir. 1991) (qualified immunity protects officials where denial of permits was based on a reasonable belief that land was not properly subdivided under state law).

Moreover, plaintiffs' claims apparently arise from the alleged failure of the Barkhamsted Defendants to enforce certain regulations against other similarly situated individuals. Enforcement of zoning and inland wetlands regulation is an inherently discretionary function, and therefore, enforcement officials have qualified immunity from liability for failure to enforce the regulations. See, e.g., Town of Plymouth v. Gebelein, No. CVN-9102-1021-PL, 1992 Conn. Super. LEXIS 3427, attached hereto as Tab A (Nov. 19, 1992); Maier v. Tracy, No. 30 17 66, 1992 Conn. Super. LEXIS 2489, attached hereto as Tab B, *4 (Aug. 25, 1992) (noting that where municipal officials are engaged in discretionary acts, there is generally qualified immunity). Accordingly, it has been held that qualified governmental immunity bars claims against a building inspector, city engineer and a zoning enforcement officers for errors or omissions in issuing building permits, and in enforcement of zoning regulations. Id.; Birmingham Condo. Assoc., Inc. v. Birmingham Dev. Co., No. CV-29-55-13-S, 1994 Conn. Super. LEXIS 2867, attached hereto as Tab C, (Nov. 10, 1994). The same should hold true here.

## V.    THE PLAINTIFF'S STATE LAW CLAIMS SHOULD BE DISMISSED

Should this Court find that the plaintiff has failed to establish the requisite elements of his federal claims, the jurisdictional basis for the plaintiffs' pendent state claims will disappear. Where a plaintiff pleads a federal cause of action and derivative state law claims in the same complaint, the state law claims cannot survive a finding that the federal law claims are legally insufficient. See

343921                                          36

<u>Monsky v. Moraghan</u>, 127 F.3d 243, 247 (2d Cir. 1997); <u>Lennon</u>, 66 F.3d at 426 ("Having dismissed

the plaintiff's underlying federal claims, we also dismiss her supplemental state claims of assault,

unlawful imprisonment, and malicious prosecution"); <u>A. Aiudi & Sons v. Plainville</u>, 862 F. Supp.

737, 745 (D. Conn. 1994) (dismissal of claim arising under federal law obliterated court's subject

matter jurisdiction over state law claims).

The plaintiffs' state law claims, namely intentional infliction of emotional distress," arose

from the same factual scenario as their federal claims.  Am. Compl. ¶ 15.  Accordingly, should the

court grant summary judgment on the plaintiff's federal law claims, the court would lack subject

matter jurisdiction over the plaintiff's state law claims, requiring that they be dismissed.  <u>See</u>

<u>Monsky</u>, 127 F. 3d. at 247; <u>Lennon</u>, 66 F.3d at 426; <u>A. Aiudi & Sons</u>, 862 F. Supp. at 745.

Even if the court were to retain jurisdiction over the state law claims, the defendants are

entitled to summary judgment for the following reasons.  In order to state a claim of intentional

infliction of emotional distress, "[I]t must be shown:  (1) that the actor intended to inflict emotional

distress or that he knew or should have known that emotional distress was the likely result of his

conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the

cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was

severe."  <u>Peyton v. Ellis</u>, 510 A.2d 1337 (Conn. 1986) (internal quotation marks omitted).  Whether

the defendants' conduct and the plaintiff's resulting distress are sufficient to satisfy either of these

elements is a question, in the first instance, for the court.  Only where reasonable minds can differ does the question become an issue for the jury to decide.  Id.

Extreme and outrageous conduct is an essential element in to tort of intentional infliction of emotional distress.  Mere insults, indignities, or annoyances that are not extreme and outrageous will not suffice.  Liability for intentional infliction of emotional distress requires conduct exceeding all bounds usually tolerated by decent society, of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind.  DeLaurentis v. New Haven, 597 A.2d 807 (Conn. 1991).  Some courts called upon to determine whether there is a reason to let a jury decide whether alleged conduct could be found to meet "outrageous" standard have focused objective criteria such as whether the defendant was in a position of authority over the plaintiff.  Others have focused on whether the defendant knew of some special susceptibility to emotional abuse on the part of the plaintiff.  Some cases have looked to whether there is a lengthy of continuous patter of harassment conduct over time.  Single incidents are almost never found by courts to be outrageous.  Lucas v. Firine, No. CV 92-0335703, 1993 Conn. Super. LEXIS 1777, attached hereto as Tab D,  (1993).

For all of the reasons cited above regarding the plaintiffs' equal protection and due process claims, the actions of the defendants in this case were not so extreme and outrageous as to support a claim for intentional infliction of emotional distress in violation of Connecticut Common law. Moreover, Ms. Longmoor's testimony at her deposition calls into question the validity of her claim

that any emotional distress she suffered was severe.  A mental health or medical professional for

depression never treated her.  Longmoor Dep. at 391.  At most, all she asserts is that she suffered

from some sleepless nights.  This, in and of itself, does not rise to the level of severe emotional

distress.

**VI.     DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S
        CLAIMS AGAINST THE TOWN OF BARKHAMSTED SHOULD FAIL**

Plaintiffs have not alleged, nor have they provided any evidence, that the Town of

Barkhamsted is directly liable for any wrongdoing.  Moreover, it is well settled that a municipality

may not be held liable under 42 U.S.C §1983 for actions of its employees or officers based upon the

theory of respondeat superior.  Monell v. Dep't of Social Services, 436 U.S. 658, 694 (1978); Zahra

v. Town of Southold, 48 F.3d 674, 685 (2d Cir. 1995).  Rather, "[i]n order to establish municipal

liability for unconstitutional acts by municipal employees [or officers], a plaintiff must show that the

violation of [her] constitutional rights resulted from a municipal policy, custom or practice."  Johnson

v. City of New York, 940 F. Supp. 631, 638 (S.D.N.Y. 1996).  Since the plaintiffs have not alleged a

Monell type claim, and have not provided any evidence that could possibly demonstrate a custom or

practice on the part of the Town of Barkhamsted that resulted in the alleged constitutional violation,

the inclusion of the Town as a defendant in inappropriate.  Therefore, summary judgment should be

granted in favor of the Town of Barkhamsted on all remaining claims.

## CONCLUSION

For the foregoing reasons, the Barkhamsted Defendants Motion for Summary Judgment

should be granted.

RESPECTFULLY SUBMITTED,
DEFENDANTS,
KARL NILSEN, MICHAEL FOX,
TOWN OF BARKHAMSTED, and BARKHAMSTED
INLAND WETLAND COMMISSION


By:_____
        JAMES N. TALLBERG, ESQ.
        Federal Bar Number Ct17849
        MATTHEW FREIMUTH, ESQ.
        Federal Bar Number Ct25245
        UPDIKE, KELLY & SPELLACY, P.C.
        One State St., P.O. Box 231277
        Hartford, CT 06123-1277
        Tel. No. (860) 548-2600

343921

40

## **CERTIFICATION**

I hereby certify that a copy of the foregoing has been sent via U.S. Mail, postage prepaid, to

the following counsel of record, this _____ day of November 20003:

John R. Williams, Esq.
William & Pattis, LLC
51 Elm Street, Suite 409
New Haven, CT 06510

Stephen R. Sarnoski, Esq.
Assistant Attorney General
MacKenzie Hall
110 Sherman Street
Hartford, CT 06105

Jason Vicente, Esq.
Pepe & Hazard
Goodwin Square
Hartford, CT 06103

By:_____
    MATTHEW FREIMUTH, ESQ.