FILED

Nov 21  10 14 AM '03

DISTRICT COURT
NEW HAVEN, CONN.

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| LORRAINE LONGMOOR, *et al.*, *plaintiff*, | : | NO. 3:02CV-1595(JBA) |
| V. | : | |
| KARL NILSEN, *et al.*, *defendants*. | : | NOVEMBER 20, 2003 |

### MEMORANDUM OF LAW IN SUPPORT OF
### BARKHAMSTED DEFENDANTS' MOTION FOR SUMMARY JUDGEMENT

Plaintiffs, Lorraine Longmoor and Lyndsey Keene, bring this action pursuant to 42 U.S.C. § 1983, alleging that the defendants, Karl Nilsen, Michael Fox, the Town of Barkhamsted, and the Barkhamsted Inland Wetlands Commission (collectively, the "Barkhamsted Defendants"), violated their federal civil rights. In particular, plaintiffs allege that the Barkhamsted Defendants violated their rights guaranteed under the equal protection and due process clauses of the Fourteenth Amendment to the United States Constitution. Plaintiffs also bring a claim under Connecticut law for intentional infliction of emotion distress.

The undisputed facts do not support any of these claims. The evidence reveals that beginning around March 2000, through the present, the plaintiffs were engaged in a bitter property rights dispute with their neighbors. In the course of that private dispute, Ms. Longmoor and the neighboring property owners sought to draw the Barkhamsted Defendants into the dispute by filing

343921

complaints about each other. The evidence demonstrates the Barkhamsted Defendants handled the complaints of Ms. Longmoor and her neighbors in a perfectly reasonable, rational and fair manner. Contrary to the facts, however, Ms. Longmoor brings this action alleging that in violation of her equal protection rights, the Barkhamsted Defendants required her to obtain certain permits while concomitantly refusing to enforce wetlands regulations against her neighbors. She also alleges that by issuing a cease and desist order against her, the Barkhamsted Defendants violated her due process rights. Based in part on these unsupported allegations, the plaintiffs seek compensatory damages, punitive damages, and attorneys fees pursuant to 42 U.S.C. § 1988.

On September 26, 2003, the Court, pursuant to the Barkhamsted Defendants' Motion to Dismiss, dismissed plaintiffs' claim that the actions of the Barkhamsted Defendants constituted a Bill of Attainder. Because the evidence cannot support plaintiffs' remaining causes of action, the Barkhamsted Defendants now move for summary judgment with respect to plaintiffs' claims for violation of their rights under the equal protection and due process clauses and the state law claim for intentional infliction of emotional distress.

## FACTUAL BACKGROUND

**I.    The History of Woodland Acres Road and the Woodland Acres Subdivision**

The plaintiff, Lorraine Longmoor, resides at 24 Woodland Acres Road in Barkhamsted, Connecticut, with her live-in boyfriend, Lyndsey Keene.[1] Deposition Transcript of Lorraine Longmoor ("Longmoor Dep."), at 5, 7. Quoted excerpts from Ms. Longmoor's deposition transcript are attached as Exhibit 1. Woodland Acres Road is a private dirt road that provides residents of the Woodland Acres subdivision in Barkhamsted, Connecticut, with access to their property. Affidavit of Michael Fox, dated November 17, 2003, Exhibit 2, ¶ 5. Woodland Acres Road is approximately 900 feet-long and completely unimproved. The road was constructed by the subdivision developer, Burton Carroll. Longmoor Dep. at 17, 238. Mr. Burton still owns the road, and it has never been accepted by the Town of Barkhamsted as a public road. Id. at 24-25, 41-47. Accordingly, Mr. Carroll and the property owners in the Woodland Acres subdivision are generally responsible for the road's maintenance and upkeep. Id. at 95, 324-25. The Town of Barkhamsted is not.

---

[1] During the time of the events at issue, Mr. Keene did not have an ownership interest in the property. Longmoore Dep. at 188-89. Accordingly, the Court dismissed Mr. Keene's claims against the other defendants on September 26, 2003. Ruling on Motion to Dismiss, dated Sept. 26, 2003. We respectfully request that the court dismiss Mr. Keene's claims against the Barkhamsted Defendants as well.

Woodland Acres subdivision came into existence before there were any zoning regulations in Barkhamsted. Id. ¶ 6. Beginning in 1969, lots were sold and lot buyers began building homes. With each new home, the Town of Barkhamsted issued a pre-construction building permit and a post-construction certificate of occupancy. Id. ¶ 7. Lorraine Longmoor obtained a building permit in 1972 and first moved to the Woodland Acres subdivision in 1973, purchasing Lots 6, 9, 10 and 11. Her property consisted, in total, of about eight acres of contiguous land. Longmoor Dep. at 14-16, 22.

At the time Lorraine Longmoor first moved to Woodland Acres, she accessed her home via Woodland Acres Road Id. at 17, 238. In the mid-1970's, Lorraine Longmoor discovered that Woodland Acres Road had not been constructed entirely within the 50-foot wide published right of way depicted in the subdivision plot plan filed with the Town of Barkhamsted. Instead the road encroached onto her property and onto the then designated Lot 14. Id. at 24-25, 41, 47. In 1981, David Knauf, the purchaser of Lot 14, was having difficulty securing a mortgage with which to build a home. Id. at 32. David Knauf asked Lorraine Longmoor if she would accept a quit claim deed to a small portion of Lot 14, to be redesignated as Lot 14A, to eliminate the encroachment problem. Lorraine Longmoor agreed to accept a quit claim deed from Mr. Knauf for Lot 14A, giving him $1.00 as consideration for the transfer. Id. at 32-33, 43-44, 49.

343921                                        4

As other lots in the Woodland Acres subdivision were bought and sold over the ensuing years, other residents in the subdivision also crossed Lot 14A on Woodland Acres Road in order to gain access to and egress from their respective homes and properties. Id. at 55-57. In 1988, Lorraine Longmoor paid to have that portion of Woodland Acres Road which encroached upon her property at Lots 6, 9 and 10 moved onto the published right of way depicted in the subdivision plot plan filed with the Town of Barkhamsted, where it should have been in the first place. This project did not affect Woodland Acres Road where it crossed Lot 14A. Id. at 61-64. Ms. Longmoor did not take out a permit when she moved the road, nor did she have the road surveyed or engineered. Id. at 353. Ms. Longmoor believed that the other residents of Woodland Acres should have been required to share in the expenses she incurred to relocate Woodland Acres Road. Id. at 87.

## II.     The Dispute Among the Plaintiffs and Their Neighbors

In 1998, Lorraine Longmoor first asked the O'Gara family, neighboring property owners, to pay for an easement to use Woodland Acres Road where it crossed her property at Lot 14A. The O'Gara's did not pay for an easement at that time. Id. at 88. Lorraine Longmoor also met with the other landowners and residents of the Woodland Acres subdivision in March of 2000 to discuss easements for them to use Woodland Acres Road where it crossed Lot 14A. Although no easements were agreed to at this meeting, Ms. Longmoor executed two documents whereby she promised to grant and sign easements in favor of the O'Gara's and William and Kate Langer in exchange for their

343921                                             5

agreeing to make improvements to the Woodland Acres Road. Id. at 324-26. Copies of these documents are attached as Exhibit 3 to the Motion. At the time, the Langers had recently acquired a lot across Woodland Acres Road from Ms. Longmoor and were beginning the process of building a home. Id.

Contrary to her promise, however, Lorraine Longmoor never granted the easements to William J. Langer and the O'Garas. Id. at 328-38. Instead, in April of 2000, based on the advice of her personal lawyer that she possessed the legal right to do so, Lorraine Longmoor first installed two posts and a chain across Woodland Acres Road to block vehicular access coming into and out of the subdivision using Woodland Acres Road where it crossed Lot 14A. Id. at 93-98, 104, 338. The neighbors continued to dispute the use of Woodland Acres Road where it crossed Lot 14A, in particular the placement of the chain across the road. As the dispute between the neighbors moved forward, both sides heaped various complaints on the Barkhamsted Defendants.

### III. The Feuding Neighbors' Complaints to the Barkhamsted Defendants

On May 9, 2000 and May 11, 2000, Lorraine Longmoor wrote letters to Karl Nilsen, the Zoning Enforcement Officer and the Inland Wetlands Officer in the Town of Barkhamsted, and complained that excavation and construction occurring on Mr. Langer's property at 13 Woodland Acres, was not completely protected by a siltation fence. She also complained that runoff from Mr. Langer's property was draining under Woodland Acres Road, onto her property, and into a pond

343921              6

located on her property. Ms. Longmoor requested immediate enforcement of zoning regulations. Ltr. From Lorraine Longmoor to Karl Nilsen, dated May 9, 2000, Exhibit 4.

In response to Ms. Loongmoor's request, on May 11, 2000, Mr. Nilsen went to Lorraine Longmoor's house and conducted an inspection of her property, including the pond. Affidavit of Karl Nilsen, dated November 17, 2003, Exhibit 5, ¶ 7. A copy of that letter is attached to the Motion as Exhibit 6. Yet upon inspection, Mr. Nilsen could not see any evidence of siltation. Id. ¶ 7. Accordingly, on May 15, 2000, Mr. Nilsen sent a letter to Ms. Longmoor informing her that he had found "no evidence of siltation at the site and . . . was unable to trace it to [Ms. Longmoor's] pond." Ltr. From Karl Nilsen to Lorraine Longmoor, dated May 15, 2000, Exhibit 7. The State of Connecticut Department of Environmental Protection ("DEP") later confirmed this finding. Longmoor Dep. at 347-9. Ms. Longmoor eventually admitted as much in her deposition:

> Q: Well, do you have a document in which [the DEP] disagree with [Mr. Nilsen's] conclusion?
>
> A: I don't have the document in front of me. As I said, they wrote a report, and the report that they wrote was that presently on that day that there were there they found no violation or erosion and sedimentation controls and that the sediment traps and culvert that Mr. Langer had made in front of his house were in their estimation a good thing to do and that they would be -- that they would work as long as they were maintained.
>
> Q: Okay. Just so it's clear, so the record's clear, the DEP came out, and they said they didn't find any violations on Mr. Langer's property, correct?

343921

7

        A:    Correct.

Longmoor Dep., Exhibit 1, at 348-49.

    Ms. Longmoor sent another letter a letter to Karl Nilsen on June 6, 2000. Ltr. From Lorraine Longmoor to Karl Nilsen, dated June 6, 2000, Exhibit 9. As she had previously requested of Michael Fox, Barkhamsted's First Selectman, Ms. Longmoor requested a cease and desist order on all construction occurring on the Langer property. She complained that the construction was resulting in erosion of Woodland Acres Road and siltation of her pond. Id. On June 14, 2000, Ms. Longmoor sent another letter to Mr. Nilsen, requesting that the Barkhamsted Inland Wetlands Commissions require a permit in order for "work to be performed on Woodland Acres Road." Ltr. From Lorraine Longmoor to Karl Nilsen, dated June 14, 2000, Exhibit 9 to the 56(c)(1) Statement.

    In response to these several complaints, Mr. Nilsen sent a letter to Ms. Longmoor on June 27, 2000. Ltr. From Karl Nilsen to Lorraine Longmoor, dated June 27, 2000, Exhibit 10 to the 56(c)(1) Statement. Mr. Nilsen again indicated that when he conducted an inspection of Mr. Langer's property, he found that there were "no violations as to zoning and or wetlands regulations of the Town of Barkhamsted." Id.

    The erosion of the portion of Woodland Acres Road that crossed Lot 14A presented a more significant problem, however. When Mr. Nilsen visited Ms. Longmoor's property, he observed that the section of Woodland Acres Road owned by Ms. Longmoor was in a state of disrepair. He

343921                                8

observed that there had been significant erosion. Nilsen Aff. ¶ 10. Mr. Nilsen also received several complaints from Ms. Longmoor's neighbors who alleged that because Ms. Longmoor failed to adequately maintain the portion of Woodland Acres Road that passes through Lot 14A, significant erosion had occurred. Id. ¶ 15. Copies of the complaints are attached as Exhibit 12 to the Motion. William Langer also complained that Ms. Longmoor had cut a significant number of trees on her property, leading right up to the edge of her pond and adjacent to other properties in the subdivision. Mr. Langer complained that Ms. Longmoor did this with no siltation and sediment controls.

In light of the erosion problem that he observed, and the several complaints of her neighbors, Mr. Nilsen requested that Ms. Longmoor submit a reconstruction plan for the section of Woodland Acres Road that was subject to erosion. Nilsen Aff. ¶ 18. He requested that the plans for the reconstruction be submitted to the Planning and Zoning Office of the Town of Barkhamsted on July 11, 2000. Exhibit 11. In spite of Mr. Nilsen's request, Ms. Longmoor did not submit a reconstruction plan. Longmoor Dep. at 356. Even though Ms. Longmoor did not submit the required plan, Mr. Nilsen took no enforcement action against Ms. Longmoor with regard to the erosion or tree cutting. Nilsen Aff. ¶ 19; Longmoor Dep. at 357.[2] In fact, with respect to the tree cutting, Mr. Nilsen

---

[2] In fact, the problems associated with Woodland Acres Road can be attributed to the fact that the owners of this private road have apparently never had it properly surveyed or engineered. Longmoor Dep. 299. Woodland Acres Road is still owned by Burton Carroll, the original developer of the Woodland Acres subdivision. Yet, the plaintiffs have apparently not sought redress from Mr. Carroll,

concluded that because the logging took place solely on Ms. Longmoor's property, he could not take any action. Nilsen Aff. ¶ 20.

In addition to the complaints that Mr. Nilsen received regarding the erosion of Woodland Acres Road, he received several complaints from her neighbors regarding certain alleged zoning violations. Id. ¶ 21. In particular, Ms. Longmoor's neighbors complained that she was operating a boarding house on her residence in violation of zoning regulations of the Town of Barkhamsted. Id. ¶ 22. Copies of these complaints are attached as Exhibit 13 to the Motion. In spite of these complaints regarding alleged zoning violations by Ms. Longmoor, Mr. Nilsen took no enforcement action with respect to any of these claims. Longmoor Dep. at 358

### IV. Litigation Between the Woodland Acres Neighbors

Given the dispute between the neighbors regarding the use of Woodland Acres Road and the ownership of Lot 14A, the neighbors properly sought to resolve the disputes in the Connecticut courts. On or about June 15, 2000, Lorraine Longmoor filed a quiet title action in Connecticut Superior Court, Judicial District of Litchfield, Docket No. GVC-00-00826S, in which she sought clarify her ownership rights to Lot 14A in the subdivision. Id. at 307. Ms. Longmoor brought that action against the O'Garas, the Langers and Burton Carroll. Id. It was the opinion of the Barkhamsted Defendants, particularly Michael Fox and Karl Nilsen, that this litigation was the result

---

nor have the plaintiffs been able to reach an accord with their neighbors concerning maintenance of

343921                                    10

of a private dispute between the neighbors. The defendants felt it should have been left to the civil courts of the state to resolve this issue. Fox Aff. ¶ 18; Nilsen Aff. ¶ 29-30. Accordingly, both Mr. Fox and Mr. Nilsen handled whatever complaints they received from the neighbors about one another with the same degree of care and attention. Id.

Moreover, on August 17, 2000, Ms. Longmoor filed an appeal to the Zoning Board of Appeals in Barkhamsted contesting the validity of a certificate of occupancy that had been issued to the Langers. Fox Aff. ¶ 13. She contended that the certificate of occupancy should not have been issued because in order for the Langers to access their property, they had to pass over the portion of Woodland Acres Road that crosses her property. Id. ¶ 13. The Zoning Board of Appeals held a hearing on her appeal and ultimately denied her appeal on December 6, 2000. Ms. Longmoor appealed the decision of the Zoning Board of Appeals to the Superior Court of Connecticut. Id. ¶ 16. The court upheld the decision of the Zoning Board of Appeals and the validity of the Langer's certificate of occupancy. Id.

## V. The Barkhamsted Defendants' Other Contact with the Plaintiffs

On September 7, 2000, Lorraine Longmoor submitted an Open Burning Application to the Town of Barkhamsted. According to the application, Ms. Longmoor planned to burn several piles of brush on her property between September 11, 2000 and October 10, 2000. Fox Aff. ¶ 24. The burn

---

the road they all share.

343921                                11

permit was signed and approved by Michael Fox, who, in addition to serving as the First Selectman of the Town of Barkhamsted, served as the town's Open Burn Official. Id. ¶ 23. A copy of the Open Burning Application is attached as Exhibit 14 to the Motion. In accordance with his duties as Open Burn Official, and in keeping with his relatively common practice, Mr. Fox traveled to Ms. Longmoor's residence to inspect the burn piles. Id. ¶ 25. Mr. Fox inspected the burn piles and noticed that they contained clean stumps and roots and slightly larger trees than allowed on the burning permit. Id. ¶ 27. He merely asked that one stump be removed. Id. ¶ 27. Despite the fact that Ms. Longmoor was proposing to burn material that exceeded the burn permit allowance, Mr. Fox took no enforcement action against Ms. Longmoor. Id. ¶ 28.

Ms. Longmoor admitted that she was burning materials outside the permitted limits during her deposition:

> Q:   Do you know what the limit was in terms of how wide the limbs could be that could be burned pursuant to the permit?
>
> A.   Yeah, I think it's 3 or 4 inches . . .
>
> Q:   And am I correct in the pile of materials you had set to burn were included branches that were greater than 3 inches in diameter?
>
> A:   Yes, I had everything piled in one pile . . .
>
> Q:   But it was your understanding that the regulations required to only burn materials or limbs of 3 inches or less; isn't that correct?
>
> A.   Correct.

343921                                        12

Longmoor Dep. Exhibit 1, at 257-59.

She also admitted that despite the fact that she was planning to burn materials that exceeded the permit specifications, Mr. Fox took no enforcement action:

> Q: But am I correct that he didn't prevent you from burning the two piles that you had assembled? He didn't prevent you from doing that, did he?
>
> A: Oh, no.
>
> Q: And he didn't order you to take any materials off the piles, did he?
> A: I don't think he ordered me to do anything. I mean we talked about it and that there were some big items in this pile down here (indicating) . . .
>
> Q: But bottom line, he came. He looked at the piles. You got your permit, and you conducted you burn; is that right?
>
> A: Yes.

Id. at 264-65.

Moreover, in or around October 2000, it came to the attention of Karl Nilsen that Ms. Longmoor had dug a ditch on her property, across her lawn and to the edge of a wetland bog adjacent to her property. Nilsen Aff. ¶ 24. On October 10, 2000, Mr. Nilsen sent a letter to Ms. Longmoor concerning the ditch. Ltr. From Karl Nilsen to Lorraine Longmoor, dated October 10, 2000, Exhibit 15. The letter instructed Ms. Longmoor to immediately cease work with respect to the ditch, to install sediment controls, and to appear before the Inland Wetland Commission to show cause why

343921                                        13

she should have been permitted to dig the ditch. Id. In response to Mr. Nilsen's letter regarding the ditch, Ms. Longmoor prepared a two page document explaining why, in her opinion, it was permissible for her to have dug the ditch. A copy of that document is attached as Exhibit 16 to Motion. Ms. Longmoor attended a hearing before the Inland Wetland Commission on November 7, 2000 where she read her two page response to Mr. Nilsen's letter to the Inland Wetland Commission. Longmoor Dep. at 360. Following Ms. Longmoor's presentation at the hearing, no further enforcement action has been taken against her with respect to the ditch. Nilsen Aff. ¶ 28. Ms. Longmoor confirmed this in her deposition:

> Q: Has any representative of the Town sent you a letter telling you that you needed to take any action or refrain from taking any action with regard to the ditch that you cut on your property after the show cause hearing?
>
> A: I don't think so.
>
> Q: And has any representative of the Town visited your property to discuss that ditch with you after the show cause hearing?
>
> A: No.

Longmoor Dep., Exhibit 1, at 373.

As articulated more fully below, based on these facts, the Court should grant the Barkhamsted Defendants Motion for Summary Judgment.

## ARGUMENT

A motion for summary judgment should be granted if the court determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the moving party as a matter of law. Fed. R. Civ. P. 56(c); see generally Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Cronin v. Aetna Life Ins. Co., 46 F.3d 196, 202 (2d Cir. 1995). The burden of showing that no genuine factual dispute exists rests on the party seeking summary judgment. Adickes v. S. H. Kress & Co., 398 U.S. 144 (1970); Cronin, 46 F.3d at 202.

The Second Circuit ruled that "mere conjecture or speculation by the party resisting summary judgment does not provide a basis upon which to deny the motion." Quarles v. Gen. Motors Corp., 758 F.2d 839, 840 (2d Cir. 1985). Instead, *"the plaintiff must offer concrete evidence raising genuine disputes of material fact tending to show that his version of events is more than fanciful."* Johnson v. Carpenter Tech. Corp., 723 F. Supp. 180, 182 (D. Conn. 1989) (emphasis added). "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). Thus, once the moving party has satisfied its burden of identifying evidence that demonstrates that no genuine issue of material of fact exists, the party resisting summary judgment is required to go beyond the pleadings, by way of affidavits,

343921                                    15