depositions and interrogatory responses, to demonstrate specific material facts that give rise to a genuine issue. Celotex, 477 U.S. at 324.

Plaintiffs here can offer no evidence that raises a genuine issue of material fact with respect to any of their remaining claims. The evidence demonstrates that the claims are not ripe for adjudication given that the Barkhamsted Defendants, particularly the Inland Wetlands Commission, have not made any final determination with respect to Ms. Longmoor's complaints. Second, even if plaintiffs' claims are ripe, the evidence does not support plaintiffs' claim that the Barkhamsted Defendants violated their equal protection or due process rights. Moreover, the plaintiffs have no evidence to support their claim for intentional infliction of emotional distress. Accordingly, summary judgment should be granted in favor of the Barkhamsted Defendants.

I.    **SUMMARY JUDGMENT SHOULD BE GRANTED BECAUSE PLAINTIFFS HAVE NOT OBTAINED A FINAL, REVIEWABLE DECISION FROM THE BARKHAMSTED DEFENDANTS**

All of plaintiffs' federal civil rights claims stem from the Barkhamsted Defendants alleged decision to enforce certain regulations against the plaintiffs, while declining to enforce those same regulations against Ms. Longmoor's neighbors. The decisions whether or not to not enforce the regulations against the plaintiffs and their neighbors, however, does not constitute final government action, and therefore, plaintiffs' claims are not ripe for adjudication.

343921                                    16

In <u>Williamson County Reg'l Planning Comm'n v. Hamilton Bank</u>, 473 U.S. 172 (1985), the Supreme Court set forth the test for evaluating the ripeness of "takings type claims" that challenge municipal application of land use regulations. Under <u>Williamson</u>, a claim is only ripe when "the government entity charged with enforcing the regulations has rendered a final decision" and where the "plaintiff has sought compensation if the state provides a reasonable certain and adequate provision for obtaining compensation." <u>Id.</u> Cases within the Second Circuit, have applied the <u>Williamson</u> test to equal protection claims and substantive due process claims, like the claims raised here. <u>See, e.g.</u>, <u>Bongartz</u>, 980 F.2d at 96 ("Contrary to [plaintiff's] assertion, a substantive due process claim . . . is subject to both prongs of the <u>Williamson</u> ripeness test."); <u>Celantano v. City of West Haven</u>, 815 F. Supp. 561, 566-67 (D. Conn. 1993) (an equal protection claim in the land use context is similarly subject to the ripeness inquiry). The second prong of the <u>Williamson</u> test does not apply in the present case, however. "The requirement that a plaintiff seek compensation in state court is . . . derived from the Takings Clause" of the Fifth Amendment, to which a due process and equal protection claims are largely unrelated. <u>Bongartz</u>, 980 F.2d at 96. Thus, finality is the key determinative factor for ripeness in the present case.

The finality requirement is concerned with whether the initial decision-maker has arrived at a definitive position on the issue that inflicts an actual concrete injury on the property owner. <u>Williamson</u>, 473 U.S. at 193. Unless a court has a final decision before it, it cannot determine

whether a claimant was deprived of property or whether the government conduct was irrational. Bongrantz, 980 F.2d at 980. Particularly, in the equal protection context, only when the property owner receives a final definitive decision regarding how the local agency will apply the regulations to the property in issue will the district court be able to review the alleged dissimilar treatment accorded similarly situated landowners. Id.

In the present case, it is apparent that the plaintiffs' failed to obtain a final, reviewable decision from the Inland Wetlands Commission or any of the Barkhamsted Defendants regarding the application of regulations to themselves or the neighbors. Mr. Nilsen's determination that there was no siltation resulting from the Langer's construction site, and hence his decision to not enforce any inland wetlands regulations against them, does not constitute a final decision within the meaning of Williamson. Ms. Longmoor could appeal that decision to the entire Inland Wetlands Commission, or, as she ultimately did, to the state DEP. She made no formal petition to the commission or anyone else. Instead, she has prematurely hailed Mr. Nilsen and the Barkhamsted Defendants into court and alleged a violation of her federal rights.

Likewise, Mr. Nilsen's decision to issue a cease and desist order concerning the ditch on her property was not a final government action. With respect to the issuance of a cease and desist order, Ms. Longmoor is entitled to pursue an appeal of the decision to the Connecticut Superior Court under Conn. Gen. Stat. § 22a-43. That section provides that "any person aggrieved by any regulation,

343921                                    18

order, decision or action of [a wetlands committee] may appeal to the superior court . . . ." Indeed, a

similar appeal was taken in <u>Miller v. Conservation Comm. of Salem</u>, 27 Conn. App. 590 (1992).

Again, rather than pursuing her appeal of what is ultimately a private dispute among landowners, Ms.

Longmoor has brought this premature action alleging a federal violation. This is impermissible under

<u>Williamson</u> and its progeny. Accordingly, summary judgment should be granted for the

Barkhamsted Defendants.

Even if this court concludes that plaintiffs' claims are ripe, however, the court should grant

summary judgment for the Barkhamsted Defendants on the merits of the claims.

**II.    THE BARKHAMSTED DEFENDANTS ARE ENTITLED TO JUDGMENT
ON THE PLAINTIFFS' CLAIMS FOR VIOLATION OF THEIR EQUAL
PROTECTION RIGHTS GUARANTEED IN THE FOURTHEENTH
AMENDMENT TO THE UNITED STATES CONSTITUTION**

The Fourteenth Amendment to the United States Constitution declares that "no State shall . . .

deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend XIV,

§ 1. The equal protection clause requires that all similarly situated persons be treated alike." <u>City of</u>

<u>Cleburne v. Cleburne Living Ctr., Inc.</u>, 473 U.S. 432 (1985). Generally, claims brought pursuant to

the equal protection clause involve discrimination against people based on their membership in a

vulnerable class. Typical equal protection claims are brought by a plaintiff who alleges that a law or

policy that "expressly classifies persons on the basis of race" or some other prohibited basis for

discriminatory treatment violates the provisions of the Equal Protection clause. <u>See, e.g.,</u> <u>Adarand</u>

<u>Constructors, Inc. v. Pena</u>, 515 U.S. 200 (1995). A plaintiff may also identify a facially neutral law or policy that had been applied in an intentionally discriminatory manner. <u>See, e.g.</u>, <u>Yick Wo v. Hopkins</u>, 118 U.S. 356 (1886). In each of these instances, a plaintiff's membership in a particular class of persons is essential to the viability of the equal protection claim.

Courts have long recognized that the equal protection guarantee also extends to individuals who allege no specific class membership, but who allege invidious treatment at the hands of a government actor. <u>See, e.g.</u>, <u>LeClair v. Saunders</u>, 627 F.2d 606, 608-10 (2d Cir. 1980) (recognizing that plaintiff could bring an equal protection claim for "selective enforcement" or prosecution by government actor pursuant to a lawful state regulation even though plaintiff alleges no membership in a particular class of persons). The Supreme Court affirmed that the equal protection clause encompasses such "class of one" or "selective enforcement" claims and set forth the requirements for pleading such a claim in <u>Village of Willowbrook v. Olech</u>, 528 U.S. 562, 564 (2000). Specifically, the Court held that "our cases have recognized successful equal protection claims broght by a class of one, where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." <u>Id.</u> at 564.

Plaintiffs' equal protection claims here may only be construed as the kind of "class of one" or "selective enforcement" claim governed by <u>Olech</u> and similar cases. Plaintiffs here allege no membership in a specific class of persons. They seek damages for what they allege to be selective

enforcement of the Town of Barkhamsted's zoning and inland wetlands regulations against them. Specifically, they allege that "all of the defendants have acted . . . with intent to discriminate, and with no rational basis, and have thereby deprived the plaintiffs of equal protection of the laws by treating them differently from similarly situated landowners without any rational basis for the said discrimination." Am. Compl. ¶ 11. Plaintiffs set forth several factual allegations to support their allegations that the Barkhamsted Defendants acted in violation of their official duties. Am. Compl. ¶ 9E, G-R. While the plaintiffs may have alleged facts sufficient to meet the minimal pleading requirement for a class of one equal protection claim, as established by <u>Olech</u>, they are unable to produce evidence sufficient to overcome higher burden on summary judgment. <u>See e.g.</u>, <u>De Muria v. Hawkes</u>, 328 F.3d 704, 707 (2d Cir. 2003) (acknowledging that although plaintiff successfully pleaded a class of one claim, the plaintiff face a significant hurdle on summary judgment in finding evidence to prove their allegations of an equal protection violation).

At the summary judgment stage, the Second Circuit requires that in order to prevail on a class of one equal protection claim for selective enforcement of a legitimate government regulation, plaintiffs have traditionally been required to provide evidence that (1) that they were treated differently from other similarly situated individuals, and (2) that such differential treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise

343921

21

of constitutional rights, or malicious or bad faith intent to inure a person.  Harlen Assoc. v. Village of

Mineola, 273 F.3d 494 (2d Cir. 2001); LeClair, 627 F.2d at 609-10.

With respect to the first prong, plaintiffs can offer nothing to demonstrate that the

Barkhamsted Defendants treated them differently from other similarly situated individuals.  While

plaintiffs complaint allege that "all of the defendants . . . have thereby deprived the plaintiffs of equal

protection of the laws by treating them differently from similarly situated landowners without any

rational basis for the said discrimination," Ms. Longmoor's own deposition testimony indicates that

plaintiffs do not have evidence to support such this allegation.

When asked to identify how Mr. Fox had violated her rights, specifically her equal protection

rights, Ms. Longmoor indicated that he had come to inspect her burn piles when he had not done so

with others who had applied for burn permits.  In her deposition, Ms. Longmoor admitted, however,

that she had no evidence with respect to Mr. Fox's typical practices—specifically, whether he had

inspected the burn piles of other permit applicants:

> Q:    Okay.  And you don't know whether Mr. Fox had ever gone out
> and taken a look at a burn pile before it was burned; isn't that correct?
>
> A:    Right.
>
> Q:    Because you haven't traveled with Mr. Fox on his duties so you
> don't know if he had ever gone out and examine other burn piles; is that
> correct?
>
> A:    Correct.

Longmoor Dep., Exhibit 1, at 268-69. While Ms. Longmoor does not have the evidence, Mr. Fox's sworn affidavit indicates that in conformance with his duties as Barkhamsted's Open Burn Official, it is not uncommon for him to inspect applicants burn piles. Ms. Longmoor's allegation that she was treated differently in this regard is unsupported.

Ms. Longmoor also alleges that the Barkhamsted Defendants enforced zoning and inland wetlands regulations against her, while failing to enforce the same regulations against her neighbors. She alleges, for example, that Karl Nilsen ignored evidence that the Langer's construction was causing her pond to fill with silt, yet required her to submit it reconstruction report with regard to erosion that occurred on the portion of Woodland Acres Road that crossed Lot 14A. This allegation is similarly unsupported by the undisputed facts. First, the state DEP confirmed that there was no siltation from the Langer's construction site. Longmoor Dep. 347-9. And secondly, there is no evidence that Mr. Nilsen took any enforcement action against Ms. Longmoor with respect to the erosion.

With respect to the ditch Ms. Longmoor dug into a wetland area, Karl Nilsen and the Inland Wetland Commission required Ms. Longmoor to show cause why she should have been permitted to dig the ditch. The ditch was admittedly cut into an environmentally sensitive area, a bog. Id. at 368. After a hearing before the commission, and Ms. Longmoor's testimony at that hearing, the Barkhamsted Defendants took no enforcement action against Ms. Longmoor whatsoever with respect

343921                                23

to the ditch. As with all these allegations of differential treatment, it cannot be said that Ms.

Longmoor was subject to enforcement of certain regulations, while her neighbors' violations were

ignored.

As is the case here, where plaintiffs cannot demonstrate unequal treatment, the equal

protection claim must fail on a motion for summary judgment. See, e.g., Presnick v. Delaney, 33

Fed. Appx. 5, 6 (2d Cir. 2002) (rejecting plaintiffs' claim for violation of the equal protection clause

where "plaintiff has not shown that similarly situated individuals were treated differently."); Rossi v.

City of New York, 75 Fed. Appx. 18, 20-21 (2d Cir. 2003) (rejecting claim of selective enforcement

of vending laws where plaintiff did not point to others who were treated differently by city agency in

application of the laws).

Even assuming that plaintiffs could demonstrate that the Barkhamsted Defendants treated

them differently from an identifiable group, plaintiffs will be unable to produce evidence to satisfy

the second prong of the Second Circuit's test for liability on a theory of selective enforcement. The

plaintiffs offer no evidence that any alleged selective enforcement occurred because of their race,

nationality, or other invidious reasons. Plaintiffs have no evidence to support such a claim. In fact,

plaintiffs offer nothing but conjecture and speculation with regard to the subjective motivations of the

Barkhamsted Defendants. Accordingly, the Barkhamsted Defendants summary judgment motion

should be granted. Harlen, 273 F.3d at 502 ("Although the issue of whether an action was motivated

343921                                        24

by malice generally is a question of fact properly left to the jury, we will uphold a grant of summary judgment where the nonmoving party adduces nothing more than speculation to support its claims."); Lisa's Party City, Inc. v. Town of Henrietta, 185 F.3d 12, 17 (2d Cir. 1999) (affirming grant of summary judgment where "appellant's assertion that the Town enforced the ordinance against it with an impermissible motivation was sheer conjecture and speculation.") (internal quotations omitted); LeClair, 627 F.2d at 610 (same).

It should be noted that some courts have suggested that the Supreme Court's decision in Olech modified the two-prong test first established by the Second Circuit in LeClair. See, e.g., Jackson v. Burke, 256 F.3d 93, 97 (2d Cir. 2001) (noting in dicta that in light of Olech's pleading requirement, "proof of subjective ill will is not an essential element of a class of one equal protection claim"). Other courts disagree. See, e.g., Hilton v. City of Wheeling, 209 F.3d 1005, 1008 (7th Cir. 2000) (holding that Olech did not remove the requirement that a plaintiff alleging an equal protection violation based on selective enforcement prove that the governmental action was motivated by personal animus); Shipp v. McMahon, 234 F.3d 907, 916 (5th Cir. 2000) (same). The Second Circuit has not yet resolved the question of whether a plaintiff must still prove the second prong of the LeClair test.

Even if the Second Circuit concludes that Olech modified the LeClair two-prong test, under Olech, the plaintiff still must plead and present evidence that the government action was "irrational

343921                              25

and wholly arbitrary." <u>See, e.g.</u>, <u>Harlen</u>, 273 F.3d at 499-500 (and cases cited therein). Plaintiffs are unable to do so, thus the Barkhamsted Defendants are entitled to summary judgment.

In order to establish that a government official is acting irrationally, the plaintiffs must demonstrate that they acted "with no legitimate reason for its decision." <u>Crowley v. Courville</u>, 76 F.3d 47, 52 (2d Cir. 1996). With respect to all of the actions taken by the Barkhamsted Defendants concerning Ms. Longmoor, their conduct was entirely rational, and a legitimate reason can be found for each.

First, the legitimacy of Mr. Nilsen's decision to take no action after Ms. Longmoor complained that her neighbor's activities were causing siltation on her property is supported by the fact that, like Mr. Nilsen, the DEP concluded that there was no evidence of siltation on Ms. Longmoor's property. Longmoor Dep. at 347-49. Second, Mr. Nilsen's request that Ms. Longmoor provide a reconstruction report after he observed significant erosion on her property seems equally reasonable. The neighbors could not agree on who would be responsible for maintenance of the roadway. The conditions had deteriorated significantly, and several of Ms. Longmoor's neighbors had filed complaints about the condition of Woodland Acres Road.

Third, the decision to require Ms. Longmoor to show cause why she should have been permitted to dig a ditch on her property, seems equally legitimate in light of the fact that Ms. Longmoor cut ditch into a bog adjacent to her property. This constituted a regulated activity

governed by inland wetlands regulations. Contrary to Ms. Longmoor's allegations that her ditch

digging activity did not require a permit, Am. Compl. ¶ 9(O), the digging of a ditch into the bog is

clearly a regulated activity according to Conn. Gen. Stat. § 22a-9, which defines "regulated activity"

as "dredging, excavation or removal of soil . . . from any wetland . . . ." Such a regulated activity

certainly requires a permit under Connecticut law. Conn. Gen Stat. § 22a-32 (West 2003) ("No

regulated activity shall be conducted upon any wetland without a permit.").

    In sum, because plaintiff has no evidence indicating that similarly situated persons were

treated differently by the Barkhamsted Defendants, and because plaintiffs cannot demonstrate that the

Barkhamsted Defendants were motivated by any invidious reasons or ill-will, bad faith, malice, their

equal protection claims fail and summary judgment should be granted in favor of the Barkhamsted

Defendants. Moreover, even if plaintiffs are not required to provide evidence with respect to the

Barkhamsted Defendants subjective intent, none of the evidence indicates that the Barkhamsted

Defendants acted irrationally or without a legitimate purpose. Accordingly, plaintiffs' claims against

the Barkhamsted Defendants for violation of the equal protection clause must fail.

III.    **THE DEFENDANTS ARE ENTITLED TO JUDGMENT IN
        THEIR FAVOR ON THE PLAINTIFF'S DUE PROCESS CLAIMS**

    Plaintiffs also bring a claim against the Barkhamsted Defendants alleging that they "deprived

the plaintiffs of substantive due process of law and procedural due process of law, in violation of the

Fourteenth Amendment to the United States Constitution." Am. Compl. ¶ 14. The Fourteenth

343921                                    27

Amendment provides that a state actor may not "deprive any person of life, liberty or property without due process of law[.]" U.S. Const. Amend. XIV. In order to maintain his due process claims, the plaintiff must allege, and provide a proper evidentiary foundation for, the existence of some facts that would establish that the defendants deprived him of a constitutionally protected property or liberty interest. Bd. of Regents v. Roth, 408 U.S. 564, 569-71 (1972).

Plaintiffs have made the conclusory allegation that the defendants' actions have deprived them of their right to both procedural and substantive due process. Am. Compl. ¶ 14. But plaintiffs have failed to allege any facts that would support either claim. Accordingly, the Barkhamsted Defendants are entitled to summary judgment.

"In order to sustain an action for deprivation of property without due process of law, a plaintiff must 'first identify a property right, second show that the state has deprived him of that right, and third show that the deprivation was effected without due process.'" Local 342 v. Town of Huntington, 31 F.3d 1191, 1194 (2d Cir. 1994) (quoting Mehta v. Surles, 905 F.2d 595, 598 (2d Cir. 1990) (per curium)). The property right that the plaintiff must identify is generally created by state law. Cybulski v. Cooper, 891 F. Supp. 68, 70 (D. Conn. 1995) (citing Bd. of Regents v. Roth, 408 U.S. at 576-77). In addition, constitutionally-protected property interests may also be created by contract or mutual agreement. Id. (citing Brock v. Roadway Express, Inc., 481 U.S. 252, 260-61 (1987)).

343921                                  28

The Second Circuit has been hesitant to expand the definition of "property" within the context of the Fourteenth Amendment. See S&D Maint. Co., Inc. v. Goldin, 844 F.2d 962, 967 (2d Cir. 1988) ("the course of the law in this Circuit has not moved beyond according procedural due process protection to interests other than those well within the contexts illustrated by Goldberg v. Kelley, 3987 U.S. 254 (1970) and Roth"). It is well established and often noted that property rights "are not created by the Constitution . . . but stem from an independent source." Loudermill, 470 U.S. at 538, 105 S.Ct. at 1491.

Plaintiffs' procedural due process claim is not explicit with regard to exactly what property interest they have been deprived of. Presumably, plaintiffs mean to allege that Inland Wetlands Commissions' issuance of a cease and desist order affected their property rights without due process of the law. Indeed, based on the Amended Complaint, the Barkhamsted Defendants cannot conceive of another possible theory whereby plaintiffs could successfully allege a violation of their procedural due process rights. While the Barkhamsted defendants do not contest that the defendants have a legitimate property interest, whatever effect that Mr. Nilsen's decision to issue a cease and desist order had on the plaintiffs property interest, the plaintiffs were afforded due process.

"[T]he deprivation by state action of a constitutionally protected interest in 'life, liberty or property' is not itself unconstitutional; what is unconstitutional is the deprivation of such an interest without due process of law." Zinermon v. Burch, 494 U.S. 113, 125 (1990). The individual is only

343921                                          29

entitled to notice and an opportunity to be heard.  <u>Loudermill</u>, 470 U.S. at 546; <u>Roth</u>, 408 U.S. at 570.

"The fundamental requirement of due process is the right to be heard at 'a meaningful time and in a

meaningful manner.'"  <u>Mathews v. Eldridge</u>, 424 U.S. 319, 333 (1976) (quoting <u>Armstrong v.</u>

<u>Manzo</u>, 380 U.S. 545, 552 (1965)).

     After Mr. Nilsen and the Town of Barkhamsted issued the cease and desist order requiring

Ms. Longmoor to show cause why she should be permitted to dig the ditch on her property, the

Inland Wetlands Commission held a duly noticed, public hearing with respect to the order.  Ms.

Longmoor was afforded the opportunity to give testimony at this hearing.  And following the hearing,

no further action was taken against Ms. Longmoor.  In light of the fact that Ms. Longmoor was

afforded notice and an opportunity to be heard, the court should grant summary judgment with

respect to plaintiffs' procedural due process claim.  <u>See, e.g.</u>, <u>Huck v. Inland Wetlands and</u>

<u>Watercourses Agency of the Town of Greenwich</u>, 525 A.2d 940, 945 (Conn. 1987) (where local

inland wetlands agency conducted hearing after due notice and allowed parties to produce relevant

evidence, agency decision complied with due process requirements).

     Moreover, assuming plaintiff could demonstrate that she was deprived of some property right

by virtue of the cease and desist order, there exist adequate and appropriate post-deprivation state

remedies whereby the plaintiff is able to gain redress for any perceived wrongdoing on the part of

Karl Nilsen or the Inland Wetlands Commission.  Conn. Gen. Stat. § 22a-43 provides that the

343921                                        30