*021595 mEmSup 3*

plaintiffs may appeal a decision of the Inland Wetlands Commission decision to the Connecticut Superior Court. Accordingly, judgment must be issued in favor of the Barkhamsted Defendants on plaintiffs' procedural due process claims.

In addition to the procedural due process claim, plaintiffs allege that the conduct of the Barkhamsted defendants violated their substantive due process rights. The due process clause has historically been held to forbid arbitrary infringements of certain personal immunities that are "implicit in the concept of ordered liberty," Palko v. Connecticut, 302 U.S. 319, 325 (1937), and infringements that "shock the conscience." Rochin v. California, 342 U.S. 165, 172 (1952). Such infringements have been held to violate the due process requirements of the Constitution regardless of the procedures that are employed. Monroe v. Pape, 365 U.S. 167, 171-72 (1961). These infringements implicate the "substantive" component of due process.

The evidence in this case cannot support plaintiffs' substantive due process claim against the Barkhamsted Defendants. First, as discussed above, the Barkhamsted Defendants' conduct with respect to their dealings with the plaintiffs was inherently reasonable. Nothing done by any of the Barkhamsted Defendants can be said to rise to the level of behavior that "shocks the conscious." Therefore, plaintiffs' substantive due process claim should fail.

Moreover, substantive due process claims are disfavored in disputes over land use. The Second Circuit has explicitly stated that "arbitrary conduct that might violate zoning regulations as a

343921                                         31

matter of state law is not sufficient to demonstrate conduct so outrageously arbitrary as to constitute a gross abuse of governmental authority that will offend the substantive component of the due process clause." Natale v. Town of Ridgefield, 170 F.3d 258, 262 (2d Cir. 1999). The court noted that "the conventional planning dispute—at least when not tainted with fundamental procedural irregularity, racial animus or the like . . . is a matter primarily of concern to the state and does not implicate the Constitution." Id. Indeed, plaintiffs in this case have sought to resolve some of the issues with their neighbors by bringing claims based on state property law in Connecticut State Court. They brought a quiet title action against their neighbors. The quiet title action sought to resolve a dispute among the neighbors regarding the ownership of Lot 14A. In addition to an appeal of the decision of the Barkamsted Zoning Board of Appeals, which plaintiffs ultimately lost. Fox Aff. ¶ 13.

Only after losing their appeal against the zoning board, do plaintiffs seek to dress up a private property rights dispute into a federal civil rights litigation. Yet because the present case does not involve "fundamental procedural irregularity, racial animus, or the like," plaintiffs' substantive due process claims should not withstand this motion. Such a result is consistent with the United States Supreme Court's admonition that the "substantive due process" doctrine is to be applied with "caution and restraint." Moore v. City of East Cleveland, 431 U.S. 494, 502 (1977) (plurality opinion, Powell, J.).

## IV.    THE BARKHAMSTED DEFENDANTS ARE ENTITLED TO QUALIFIED IMMIUNITY FOR THEIR ACTIONS AS ALLEGED IN PLAINTIFF'S COMPLAINT

Even if the plaintiffs have stated a claim that their constitutional rights were violated, a proposition that the Barkhamsted Defendants dispute, Michael Fox and Karl Nilsen are entitled to qualified immunity.  The qualified immunity defense protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Connell v. Signoracci, 153 F.3d 74, 80 (2d Cir. 1998) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  As such, "qualified immunity is an entitlement not to stand trial or face the burdens of litigation." Id. (internal quotations omitted); Michell v. Forsyth, 472 U.S. 511, 526 (1985).  "The doctrine protects public officials from the risk of potentially ruinous monetary liability which would deter qualified people from public service and safeguards the public interest in having government employees act with independence and without fear of consequences." Eng v. Coughlin, 858 F.2d 889, 895 (2d Cir. 1988).  "Because the defense of qualified immunity is designed to relieve government officials of the burdens of litigation as well as the threat of damages, summary judgment is encouraged as a device for disposing of claims barred by such immunity." In Re State Police Litigation, 88 F.3d 111, 123 (2d Cir. 1996); see also Harlow, 457 U.S. at 818; Behrens v. Pelletier, 516 U.S. 299, 308 (1996); Lee v. Sandberg , 136 F.3d 94, 101 (2d Cir. 1997); Cartier v. Lussier, 955 F.2d 841, 844 (2d Cir. 1992).

To establish this defense at the summary judgment stage, "the [officials] must show upon facts that are undisputed either that their conduct did not violate 'clearly established rights' of which a reasonable person would have known, or that it was objectively reasonable to believe that their acts did not violate those clearly established rights." Soares v. State of Connecticut, 8 F.3d 917, 920 (2d Cir. 1993) (internal quotations omitted). A defendant is entitled to summary judgment when "no reasonable jury looking at the evidence in the light most favorable to, and drawing all inferences most favorable to, the plaintiffs, could conclude that is was objectively unreasonable for the defendant to believe that he was acting in a manner that did not clearly violate an established right." Lennon v. Miller, 66 F.3d 416, 420 (2d Cir 1995) (quoting Robinson v. Via, 821 F.2d 913, 921 (2d Cir. 1987)). The defense of qualified immunity shields government officials from liability for damages on account of his performance of discretionary official functions if (a) his actions did not violate clearly established law, or (b) it was objectively unreasonable for him to believe that his actions did not violate such law. Anderson v. Creighton, 483 U.S. 635, 641 (1987).

Accordingly, the first step in evaluating a qualified immunity defense is to determine whether the plaintiff has alleged a deprivation of a constitutional right at all. Connell v. Signoracci, 153 F.3d 74, 80 (2d Cir. 1998). Only if the plaintiff has sufficiently alleged a constitutional violation is it necessary to determine whether the government official believed his actions violated plaintiff's rights. Malloy v. Briggs. 475 U.S. 335, 341 (1986). Generally, government officials actions are

considered objectively unreasonable when no official of reasonable competence could have made the same choice in similar circumstances. Williams v. Lopes, 64 F. Supp. 2d 37 (D. Conn. 1999). Simply stated, the test for qualified immunity is an objective one.

As a threshold matter, the Barkhamsted Defendants, like the state police defendants, do not contest the plaintiffs' rights to equal protection and procedural and substantive due process are clearly established rights. Regardless, the plaintiffs are unable to show that it was objectively unreasonable for the Barkhamsted Defendants' to believe that their conduct was permissible in light of the clearly established rights. Under this prong of a qualified immunity analysis, one must consider that "it is sometimes difficult for an [official] to determine who the relevant legal doctrine . . . will apply to the factual situation that the official confronts." Saucier v. Katz, 533 U.S. 194, 200 (2000). "If the [official's] mistake as to what the law requires is reasonable, however, the [official] is entitled to qualified immunity. Id.

As discussed above, it was reasonable for the Barkhamsted to take all of the actions that defendant alleges violates their constitutional rights. Accordingly, Mr. Nilsen and Mr. Fox are protected by qualified immunity. See, e.g., Salim v. Proulx, 93 F.3d 86, 89 (2d Cir. 1996); Natale v. Town of Ridgefield, 927 F.2d 101, 105 (2d Cir. 1991) (qualified immunity protects officials where denial of permits was based on a reasonable belief that land was not properly subdivided under state law).

343921

Moreover, plaintiffs' claims apparently arise from the alleged failure of the Barkhamsted Defendants to enforce certain regulations against other similarly situated individuals. Enforcement of zoning and inland wetlands regulation is an inherently discretionary function, and therefore, enforcement officials have qualified immunity from liability for failure to enforce the regulations. See, e.g., Town of Plymouth v. Gebelein, No. CVN-9102-1021-PL, 1992 Conn. Super. LEXIS 3427, attached hereto as Tab A (Nov. 19, 1992); Maier v. Tracy, No. 30 17 66, 1992 Conn. Super. LEXIS 2489, attached hereto as Tab B, *4 (Aug. 25, 1992) (noting that where municipal officials are engaged in discretionary acts, there is generally qualified immunity). Accordingly, it has been held that qualified governmental immunity bars claims against a building inspector, city engineer and a zoning enforcement officers for errors or omissions in issuing building permits, and in enforcement of zoning regulations. Id.; Birmingham Condo. Assoc., Inc. v. Birmingham Dev. Co., No. CV-29-55-13-S, 1994 Conn. Super. LEXIS 2867, attached hereto as Tab C, (Nov. 10, 1994). The same should hold true here.

## V.     THE PLAINTIFF'S STATE LAW CLAIMS SHOULD BE DISMISSED

Should this Court find that the plaintiff has failed to establish the requisite elements of his federal claims, the jurisdictional basis for the plaintiffs' pendent state claims will disappear. Where a plaintiff pleads a federal cause of action and derivative state law claims in the same complaint, the state law claims cannot survive a finding that the federal law claims are legally insufficient. See

Monsky v. Moraghan, 127 F.3d 243, 247 (2d Cir. 1997); Lennon, 66 F.3d at 426 ("Having dismissed the plaintiff's underlying federal claims, we also dismiss her supplemental state claims of assault, unlawful imprisonment, and malicious prosecution"); A. Aiudi & Sons v. Plainville, 862 F. Supp. 737, 745 (D. Conn. 1994) (dismissal of claim arising under federal law obliterated court's subject matter jurisdiction over state law claims).

The plaintiffs' state law claims, namely intentional infliction of emotional distress," arose from the same factual scenario as their federal claims. Am. Compl. ¶ 15. Accordingly, should the court grant summary judgment on the plaintiff's federal law claims, the court would lack subject matter jurisdiction over the plaintiff's state law claims, requiring that they be dismissed. See Monsky, 127 F. 3d. at 247; Lennon, 66 F.3d at 426; A. Aiudi & Sons, 862 F. Supp. at 745.

Even if the court were to retain jurisdiction over the state law claims, the defendants are entitled to summary judgment for the following reasons. In order to state a claim of intentional infliction of emotional distress, "[I]t must be shown: (1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe." Peyton v. Ellis, 510 A.2d 1337 (Conn. 1986) (internal quotation marks omitted). Whether the defendants' conduct and the plaintiff's resulting distress are sufficient to satisfy either of these

elements is a question, in the first instance, for the court. Only where reasonable minds can differ does the question become an issue for the jury to decide. Id.

Extreme and outrageous conduct is an essential element in to tort of intentional infliction of emotional distress. Mere insults, indignities, or annoyances that are not extreme and outrageous will not suffice. Liability for intentional infliction of emotional distress requires conduct exceeding all bounds usually tolerated by decent society, of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind. DeLaurentis v. New Haven, 597 A.2d 807 (Conn. 1991). Some courts called upon to determine whether there is a reason to let a jury decide whether alleged conduct could be found to meet "outrageous" standard have focused objective criteria such as whether the defendant was in a position of authority over the plaintiff. Others have focused on whether the defendant knew of some special susceptibility to emotional abuse on the part of the plaintiff. Some cases have looked to whether there is a lengthy of continuous patter of harassment conduct over time. Single incidents are almost never found by courts to be outrageous. Lucas v. Firine, No. CV 92-0335703, 1993 Conn. Super. LEXIS 1777, attached hereto as Tab D, (1993).

For all of the reasons cited above regarding the plaintiffs' equal protection and due process claims, the actions of the defendants in this case were not so extreme and outrageous as to support a claim for intentional infliction of emotional distress in violation of Connecticut Common law. Moreover, Ms. Longmoor's testimony at her deposition calls into question the validity of her claim

that any emotional distress she suffered was severe. A mental health or medical professional for depression never treated her. Longmoor Dep. at 391. At most, all she asserts is that she suffered from some sleepless nights. This, in and of itself, does not rise to the level of severe emotional distress.

**VI.    DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S CLAIMS AGAINST THE TOWN OF BARKHAMSTED SHOULD FAIL**

Plaintiffs have not alleged, nor have they provided any evidence, that the Town of Barkhamsted is directly liable for any wrongdoing. Moreover, it is well settled that a municipality may not be held liable under 42 U.S.C §1983 for actions of its employees or officers based upon the theory of respondeat superior. Monell v. Dep't of Social Services, 436 U.S. 658, 694 (1978); Zahra v. Town of Southold, 48 F.3d 674, 685 (2d Cir. 1995). Rather, "[i]n order to establish municipal liability for unconstitutional acts by municipal employees [or officers], a plaintiff must show that the violation of [her] constitutional rights resulted from a municipal policy, custom or practice." Johnson v. City of New York, 940 F. Supp. 631, 638 (S.D.N.Y. 1996). Since the plaintiffs have not alleged a Monell type claim, and have not provided any evidence that could possibly demonstrate a custom or practice on the part of the Town of Barkhamsted that resulted in the alleged constitutional violation, the inclusion of the Town as a defendant in inappropriate. Therefore, summary judgment should be granted in favor of the Town of Barkhamsted on all remaining claims.

343921

39

## **CONCLUSION**

For the foregoing reasons, the Barkhamsted Defendants Motion for Summary Judgment should be granted.

RESPECTFULLY SUBMITTED,
DEFENDANTS,
KARL NILSEN, MICHAEL FOX,
TOWN OF BARKHAMSTED, and BARKHAMSTED
INLAND WETLAND COMMISSION

By:_____

JAMES N. TALLBERG, ESQ.
Federal Bar Number Ct17849
MATTHEW FREIMUTH, ESQ.
Federal Bar Number Ct25245
UPDIKE, KELLY & SPELLACY, P.C.
One State St., P.O. Box 231277
Hartford, CT 06123-1277
Tel. No. (860) 548-2600

343921

## CERTIFICATION

I hereby certify that a copy of the foregoing has been sent via U.S. Mail, postage prepaid, to the following counsel of record, this 20 day of November 20003:

John R. Williams, Esq.
William & Pattis, LLC
51 Elm Street, Suite 409
New Haven, CT 06510

Stephen R. Sarnoski, Esq.
Assistant Attorney General
MacKenzie Hall
110 Sherman Street
Hartford, CT 06105

Jason Vicente, Esq.
Pepe & Hazard
Goodwin Square
Hartford, CT 06103

By: _____
MATTHEW FREIMUTH, ESQ.

343921                    41