

UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| LORRAINE LONGMOOR<br>and LYNDSEY KEENE | :<br>:<br>: |
| VS. | :   NO. 3:02CV1595(JBA) |
| KARL NILSEN,<br>MICHAEL FOX,<br>TOWN OF BARKHAMSTED,<br>BARKHAMSTED INLAND<br>WETLANDS COMMISSION,<br>TROOPER DAVID LABOY,<br>TROOPER HAZEN,<br>TROOPER SWEENEY,<br>LT. TOLOMEO,<br>and P J's AUTO SERVICE, INC. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:   NOVEMBER 30, 2003<br>:<br>: |

## BRIEF IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT BY DEFENDANTS LABOY, HAZEN, SWEENEY AND TOLOMEO

The State Police defendants have moved for summary judgment as to the claims against them by the plaintiff Lorraine Longmoor for denial of her Fourteenth Amendment rights to equal protection of the laws and procedural due process. The State Police defendants contend that (1) the plaintiff cannot identify any other similarly-situated persons as comparators, (2) they had a rational basis for any differential treatment they did impose upon her, and (3) there was no procedural due process deprivation because there was no opportunity for a pre-deprivation hearing and post-deprivation procedures are

available for the plaintiff's claims against her neighbors. In addition, the State Police defendants claim qualified immunity, asserting that there is no prior case directly in point involving facts identical to those present here and that the plaintiff's property rights were sufficiently unclear that no reasonable police officer could have known what to do under the circumstances. As to the plaintiff's state law claim for intentional or reckless infliction of emotional distress, the State Police defendants assert that their conduct does not meet the standard of "extreme and outrageous" conduct required and, alternatively, that the court should decline to decide the state law claim.

"The standards governing summary judgment are well-settled. Summary judgment is appropriate only 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits..., show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The party seeking summary judgment has the burden to demonstrate that no genuine issue of material fact exists.

"In determining whether a genuine issue of material fact exists, a court must examine the evidence in the light most favorable to, and draw all inferences in favor of, the non-movant....Summary judgment is improper if there is any evidence in the record that could reasonably support a jury's verdict for

the non-moving party." Marvel Characters, Inc. v. Simon, 310 F.3d 280, 285-86 (2d Cir. 2002).

When the moving party "'fail[s] to fulfill its initial burden' of providing admissible evidence of the material facts entitling it to summary judgment, summary judgment must be denied, 'even if no opposing evidentiary matter is presented,' for the non-movant is not required to rebut an insufficient showing." Giannullo v. City of New York, 322 F.3d 139, 140-41 (2nd Cir. 2003), *quoting* Adickes v. S.H. Kress & Co., 398 U.S. 144, 158, 160 (1970). "[T]he moving party bears the ultimate burden of establishing its right to summary judgment as a matter of law even when it does not have the ultimate burden of persuasion at trial." Trainor v. Apollo Metal Specialties, Inc., 318 F.3d 976, 982 (10th Cir. 2003).

When passing upon a motion for summary judgment, the court may not resolve factual disputes or make credibility determinations, even if the case is one which eventually will be tried without a jury. In re Unisys Savings Plan Litigation, 74 F.3d 420 (3d Cir. 1996). Rather, the court must resolve any ambiguities and draw all inferences against the moving party. Appleton v. Board of Education, 254 Conn. 205, 757 A.2d 1059 (2000); Cargill, Inc. v. Charles Kowsky Resources, Inc., 949 F.2d 51 (2d Cir. 1991). The evidence of the party against whom summary judgment is sought must be believed. Revak v. SEC Realty Corp., 18 F.3d 81 (2d Cir. 1994). The court must construe the evidence

in the light most favorable to the party opposing summary judgment and deny the motion unless no construction of the evidence could support judgment in the plaintiff's favor. Appleton, supra; Adickes v. S. H. Kress & Co., 398 U.S. 144, 157 (1970); Olin Corp. v. Consolidated Aluminum Corp., 5 F.3d 10, 14 (2d Cir. 1993); United States v. Certain Funds on Deposit in Scudder Tax Free Investment Account #2505103, 998 F.2d 129 (2d Cir. 1993); Union Pacific Corp. v. United States, 5 F.3d 523, 525 (Fed. Cir. 1993); Suarez v. Dickmont Plastics Corp., 229 Conn. 99, 105 (1994); D.H.R. Construction Co. v. Donnelly, 180 Conn. 430, 434 (1980); Connell v. Colwell, 214 Conn. 242, 246-47 (1990). "If, as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper." Gummo v. Village of Depew, 75 F.3d 98, 107 (2d Cir. 1996).

To raise a genuine issue of material fact sufficient to defeat a summary judgment motion, the opponent need not match, item for item, each piece of evidence proffered by the moving party. So long as the opponent has offered enough evidence to exceed the "mere scintilla" threshold, summary judgment is to be denied. In re Unisys Savings Plan Litigation, supra, 74 F.3d 420, 433.

Even if the nonmoving party's evidence appears "implausible," the court may not "weigh" the evidence and must proceed with the greatest caution. R.

B. Ventures, Ltd. v. Shane, 112 F.3d 54, 58-59 (2d Cir. 1997). "If reasonable minds could differ as to the import of the evidence...and if...there is any evidence in the record from any source from which a reasonable inference in the nonmoving party's favor may be drawn, the moving party simply cannot obtain a summary judgment." Id. at 59, quoting Brady v. Town of Colchester, 863 F.2d 205, 211 (2d Cir. 1988), and In re Japanese Elec Prods. Antitrust Litigation, 723 F.2d 238 (3d Cir. 1983) (internal quotation marks omitted).

"A dispute regarding a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the non moving party.' Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Thus, '[i]f, as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper.'" Lazard Freres & Co. v. Protective Life Ins. Co., 108 F.3d 1531, 1535 (2d Cir. 1997). Citing Gummo v. Village of Depew, 75 F.3d 98, 107 (2d Cir. 1996).

"[T]he Second Circuit has cautioned that, in cases where motive, intent or state of mind are at issue, summary judgment should be used sparingly." Ruscoe v. Housing Authority of City of New Britain, 259 F. Supp. 2d 160, 166 (D. Conn. 2003) (Nevas, J.), citing Dister v. Continental Group, Inc., 859 F.2 1108, 1114 (2nd Cir. 1988).

It is clear that there are material factual disputes in this case. Specifically,

the defendants claim that they adopted a "hands off" approach to the plaintiffs' case, merely keeping the peace and referring the parties to their respective civil remedies. The plaintiffs' evidence, however, shows that the defendants did anything but that; they actively interfered with the plaintiffs' use of their property, threatening to arrest them if they imposed any kind of barrier to prevent trespassers from driving heavy vehicles across their land and in one instance participating in the invasion of the plaintiffs' land and towing of the plaintiffs' car from the private road on their land up to their driveway despite their protests. The defendants further assert that they had no knowledge whether the plaintiffs did or did not have clear title to the private road and of whether the trespassers did or did not have a right to drive upon the plaintiffs' land. In fact, under the plaintiffs' evidence, the defendants had actual knowledge, developed by the investigative work of a fellow trooper, Trooper Bement, that in fact the plaintiffs had every right to physically prevent their neighbors from driving on their private roadway. Yet, despite that actual knowledge, the defendants persisted in threatening to arrest the plaintiffs if they chained the road or placed "no trespassing" signs; and, despite that knowledge, the defendants assisted in the forcible removal of Ms. Longmoor's car from her own private road in order to facilitate moving a modular house across her land over her protests.

The defendants claim that the plaintiffs have no equal protection claim because there are no comparators. They assert that the plaintiffs' case is

unique in their experience and that therefore they could treat the plaintiffs any way they pleased so long as they did not violate any of the plaintiffs' *other* constitutional rights. This argument is the antithesis of "class of one" equal protection.

"The purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents." Village of Willowbrook v. Olech, 528 U.S. 562, 120 S. Ct. 1073, 1074-75 (2000). Citing Sioux City Bridge Co. v. Dakota County, 260 U.S. 441 (1923); Sunday Lake Iron Co. v. Township of Wakefield, 247 U.S. 340, 352 (1918). The defendants' conduct in this case, under the plaintiffs' version of the facts, was characterized exactly by such intentional and arbitrary conduct. Undoubtedly no other person in town owned a private road over which neighbors were trespassing. But that is not the test. The plaintiff was a property owner. The defendants affirmatively prevented her from protecting her property rights. They do not claim, nor could they claim, to have taken affirmative steps to interfere with the property rights of others in the community.

In Esmail v. Macrane, 53 F.3d 176 (7th Cir. 1995), the Seventh Circuit, in a thoughtful opinion by Judge Posner, found an actionable equal protection violation in a case where there was "an orchestrated campaign of official

harassment directed against" a merchant by the town, not in retaliation for the exercise of a protected right and not because of membership in a protected group, but "out of sheer malice." While acknowledging that recognizing the right to sue under such circumstances might give rise to some litigation abuses, the court observed that problems like Esmail's are sufficiently common and sufficiently offensive that an application of principles "understood since Aristotle invented the antecedent of our concept of equal protection more than two millennia ago" makes possible a judicial remedy. 53 F.3d at 179.

"The equal protection clause does not speak of classes. A class, moreover, can consist of a single member, Nixon v. Administrator of General Services, 433 U.S. 425, 472 (1977)..., or of one member at present; and it can be defined by reference to the discrimination itself. To make 'classification' an element of a denial of equal protection would therefore be vacuous....While the principal target of the equal protection clause is discrimination against members of vulnerable groups, the clause protects class-of-one plaintiffs victimized by 'the wholly arbitrary act.' City of New Orleans v. Dukes, 427 U.S. 297, 304 (1976) (per curiam)." Indiana Teachers v. School Com'rs of Indianapolis, 101 F.3d 1179, 1181 (7th Cir. 1996) (Posner, C.J.). Citing, inter alia, Rubinovitz v. Rogato, 60 F.3d 906, 911-12 (1st Cir. 1995); Burt v. City of New York, 156 F.2d 791 (2d Cir. 1946) (L. Hand, J.); Zeigler v. Jackson, 638 F.2d 776, 779 (5th Cir. 1981).

This is a classic case of that form of equal protection violation in which one citizen is simply declared outside the protection of the law. It is the sort of case which Judge Easterbrook once suggested could be treated as a bill of attainder violation, but which subsequent cases have come to understand is instead a form of equal protection violation. See Falls v. Town of Dyer, 875 F.2d 146 (7th Cir. 1989).

There cannot be any dispute that the plaintiffs are the owners of the private road in question. That fact, indeed, has been determined with finality by the Connecticut Superior Court in an unappealed decision. The defendants claim they had a right to prevent the plaintiffs from using their property because the plaintiffs had a civil remedy *against the trespassers* and that the existence of such a civil remedy against wrongdoers constituted all the procedural due process to which the plaintiffs were entitled. In this case, the police defendants forced the plaintiffs to admit trespassers onto their land, repeatedly. They even condoned and abetted entry upon the plaintiffs' land and temporary seizure of plaintiff Longmoor's automobile. These acts were "wholly arbitrary" and carried out without notice or hearing. As such, they violated the plaintiff's right to procedural due process.

A police department's refusal to return seized property, which turned out to be neither contraband nor evidence of a crime, without an order from the local court constituted a taking of property without procedural due process, a taking

effective at the time the department improperly refused to return the property, regardless of the validity of the initial seizure. Lathon v. City of St. Louis, 242 F.3d 841 (8th Cir. 2001). Likewise, when the police seize property for a third party or hold that property without the authorization of a warrant and refuse to return it immediately upon demand, they commit a denial of procedural process in violation of the Fourteenth Amendment. Johnson v. City of Evanston, 250 F.3d 560 (7th Cir. 2001). "[E]ven the temporary or partial impairments to property rights that attachments, liens, and similar encumbrances entail are sufficient to merit due process protection." Connecticut v. Doehr, 501 U.S. 1, 111 S. Ct. 2105, 2113 (1991). An owner's "interest in retaining ownership of his residence and surrounding property free and clear of all encumbrances, save the mortgage into which he freely and knowingly entered, is substantial. Few things could be more invasive of one's rights than interfering with the ownership of his or her home." Luedeke v. Village of New Paltz, 63 F. Supp. 2d 215, 221 (N.D.N.Y. 1999) (McAvoy, C.J.). The "right to maintain control over his home, and to be free from governmental interference, is a private interest of historic and continuing importance." United States v. James Daniel Good Real Property, 510 U.S. 43, 114 S. Ct. 492, 501 (1993).

That being so, government cannot take these kinds of actions against property without affording procedural due process. "In evaluating due process claims, we look at the factors set forth in Mathews v. Eldridge, 424 U.S. 319

(1976). The factors are 1) the interests of the claimant, 2) the risk of erroneous deprivation absent the benefit of the procedures sought and the probable value of such additional safeguards, and 3) the government's interest in avoiding the burdens entailed in providing the additional procedures claimed." Abdullah v. I.N.S., 184 F.3d 158, 164 (2d Cir. 1999). "Due process requires not only an opportunity to be heard but that this opportunity be afforded at a 'meaningful' time. Mathews, 424 U.S. at 333." Cooper v. Salazar, 196 F.3d 809, 816 (7th Cir. 1999). "Due process does not always require the opportunity to confront and cross-examine witnesses in the setting of an informal administrative investigation. ... However, confrontation and cross-examination are important procedural safeguards, especially where factual determinations are made....Therefore, there are times when due process requires these procedures even during an informal administrative investigation. This requirement may be triggered when the function of the proceeding is to adjudicate rather than merely investigate claims." Cooper v. Salazar, supra, at 815. "In almost every setting where important decisions turn on questions of fact, due process requires an opportunity to confront and cross-examine adverse witnesses." Goldberg v. Kelly, 397 U.S. 254, 269 (1970).

The same rules apply in all deprivations of property rights by the government. Thus, when Pennsylvania permitted suspension of workers' compensation benefits without notice or an opportunity to be heard pursuant to

a medical utilization review process, the Third Circuit held procedural due process had been denied. Sullivan v. Barnett, 139 F.3d 158 (3d Cir. 1998), citing Goldberg v. Kelly, 397 U.S. 254, 267-68 (1970) ("adequate notice detailing the reasons for a proposed termination" is required); Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950) (notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections"); Morrissey v. Brewer, 408 U.S. 471, 481 (1972) ("due process is flexible and calls for such procedural protections as the particular situation demands").

When the governmental action at issue is a denial of permits, the plaintiff in a due process case also has the burden of showing that it had a "clear entitlement" to approval of the permit at the time the application was filed, since that is necessary to establish the existence of a cognizable property interest. Villager Pond, Inc. v. Town of Darien, 56 F.3d 375, 378-79 (2d Cir. 1995); RRI Realty Corp v. Incorporated Village of Southampton, 870 F.2d 911, 914, 918 (2d Cir. 1989); Sullivan v. Town of Salem, 805 F.2d 81 (2d Cir. 1986); Yale Auto Parts, Inc. v. Johnson, 758 F.2d 54, 59 (2d Cir. 1985); Donegan v. Town of Woodbury, 863 F. Supp. 63 (D. Conn. 1994); Kelley Property Dev., Inc. v. Town of Lebanon, 226 Conn. 314, 327, 627 A.2d 909 (1993). That requirement is met in this case by the determination of Trooper Bement, of which notice was provided to all State Police officials in Troop B, that the plaintiff Longmoor had sole and

exclusive title to the private road and a right to deny access thereto. There "was no element of discretion or judgment" involved in protecting the plaintiff's right to exclusive use of that property. Sullivan v. Town of Salem, 805 F.2d 81, 85 (2nd Cir. 1986).

This is not a case of the mere failure to enforce the law, although that would be sufficient for the plaintiff's action to prevail. This is a case in which the police defendants took affirmative steps to allow others to impair the plaintiff's property rights, to trespass upon her land, to seize her automobile. Yet the defendants assert qualified immunity. The burden of pleading and proving a qualified immunity defense rests squarely and exclusively upon the defendant. Gomez v. Toledo, 446 U.S. 635, 640 (1980); Harlow v. Fitzgerald, 457 U.S. 800 at 815 (1982); Schechter v. Comptroller of the City of New York, 79 F.3d 265, 270 (2d Cir. 1996); Black v. Coughlin, 76 F.3d 72, 75 (2d Cir. 1996); Castro v. United States, 34 F.3d 106, 111 (2d Cir. 1994). The subjective good faith of the police officer is irrelevant to the analysis and should not be considered. Koch v. Rugg, 221 F.3d 1283, 1295 (11th Cir. 2000); Taft v. Vines, 70 F.3d 304 (4th Cir. 1995). "Because the focus of the qualified immunity inquiry is on the objective reasonableness of the defendant's actions, motivation does not come into play." Sound Aircraft Services v. Town of East Hampton, 192 F.3d 329, 334 (2d Cir. 1999).

Here, the defendants had actual knowledge, from the memorandum

prepared after research by their fellow trooper, that the plaintiff Longmoor had exclusive ownership of the private road in question and every right to bar access to that road whether or not it annoyed her neighbors. Yet, with that actual knowledge, they forced the plaintiff to allow invaders upon her land repeatedly and with resulting damage to the property. This case is no different from one in which police allow outsiders to enter a private dwelling. See Ayeni v. CBS Inc., 35 F.3d 680 (2d Cir. 1994) (Newman, C.J.).

The motion for summary judgment by the State Police defendants must be denied.

Respectfully submitted:

JOHN R. WILLIAMS (ct00215)
51 Elm Street
New Haven, CT 06510
203/562-9931
FAX: 203/776-9494
E-Mail: jrw@johnrwilliams.com
Plaintiffs' Attorney

CERTIFICATION OF SERVICE

On the date above stated, copies hereof were mailed to Stephen R. Sarnoski, Esq., Assistant Attorney General, 110 Sherman Street, Hartford, CT 06105; Attorneys Jason J. Vicente and Wendy K. Venoit, Pepe & Hazard LLP, Goodwin Square, Hartford, CT 06103-4302; Peter S. Olson, Esq., Pullman & Comley, P. O. Box 7006, Bridgeport, CT 06601-7006; and James N. Tallberg, Esq., Updike, Kelly and Spellacy, P.C., P. O. Box 231277, Hartford, CT 06123-1277.

JOHN R. WILLIAMS