FILED
DEC 1  11 34 AM '03
U.S. DISTRICT COURT
NEW HAVEN, CONN.

UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| LORRAINE LONGMOOR and LYNDSEY KEENE : | |
| VS. : | NO. 3:02CV1595(JBA) |
| KARL NILSEN, MICHAEL FOX, TOWN OF BARKHAMSTED, BARKHAMSTED INLAND WETLANDS COMMISSION, TROOPER DAVID LABOY, TROOPER HAZEN, TROOPER SWEENEY, LT. TOLOMEO, and P J's AUTO SERVICE, INC. : | NOVEMBER 30, 2003 |

### LOCAL RULE 56A(a)2 STATEMENT REGARDING MOTION FOR SUMMARY JUDGMENT BY STATE POLICE DEFENDANTS

**A. RESPONSE TO STATE POLICE DEFENDANTS' CLAIMS OF FACT:**

1. Agree.

2. Agree.

3. Agree.

4. Agree that Woodland Acres Road is a private right of way that has never been accepted by the Town of Barkhamsted as a public road. Otherwise, disagree. (Affidavit of Lorraine Longmoor dated June 3, 2003, filed June 5, 2003, as attachment to Document 65, Statement of Material Facts, ¶ 3)

5. Agree.

6. Agree.

7. Agree.

8. Agree.

9. Agree.

10. Agree.

11. Agree.

11 (sic). Agree.

12. Agree.

13. Agree.

14. Disagree. While the plaintiff did hope that other landowners would share her costs of relocating the road, she had no plan to use Lot 14A to force anything. Page 87 of her deposition transcript, cited by defendants, does not support this defense claim.

15. Disagree. This is an exaggeration of what the cited transcript pages say. The plaintiff declined to sell Lot 14A to the O'Garas and there was no discussion of an easement. They occasionally used the road with her permission to access their property. (Longmoor Deposition Transcript, pp. 76-78)

16. Agree.

17. Disagree in part. Ms. Longmoor testified that Mr. Case had helped

her relocate the road and it was understood between the plaintiff and Mr. Case that when he sold his property the buyers would be allowed to cross the plaintiff's property as Mr. Case had been for 30 years, giving him what the plaintiff characterized at her deposition as "prescriptive rights." (Id. pp. 94-95)

18. Disagree in part, as noted in Paragraph 17. (Ibid.)

19. Agree that she first made that request in 1998 or 1999 and that at the time they did not agree to pay, but later did pay after the state court ruled in the plaintiff's favor on the issue. (Id. p. 88)

20. Agree.

21. Agree that, on the advice of her real estate attorney, the plaintiff placed a chain across her property restricting the use of her road to those persons to whom she had granted permission. (Plaintiff Longmoor's Deposition, pp. 93-106) Specifically, the plaintiff's attorney told her: "Hey, nobody's listening to you. Put a chain. It's your property. Put a chain on it." (Plaintiff Keene's Deposition Transcript, p. 30)

22. Agree that the State Police were called on the date indicated. Agree that the plaintiff is not certain of the identity of the caller, whom she believes to be William Langer. There is nothing in the cited page to suggest that the call was "anonymous," however. (Plaintiff Longmoor's Deposition, p. 98)

23. Agree.

24. Disagree. The plaintiff has testified that the trooper who took this

action was defendant Laboy. (Id. pp. 109-10)

    25. Disagree. (Ibid.)

    26. Agree.

    27. Agree.

    28. Agree.

    29. Agree.

    30. Agree.

    31. Agree. (Id. pp. 119-20)

    32. Disagree. "When they arrived, they immediately walked off to the side with Mr. Langer, and there was a good deal of conversation between the three of them while Lyndsey and I stayed off to the side...They went off to the side, and the three of them were talking, and then...they went across the street to Mr. Croce's house." (Id. p. 124)

    33. Disagree. The plaintiff had fixed the chain, putting it back up, before the troopers arrived. (Id. pp. 122, 128)

    34. Agree that this information was conveyed to the defendants at some time. Otherwise disagree. (Id. p. 124)

    35. Agree that the plaintiff had told the defendants she had a quitclaim deed to the property. Agree that the deed was not physically shown to the defendants, but only because the defendants had never asked to see it. (Id. p. 130)

36. Agree that it was obvious to the defendants that Woodland Acres Road was a private road.

37. Agree that the defendants had a long conversation with Langer. Plaintiffs have no way of knowing what was said in that conversation.

38. Disagree. The chain was not down when the defendants arrived. The defendants unlawfully ordered the plaintiff to remove the chain on pain of arrest. (Id. pp. 124-25, 127; Plaintiff Keene's Deposition Transcript, pp. 101-02)

39. Plaintiffs have no way of assessing the accuracy or inaccuracy of these statements.

40. Disagree. (Plaintiff Longmoor's Deposition Transcript, pp. 124-27)

41. Disagree. (Ibid.)

42. Agree.

43. Disagree. As a matter of law, this law enforcement officer was charged with knowledge of the law and the facts revealed on the land records of the town to which he was assigned. It is manifestly not the case that the plaintiffs "were not treated any differently than [sic] any other person whom Trooper Hazen encountered with similar complaints" since Hazen acknowldges that he had never encountered any other person with such a complaint. (Defendants' Local Rule 56(a)1 Statement, ¶ 43)

44. Agree. Ignorance and inexperience, however, have never been part of the test for the affirmative defense of qualified immunity.

45. Agree. (Plaintiff Longmoor's Deposition Transcript, pp. 169-73)

46. Agree.

47. Disagree. Trooper Bement visited the plaintiff's house early that morning and had a long conversation in which she and plaintiff Keene showed him a detailed map and described the facts in detail. When the plaintiffs then visited Trooper Bement's office later that day, Trooper Bement was typing a memo to all State Police officers in Troop B, "notifying them that if they were called to Woodland Acres that [the plaintiffs] had a right to put the chain up across the road and bar entry." He also suggested that the plaintiffs provide a key to the chain's lock to the local fire marshal and that they get some no trespassing signs to place at 50-foot intervals along the border of Parcel 14A. The plaintiffs took his advice and did so. (Id. pp. 173-76; Plaintiff Keene's Deposition Transcript, pp. 104-05)

48. Disagree. (Ibid.)

49. Disagree. (Ibid.)

50. Disagree. (Ibid.)

51. Disagree. (Ibid.)

52. Disagree. (Ibid.)

53. Agree.

54. Plaintiffs have no way of knowing the content of such alleged conversation.

55. Agree that Trooper Bement did prepare such a memo. As to the other aspects of this paragraph, plaintiffs have no knowledge.

56. Plaintiffs have no way of knowing the content of such alleged conversation.

57. Agree that the memorandum was created and distributed as alleged. Otherwise, plaintiffs have no knowledge.

58. Plaintiffs have no knowledge.

59. Agree that defendant Tolomeo, defendant Laboy and Trooper Bement visited the plaintiff's property on the afternoon of May 2, but disagree as to the time. (Plaintiff Longmoor's Deposition Transcript, p. 181)

60. Disagree. (Id. pp. 109-10)

61. Disagree. Defendant Tolomeo "said we could not put the chain up because...the State's Attorney said we couldn't, and...the Langers...had a right to cross my property, something vague like that....He also told me that Mr. Langer would be allowed to walk around the chain, would be allowed to take the chain down, would be allowed to damage the chain." He also told the plaintiff that if she put the chain across the road she would be subject to arrest. (Id. pp. 181-86; Plaintiff Keene's Deposition Transcript, pp. 106-07)

62. Disagree. (Ibid.)

63. Plaintiffs have no knowledge concerning the first two sentences. Disagree with third sentence. Defendants have represented in their Local Rule

56(a)1 Statement that plaintiff produced maps as well. Moreover, the land records were open to the public and certainly to the defendants, one of whom claims to have studied land law in law school. Fourth and fifth sentences are assertions of law which do not belong in a Local Rule 56 Statement. Disagree with sixth sentence because the land records of the municipality were open to the defendants and to the public and defendant Tolomeo claims to be knowledgeable about land law and how to search titles. Agree with seventh sentence. Disagree with remainder. (Ibid.)

64. Agree with first sentence. Disagree with second sentence because defendant Tolomeo admits he never had confronted anyone else with a similar complaint or problem. (Defendants' Local Rule 56(a)1 Statement, ¶ 64)

65. Agree.

66. Agree.

67. Disagree in part. The plaintiff had placed her automobile in a position on her own property such that the road was not blocked but that an oversize truck towing a modular home would not be able to cross her land. (Plaintiff Longmoor's Deposition Transcript, pp. 193-95; Plaintiff Keene's Deposition Transcript, pp. 44-45)

68. Disagree in part. (Ibid.)

69. Plaintiffs have no knowledge of the contents of this alleged private conversation.

70. Agree.

71. Disagree in part.  (Plaintiff's June 3, 2003, affidavit, *supra*, ¶ 4; Plaintiff Keene's Deposition Transcript, pp. 46-47, 51-52)

72. Disagree in part.  (Ibid.)

73. Agree.

74. Agree.

75. Agree.  (Plaintiff Keene's Deposition Transcript, p. 110)

76. Disagree.  (Id. pp. 110-13)

77. Agree that Trooper Bement was not the person who made the threat.

78. Agree.

79. Objection.  Utterly irrelevant.

80. Disagree.  (Complete Docket Sheet, submitted herewith)

81. Disagree.  Judgment entered for the plaintiff on September 12, 2002. A motion to open that judgment was denied on August 25, 2003.  (Ibid.; Plaintiff Longmoor's Affidavit of June 3, 2003, *supra*, ¶ 8)

82. Agree.

83. Move to strike this paragraph.  In violation of Local Rule 56(a), the defendants have not cited to any evidence supporting this claim.

## B. PLAINTIFFS' STATEMENT OF MATERIAL FACTS:

1. When defendants Hazen and Sweeney arrived on plaintiff's property on April 30, 2000, they immediately walked off to the side with Mr. Langer, and there was a good deal of conversation between the three of them while the plaintiffs stayed off to the side. They went off to the side, and the three of them were talking, and then they went across the street to Mr. Croce's house." (Plaintiff Longmoor's Deposition Transcript p. 124)

2. The chain across the plaintiff's road was not down when defendants Hazen and Sweeney arrived on plaintiff's property on April 30, 2000. The plaintiff had fixed the chain, putting it back up, before the troopers arrived. (Id. pp. 122, 128)

3. The defendants Hazen and Sweeney unlawfully ordered the plaintiff to remove the chain on pain of arrest. (Id. pp. 124-25, 127; Plaintiff Keene's Deposition Transcript, pp. 101-02)

4. Trooper Bement visited the plaintiff's house early on the morning of May 2, 2000, and had a long conversation in which the plaintiffs showed him a detailed map and described the facts in detail. When the plaintiffs then visited Trooper Bement's office later that day, Trooper Bement was typing a memo to all State Police officers in Troop B, "notifying them that if they were called to Woodland Acres that [the plaintiffs] had a right to put the chain up across the road and bar entry." He also suggested that the plaintiffs provide a key to the

chain's lock to the local fire marshal and that they get some no trespassing signs to place at 50-foot intervals along the border of Parcel 14A. The plaintiffs took his advice and did so. (Plaintiff Longmoor's Deposition Transcript pp. 173-76; Plaintiff Keene's Deposition Transcript, pp. 104-05)

5. Later that day, defendant Tolomeo visited the plaintiffs house and "said we could not put the chain up because...the State's Attorney said we couldn't, and...the Langers...had a right to cross my property, something vague like that....He also told me that Mr. Langer would be allowed to walk around the chain, would be allowed to take the chain down, would be allowed to damage the chain." He also told the plaintiff Longmoor that if she put the chain across the road she would be subject to arrest. (Plaintiff Longmoor's Deposition Transcript, pp. 181-86; Plaintiff Keene's Deposition Transcript, pp. 106-07)

6. At the time of the events in question, Woodland Acres Road was a private road located on the property of the plaintiff Lorraine Longmoor. (Plaintiff's affidavit, ¶ 3)

7. The plaintiff did not ever freely and willingly hand over her keys to Mr. Spaziani. (Id. ¶ 4)

8. The plaintiff turned her keys over to Mr. Spaziani under threat that if she did not surrender her keys to him her car would be damaged. (Ibid.)

9. In the presence of the plaintiff and Mr. Spaziani, two state troopers stated that the plaintiff's car was going to be towed whether she surrendered her

keys or not. (Ibid.)

10. Mr. Spaziani and Mr. Langer trespassed on the plaintiff's property and seized her car, without the plaintiff's consent, under the eyes of two state troopers who permitted them to do so. (Id. ¶ 5)

11. Mr. Spaziani towed the plaintiff's car seven hundred (700) feet without her consent. (Id. ¶ 6)

12. Mr. Spaziani took the plaintiff's car from the plaintiff's private property – not from a right-of-way. (Id. ¶ 7)

13. The plaintiff's car was on her property. (Ibid.)

14. The plaintiff's said property was clearly marked with a "No Trespassing" sign. (Ibid.)

15. In a quiet title action in the Connecticut Superior Court bearing Docket Number CV-00-0082632, it was expressly held that the plaintiff is the owner of the property from which Mr. Spaziani towed her car and was the owner of that property at the time of the tow. (Id. ¶ 8)

16. In open court, the defendant Langer stipulated through his attorney that he had "trespassed unlawfully" upon Woodland Acres Road, which the plaintiff owned. (Ibid.)

17. The Connecticut Superior Court adopted the stipulation of defendant Langer as a part of its final judgment in the quiet title action to which the plaintiff and Langer were parties. (Ibid.)

THE PLAINTIFFS

BY: _____
JOHN R. WILLIAMS (ct00215)
51 Elm Street
New Haven, CT 06510
203/562-9931
FAX: 203/776-9494
E-Mail: jrw@johnrwilliams.com
Their Attorney

CERTIFICATION OF SERVICE

On the date above stated, copies hereof were mailed to Stephen R. Sarnoski, Esq., Assistant Attorney General, 110 Sherman Street, Hartford, CT 06105; Attorneys Jason J. Vicente and Wendy K. Venoit, Pepe & Hazard LLP, Goodwin Square, Hartford, CT 06103-4302; Peter S. Olson, Esq., Pullman & Comley, P. O. Box 7006, Bridgeport, CT 06601-7006; and James N. Tallberg, Esq., Updike, Kelly and Spellacy, P.C., P. O. Box 231277, Hartford, CT 06123-1277.

_____
JOHN R. WILLIAMS