UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| LORRAINE LONGMOOR, *et al.*, | : | NO. 3:02CV-1595(JBA) |
|     *plaintiff*, | : | |
| | : | |
| V. | : | |
| | : | |
| KARL NILSEN, *et al.*, | : | |
|     *defendants.* | : | DECEMBER 22, 2003 |

**BARKHAMSTED DEFENDANTS' REPLY TO PLAINTIFFS'
BRIEF IN OPPOSITION TO THE MOTION FOR SUMMARY JUDGMENT**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Karl Nilsen, Michael Fox, the Town of Barkhamsted, and the Barkhamsted Inland Wetlands Commission (collectively, the "Barkhamsted Defendants"), respectfully reply to the plaintiffs' Brief in Opposition to Barkhamsted Defendants' Motion for Summary Judgment, dated December 12, 2003.

**I.   THE PLAINTIFFS HAVE FAILED TO RAISE
     A GENUINE ISSUE OF MATERIAL FACT**

The thrust of plaintiffs' entire case is that the Barkhamsted Defendants vigorously investigated complaints of Ms. Longmoor's neighbors, while at the same time ignored complaints raised by Ms. Longmoor. Plaintiffs also claim that regulations that were vigorously enforced against the plaintiffs were not enforced against her neighbors. The undisputed facts reveal, however, that neither of plaintiffs' claims is accurate.

Karl Nilsen, the Zoning Enforcement Officer, handled complaints received by Ms. Longmoor and her neighbors with an equal degree of attention. In response to Ms. Longmoor's complaint that construction on William and Patricia Langer's property had caused siltation in her pond and erosion

347653

on the Woodland Acres Road, Mr. Nilsen, traveled to Ms. Longmoor's property and conducted an inspection of her pond.  Local 56(a)(1) Statement, dated Nov. 20, 2003, ¶ 42.  Mr. Nilsen also inspected the construction site on the Langer's property.  Id. ¶ 44.  Mr. Nilsen concluded that there was no evidence of siltation in the pond and that the Langers had installed proper siltation controls. Id. ¶ 46.  The State of Connecticut Department of Environmental Protection undeniably confirmed this finding.  Id. ¶ 48.

     Mr. Nilsen gave the same degree of attention to complaints raised by Ms. Longmoor's neighbors.  Ms. Longmoor's neighbors complained that significant silting and erosion had occurred on the portion of Woodland Acres Road that passed through Ms. Longmoor's property.  Id. at 64. Indeed, Mr. Nilsen observed that Woodland Acres Road was in a state of disrepair when he visited Ms. Longmoor's property.  Id. ¶ 62.  Accordingly, he requested that Ms. Longmoor submit a reconstruction plan for the road.  Id.  ¶ 67.  Although, Ms. Longmoor submitted no plan, Mr. Nilsen did not press the issue further.  Id. at 72.  Contrary to plaintiffs' unsupported claims, the mere fact that Mr. Nilsen concluded that Ms. Longmoor's neighbors' claims about the road condition had merit, does not mean that he ignored Ms. Longmoor's complaints.

     Plaintiffs offer no evidence to support their claim that Ms. Longmoor's complaint to the Zoning Board of Appeals to issue a certificate of occupancy to the Langer's was ignored.  Although the Zoning Board of Appeals eventually denied her claim that the Langers should not be issued the certificate, the Board held a full and fair hearing of that claim.  The Superior Court of Connecticut upheld the decision of the Zoning Board.  Id. ¶ 87.

Similarly the plaintiffs offer no evidence to show that Michael Fox, in his capacity as Open Burn Official for the Town of Barkhamsted, handled Ms. Longmoor's application for an open burn permit differently from the manner in which he handled other applications.  Despite plaintiffs' conclusory statement that Mr. Fox did not inspect other burn piles, the following exchange from Ms. Longmoor's deposition is an admission by Ms. Longmoor that she has no evidence that while Mr. Fox inspected her burn pile, he did not inspect the burns piles of other applicants:

> Q:   Okay.  And you don't know whether Mr. Fox had ever gone out and taken a look at a burn pile before it was burned?
>
> A:   Right.

Longmoor Dep. at 268-69.  Similarly, Mr. Fox asserted that it was not uncommon for him to personally inspect burn piles after he received an open burn application.  Affidavit of Michael Fox, dated November 17, 2003, ¶ 26.  The plaintiffs have not produced any evidence to contradict Mr. Fox's Affidavit.

In addition to plaintiffs' claim that their complaints were largely ignored, plaintiffs also assert that regulations not enforced against Ms. Longmoor's neighbors were enforced strictly against the plaintiffs.  The undisputed facts reveal, however, that no enforcement action was taken against Ms. Longmoor.  With respect to the deterioration of Woodland Acres Road, the plaintiffs admit that even though Ms. Longmoor did not submit the reconstruction plan requested by Mr. Nilsen, Mr. Nilsen took no enforcement action against Ms. Longmoor with regard to the erosion of the road.  Local 56(a)(1) Statement, ¶ 72. In response to Ms. Longmoor's neighbors' complaints that she conducted logging on her property, Mr. Nilsen took no enforcement action because he concluded that Ms.

Longmoor was free to cut the trees on her property.  Id. at 73.  With regard to complaints that Ms. Longmoor was operating a boarding house on her property in violation of certain zoning regulations, Mr. Nilsen, in his capacity as Zoning Enforcement Officer, took no action against Ms. Longmoor.  Id. ¶ 76.  Moreover, with respect to the ditch that Ms. Longmoor dug on her property, the Inland Wetlands Commission took no enforcement action against Ms. Longmoor following her presentation to the commission.  Id. ¶ 104.  And even though her burn piles did not meet permit specifications, neither Mr. Fox nor any other town official took any enforcement action.  Id. ¶ 96.

In sum, the undisputed facts reveal that the Barkhamsted Defendants treated the Ms. Longmoor's complaints and the complaints of her neighbors with equal diligence and attention.  Moreover, the facts reveal that the Barkhamsted Defendants took no enforcement action against plaintiffs whatsoever.  Accordingly, the Barkhamsted Defendants' Motion for Summary Judgment should be granted.

## II.   THE PLAINTIFFS' CLAIMS ARE NOT RIPE FOR AJUDICATION

The Barkhamsted Defendants' argued that the decision whether or not to enforce certain regulations against the plaintiffs did not constitute final government action.  Therefore, plaintiffs' equal protection claims are not ripe for adjudication.  Mem. of Law in Supp. of Summ. Judg. at 16.  In response, plaintiffs argue that the requirement that the government take final action before plaintiffs may bring a constitutional claim only applies where a plaintiff is seeking damages for deprivation of property.  They assert that because Ms. Longmoor is not asserting a takings type claim, that the plaintiffs claims are immune from ripeness scrutiny.  That is not the case.

The court in Celentano v. City of West Haven, 815 F. Supp. 561 (D. Conn. 1993) addressed a similar argument. In Celentano, the plaintiff brought a substantive due process claim against a local municipality challenging a land use decision by the municipality. Like the Barkhamsted Defendants, the Celantano defendant argued that because a final decision had not been reached, plaintiffs did not satisfy the ripeness requirement. Consequently, the defendants asserted that the plaintiff's substantive due process claim should be dismissed. The court agreed. Despite plaintiffs' argument that their substantive due process claims were distinct from the "takings-type claims," the court ruled that a substantive due process claim premised on allegedly arbitrary and capricious decision-making by municipal officials was also subject to ripeness review. The court reasoned that the rationale underlying the finality requirement—that unless a court has a final decision before it, it cannot determine whether the government conduct was arbitrary and capricious—applied to plaintiffs' case, as well. The court reasoned that the it could not determine whether the government acted improperly towards plaintiffs until it understands what specific final government action or decision the plaintiff challenges. Similarly, the court reasoned that it could not evaluate whether similarly situated landowners were treated differently, until it understood the municipalities' final application of the zoning rules to the persons at issue.

      The same reasoning should apply here. Regardless of the damages that the plaintiffs seek, this Court should not adjudicate this matter because it cannot assess what specific*, final*, government action the plaintiffs complain about. Accordingly, the court cannot determine whether the similarly situated individuals were treated differently. Wholly apart from the type of damages plaintiffs seek, only when the plaintiffs receive a final definitive decision regarding how the Barkhamsted

Defendants will apply certain regulations to the property in issue, will the Court be able to review the alleged dissimilar treatment accorded similarly situated property owners.  As the Barkhamsted Defendants argued in their Memorandum of Law, the plaintiffs here have failed to obtain any final, reviewable decision from the Inland Wetlands Commission or any of the Barkhamsted Defendants regarding the application of regulations to themselves or their neighbors.  Accordingly, under the reasoning employed in Celentano, plaintiffs' claims are not ripe for adjudication.

### III.   THE PLAINTIFFS EQUAL PROTECTION CLAIM FAILS BECAUSE THEY CANNOT  DISPARATE TREATEMENT OR THAT THE BARKHAMSTED DEFENDANTS' ACTED WITH ANIMUS OR IRRATIONALLY

At a minimum, the Second Circuit requires that in order for an individual to state a claim under the equal protection clause of the United States Constitution as a class of one, a plaintiff must demonstrate that they were treated differently from similarly situated individuals.  Harlen v. Village of Mineola, 273 F.3d 494 (2d Cir. 2001).  As discussed above, the undisputed facts reveal that plaintiffs have provided no evidence to indicate that Ms. Longmoor was treated differently from her neighbors or any other residents of the Town of Barkhamsted.  Contrary to the plaintiffs' contention that "regulations not enforced against the plaintiffs' neighbors were strictly enforced against them," the undisputed facts reveal that in fact no regulatory action was enforced against the plaintiffs.

Moreover, Ms. Longmoor's complaints concerning her neighbors were investigated and handled with the same degree of diligence as the neighbors' complaints about her conduct.  In the class of one context, where there is no difference in the treatment, there can be no violation of the equal protection clause. See, e.g., Presnick v. Delaney, 33 Fed. Appx. 18, 20-21 (2d Cir. 2003) (rejecting plaintiffs' claims for violation of the equal protection clause where "plaintiff has not shown

that similarly situated individuals were treated differently."). As the Barkhamsted Defendants argued in their Memorandum of Law, for this reason alone, this Court should grant the summary judgment motion.

The Barkhamsted Defendants also asserted that plaintiffs' claim for violation of the equal protection clause failed because the plaintiffs had made no showing of animus on the part of the Barkhamsted Defendants. The plaintiffs responded by arguing that such a showing is "clearly . . . not required." In reality, whether or not the plaintiffs are required to show animus in a class of one type equal protection claim is anything but clear. The Second Circuit has consistently refused to resolve the question of whether a plaintiff is required to demonstrate such animus. See, e.g., DeMuria v. Hawkes, 328 F.3d 704, n.2 (2d Cir. 2003) (noting that a decision as to whether Olech removed the Second Circuit requirement that an illicit motivation be show to establish a valid equal protection violation would be left "for another day"); Giordano v. City of New York, 274 F.3d 740, 743 (2d Cir. 2001) (recognizing that the Second Circuit has not resolved the issue of whether a plaintiff making a class of one equal protection claim has to show an illicit motivation).

Given that the issue of whether or not a plaintiff must show animus or an illicit motivation has yet to be decided explicitly by the Second Circuit, the Barkhamsted Defendants urge this Court to adhere to the line of cases, discussed in the Barkhamsted Defendants' Memorandum of Law, that require the plaintiffs demonstrate an illicit motivation or animus with respect to the defendants' allegedly disparate treatment of the plaintiffs. A determination by this Court requiring plaintiffs to demonstrate animus means that plaintiffs' equal protection claim must fail. Plaintiffs have alleged and can prove no facts to demonstrate that the Barkhamsted Defendants conduct was motivated by

"impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person. Harlen Assocs., 273 F.3d at 499.

As plaintiffs rightly point out, if the Court concludes that the plaintiffs are not required to demonstrate animus or an illicit motivation to sustain their equal protection claim, plaintiffs must still prove that their was "no rational basis for the difference in treatment." Olech, 528 U.S. at 564. Even if the rational basis standard applies, plaintiffs are still unable to satisfy the second prong of Olech. Under the rational basis standard, it is "[t]he court's duty to determine whether the defendants have offered a rational basis for the difference in the defendants' treatment is not a license for courts to just the wisdom, fairness, or logic of [government] choices." Batiste v. City of New Haven, 239 F. Supp. 2d 213, 228 (D. Conn. 2002) (internal quotations omitted). "Nor does it authorize the judiciary to sit as a super-legislature to judge the wisdom or desirability of . . . policy determination made in areas that neither affect fundamental rights nor proceed along suspect lines." Id. Accordingly, it is well recognized that courts are to afford governmental decisions a "strong presumption of validity." Heller v. Doe by Doe, 509 U.S. 312, 319 (1993).

Thus, in the class of one equal protection context, a governmental decision "should be upheld if there is any reasonably conceivable state of facts that could provide a rational basis" for why the plaintiffs might have been treated differently. Galligan v. Town of Manchester, 3:01 CV 2092, 2003 U.S. Dist. LEXIS 8362, at * 20 (D. Conn. May 19, 2003) (attached hereto as Exhibit 1). Legitimate reasons exist for the Barkhamsted Defendants' conduct toward the plaintiffs. Barkhamsted Defendants' Mem. of Law in Supp. of Mot. for Summ. Judg., at 26-27. Where, as here, defendant

347653                                                         8

government officials or entities can offer a legitimate reason for their treatment of the plaintiffs, there can be no valid equal protection claim.  See, e.g., Galligan, 2003 U.S. Dist. LEXIS 8362, at * 20 (dismissing equal protection claim where plaintiff alleged no facts that the defendants' actions towards plaintiff were "irrational and wholly arbitrary); Zeigler v. Town of Kent, 258 F. Supp. 2d 49, 59 (D. Conn. 2003) (where municipal defendants offer legitimate reasons for placing conditions on plaintiff's land use permit, plaintiff has failed to state a cause of action as a class of one under the equal protection clause).

### III. DEFENDANTS FOX AND NILSEN ARE PROTECTED BY QUALIFIED IMMUNITY BECAUSE THEY WERE EXERCISING REASONABLE DISCRETION IN THEIR OFFICIAL CAPACITIES.

The Barkhamsted Defendants argue that Defendants Fox and Nilsen are entitled to summary judgment because they are protected by the doctrine of qualified immunity.  The plaintiffs mischaracterize the Barkhamsted Defendants' statement of the qualified immunity doctrine.  Specifically, the plaintiffs claim that "the [the Barkhamsted Defendants] attempt to redefine qualified immunity to protect all the discretionary actions of municipal officials, as if the plaintiffs were making a claim under state law."  Contrary to this assertion, the Barkhamsted Defendants have not attempted to redefine anything.

Applying the test for qualified immunity articulated by the Supreme Court in Anderson v. Creighton, 483 U.S. 635 (1987), the Barkhamsted Defendants argued that the doctrine shielded Mr. Fox and Mr. Nilsen from liability because "plaintiffs are unable to show that it was objectively unreasonable for the Barkhamsted Defendants' to believe that their conduct was permissible in light

of [plaintiffs'] clearly established rights." Def. Mem. at 35. Because, for the reasons discussed above and in the Barkhamsted Defendants' Memorandum of Law, the Barkhamsted Defendants' conduct was reasonable in light of the plaintiffs' clearly established right to equal protection of the laws. Accordingly, Mr. Fox and Mr. Nilsen are entitled to qualified immunity.

**IV.	THE TOWN OF BARKHAMSTED IS NOT LIABLE UNDER MONELL**

The plaintiffs accurately assert that actions by an official "whose edicts or acts may fairly be said to represent the official policy" may expose the municipality to § 1983 liability. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978). A single act of a policymaker can constitute a municipal policy. Walker v. City of New York, 974 F.2d 293, 296 (2d Cir. 1992). However, not all acts of policymakers constitute municipal policies. Pembaur v. City of Cincinnati, 475 U.S. 469, 480 (1986). In Pembaur, the Supreme Court stated that, "the fact that a particular official—even a policy making official—has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion." Id. at 481-82. Moreover, the Court held that "municipal liability attaches under section 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." Id. at 482.

In the present case, the Barkhamsted Defendants exercised inherently discretionary functions. Plaintiffs cannot produce any evidence of a deliberate decision by the defendants to strictly enforce regulations against Ms. Longmoor, while refusing to enforce them against her neighbors. Similarly,

there is no evidence that the Barkhamsted Defendants made a deliberate decision to ignore Ms. Longmoor's complaints.  Accordingly, liability cannot lie against the Town of Barkhamsted.

## CONCLUSION

Based on the foregoing reasons, the Barkhamsted Defendants respectfully request that the Court grant their Motion for Summary Judgment.

RESPECTFULLY SUBMITTED,
DEFENDANTS,
KARL NILSEN, MICHAEL FOX,
TOWN OF BARKHAMSTED, and BARKHAMSTED
INLAND WETLAND COMMISSION


By:_____
    JAMES N. TALLBERG, ESQ.
    Federal Bar Number Ct17849
    MATTHEW FREIMUTH, ESQ.
    Federal Bar Number Ct25245
    UPDIKE, KELLY & SPELLACY, P.C.
    One State St., P.O. Box 231277
    Hartford, CT 06123-1277
    Tel. No. (860) 548-2600

## **CERTIFICATION**

I hereby certify that a copy of the foregoing has been sent via U.S. Mail, postage prepaid, to the following counsel of record, this _____ day of December 2003:

John R. Williams, Esq.
William & Pattis, LLC
51 Elm Street, Suite 409
New Haven, CT 06510

Stephen R. Sarnoski, Esq.
Assistant Attorney General
MacKenzie Hall
110 Sherman Street
Hartford, CT 06105

Jason Vicente, Esq.
Pepe & Hazard
Goodwin Square
Hartford, CT 06103

By:_____
JAMES N. TALLBERG, ESQ.

35159.00007

347653