UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| LORRAINE LONGMOOR and LYNDSEY KEENE | : : : | |
| VS. | : : | NO. 3:02CV1595(JBA) |
| KARL NILSEN, MICHAEL FOX, TOWN OF BARKHAMSTED, BARKHAMSTED INLAND WETLANDS COMMISSION, TROOPER DAVID LABOY, TROOPER HAZEN, TROOPER SWEENEY and LT. TOLOMEO, | : : : : : : : : : : | APRIL 29, 2004 |

## RESPONSE TO ORDER TO SHOW CAUSE

The court, in response to motions filed by the former defendant P J's Auto Service, Inc., granted summary judgment in favor of the defendant and ordered the plaintiffs to pay a sum of money which the court ruled constituted all the attorney fees incurred by that defendant from the date, May 7, 2003, on which the court determined that the plaintiffs' opposition to the defendant's position became clearly unreasonable.  The plaintiffs have paid that sum of money in full.

The court further, *sua sponte*, ordered me to show cause why sanctions should not be imposed pursuant to 28 U.S.C. § 1927 and/or Fed. R. Civ. P.

1

11(c)(1)(B) for violating Fed. R. Civ. P. 11(b)(2) in opposing P J's motion by making an argument which was not "warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law...."

A sanction for violation of Rule 11 "shall be limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated" and "may consist of, or include, directives of a nonmonetary nature, an order to pay a penalty into court or...an order directing payment to the movant of some or all of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation."  F. R. Civ. P. 11(c)(2).

Section 1927 provides that an attorney "who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."

Lorraine Longmoor and Lyndsey Keene are a pleasant couple in late middle age who own and operate a small Bed-and-Breakfast in a semi-rural area of Barkhamsted.  They have gone through many difficulties with town officials and some of their perhaps more upscale neighbors, many of which concern Woodland Acres Road, a private road which provides access to their residence/business and some neighboring houses.  They successfully prosecuted a quiet title action

involving this road in the Superior Court at Litchfield. They concluded that they were being subjected to a variety of unconstitutional actions by the neighbors and town officials, and among those actions was the entry upon their land and forcible removal of one of their automobiles from the road Ms. Longmoor owned to another part of her land. The towing company was involved in that episode.

Ms. Longmoor and Mr. Keene were referred to me by another Judge of this Court, to whom they had confided their concerns. I felt honored by the referral and was happy to undertake the representation.

As the court has observed in its Ruling of March 31, 2004, the plaintiffs reasonably believed at the time suit was filed that the State Police had summoned the towing company to remove their vehicle. Accordingly, the towing company was named as a defendant under a joint action theory of state action. As the court has noted further, there came a time in the spring of 2003, when it became clear that the State Police had not summoned the towing company. At that point, it was my opinion – which I freely expressed to defense counsel – that my clients were unlikely to prevail on a "state action" theory. I told him that I would do my best to get his client out of the case and asked only that he agree to a mutual exchange of releases. After consultation with his client, he did so. As promised, I immediately contacted Ms. Longmoor and Mr. Keene, on March 5, 2003, and strongly advised them to drop the claim. While Attorney Vicente prepared draft releases, I also did

so.  Attached hereto as *Exhibit A* is the release which I prepared and forwarded to my clients on March 7, 2003.  I once again strongly advised them to sign the release and cease pursuing their action against the towing company.  They refused to do so.  We discussed the matter by telephone and I again reiterated my position and strong recommendation.  I was unable to persuade them, however.

During these events, defense counsel and I occasionally spoke by telephone.  I feel I always have had a very cordial relationship with the attorneys at Pepe & Hazard, although I had not previously met Attorney Vicente.  I think I was candid with him in explaining my personal feelings about the wiser course my clients should be taking and my frustration with my inability to convince them to follow my advice.  In the course of those discussions, I did suggest to him that perhaps I could talk them into accepting some sort of nominal settlement at less than the cost of defense.  I certainly did not consider that an attempted hold up, as the court has characterized it, and I do not think Attorney Vicente viewed it that way – at least I hope he did not.  I felt we were fellow professionals trying to work together in a spirit of mutual cooperation to resolve a difficult problem that neither one of us could control.  My words were no different from those I have heard many a judge utter in chambers during settlement discussions.

Since receiving the court's ruling a month ago, I have been asking myself what I could have done under these circumstances other than what I actually did.  I

suppose I could have moved to withdraw from the case as a result of my clients' failure to follow my recommendation. I seriously doubt the court would have considered such a motion, since there is no doubt that Ms. Longmoor and Mr. Keene could not have found other counsel. It is no secret that most lawyers will not take Section 1983 cases, and certainly few if any would be interested in one with so wide a range of skilled defense lawyers arrayed on the other side as in this case. My clients are not impoverished, but neither are they rich. My withdrawal from the case would have left the court with two *pro se* plaintiffs. In the light of that reality, I think such a motion on my part would have been inappropriate. Moreover, even if they were being unreasonable, I think my clients did not deserve for that failing to be left without counsel.

    I think it is obvious that I could not simply have abandoned the towing company claim on my own, without client authorization. Had I done so, I surely would have faced a grievance and might have faced a malpractice suit as well. It is a commonplace that trial lawyers today must constantly navigate between the Scylla of client grievances and malpractice suits and the Charybdis of judicial irritation or worse.

    Many years ago, I represented a young man named Bennie G. Carr in a Section 1983 suit against Chalres Watts, a New Haven police officer who had shot him in the course of an arrest. The case was tried at the Waterbury seat of this

court before Judge Thomas Murphy and the jury returned a defendant's verdict. I believed that the method used by Judge Murphy to select the jury violated my client's statutory right to peremptory challenges and appealed. Attorney Joseph Garrison was a Special Assistant Corporation Counsel to the City of New Haven at that time, and he represented the appellee. After I had filed my brief, he expressed to me his strong opinion that his side of the case had no merit and that a reversal was certain. When I appeared in Foley Square for the oral argument, Attorney Garrison was not present. The case was called and the court asked if I knew why he was not there. I replied that I did not but that he had told me his opinion on the case and possibly felt that he could not make a good faith argument against my position. I vividly remember Judge Gurfein leaning over the bench and making a statement to this effect: "He is a lawyer. His job is to make the best argument he can regardless of his opinion on the merits." Oral argument was rescheduled, Mr. Garrison and I argued our respective positions, and the case was sent back for retrial. Carr v. Watts, 597 F.2d 830 (2nd Cir. 1979). The court held that the law was so clear that it was "constrained" to reverse. Attorney Garrison had thought the same thing. Nobody suggested, however, that it was improper for him to argue for affirmance. It was his job, and the adversary system demanded it.

Obviously my clients had much the weaker argument in opposing the towing company's summary judgment motion. As this court pointed out, there have been

cases in which the Second Circuit held that the presence of police officers was insufficient to attribute state action to private actors.  When the only police assistance rendered in an eviction was mere police presence for the sole purpose of preventing a breach of the peace, and the police officer did nothing but stand by, the eviction was not accomplished under color of law.  <u>Barrett v. Harwood</u>, 189 F.3d 297 (2d Cir. 1999).  Moreover, when a police officer, summoned by a shopkeeper to quell a disturbance, takes it upon himself to force the customer to pay his bill, the shopkeeper has not acted under color of law if the officer's actions were entirely of his own volition and not pursuant to any agreement or understanding with the shopkeeper.  <u>Ginsberg v. Healey Car & Truck Leasing, Inc.</u>, 189 F.3d 268 (2d Cir. 1999).  On the other hand, with respect, the Second Circuit has not held that an officer's mere presence is *never* sufficient to permit a jury to find from circumstantial evidence that the officer and the private party were acting together.  Indeed, as this court noted, <u>Barrett</u> explicitly held that "no bright line has been drawn delineating the exact point at which an officer's presence and activities at the scene...become state action...."  189 F.3d at 302.  Courts uniformly hold that each case will have to be decided on its own unique facts.  See generally <u>Dennis v. Sparks</u>, 449 U.S. 24, 27-28 (1980).  Thus, as recently as November, 2003, the Seventh Circuit relied on the very passages in <u>Adickes v. S. H. Kress & Co.</u>, 398 U.S. 144, 158 (1970), which I cited in my brief here, to reverse a lower court decision dismissing a "state action"

7

claim against the son of the mayor of East Chicago.  <u>Morfin v. City of East Chicago</u>, 349 F.3d 989, 1003 (7th Cir. 2003).

    I do not cite these cases to suggest that this court erred in granting summary judgment to the towing company.  I mention them only to urge that in arguing against that motion I was not doing something unethical or abusive, but merely was making the best argument of a losing cause that could be made under the circumstances and that doing so was my obligation as a lawyer.

               Respectfully submitted:

_____
JOHN R. WILLIAMS (ct00215)
51 Elm Street
New Haven, CT 06510
203/562-9931
FAX:  203/776-9494
E-Mail: jrw@johnrwilliams.com
Attorney for the Plaintiffs


CERTIFICATION OF SERVICE

On the date above stated, copies hereof were mailed to Stephen R. Sarnoski, Esq., Assistant Attorney General, 110 Sherman Street, Hartford, CT 06105; and James N. Tallberg, Esq., Updike, Kelly and Spellacy, P.C., P. O. Box 231277, Hartford, CT 06123-1277.

_____
JOHN R. WILLIAMS