UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

Lorraine LONGMOOR, and Lyndsey KEENE, plaintiffs,

v.

No. 3:02cv1595 (JBA)

Karl NILSEN, Michael FOX, Town of BARKHAMSTED, BARKHAMSTED Inland Wetlands Commission, Trooper David LABOY, Trooper HAZEN, Trooper SWEENEY, and LT. TOLOMEO, Defendants.

**Ruling on Motion for Summary Judgment of Defendants Trooper Laboy, Trooper Hazen, Trooper Sweeney, and LT. Tolomeo [Doc. #67]**

Defendants Laboy, Hazen, Sweeney, and Tolomeo move pursuant to Fed. R. Civ. P. 56 for summary judgment on plaintiff Lorraine Longmoor's 42 U.S.C. § 1983 claims that they deprived her of equal protection and procedural due process in violation of the Fourteenth Amendment to the United States Constitution and common law claim of intentional infliction of emotional distress.[1] For the reasons set forth below, defendants' motion [Doc. #67] is GRANTED as to Longmoor's federal claims, and the Court declines supplemental jurisdiction over the state law intentional infliction claim.

[1] Longmoor's substantive due process and bill of attainder claims and all of plaintiff Lyndsey Keene's claims against these defendants were dismissed pursuant to Fed. R. Civ. P. 12(c). See Longmoor v. Nilsen, 285 F. Supp. 2d 132, 136 n.4, 144 (D. Conn. 2003).

## I.    Factual Background

Longmoor and her friend Lyndsey Keene currently reside at 24 Woodland Acres Road in Barkhamsted, Connecticut in an area known as the Woodland Acres Subdivision.  Longmoor first moved into the subdivision in 1973 after purchasing its Lots 6, 9, 10, and 11, which totaled approximately eight acres of contiguous property. When Longmoor first moved to Woodland Acres, she accessed her home by way of Woodland Acres Road, then 900 foot unimproved dirt and gravel road that had been constructed by subdivision developer Burton Carroll.  Carroll, however, had not constructed the road entirely within the 50-foot wide published right of way depicted in the subdivision plot plan filed with the Town of Barkhamsted but, to avoid rock structure, had located the road so that it encroached on some of the subdivision's lots.  To date, Woodland Acres Road remains a private road and has never been accepted by the Town of Barkhamsted as public.[2]  In the mid-1970s, Longmoor discovered that this road encroached on her property and the property of at least one other landowner in the subdivision.

In 1981, David Knauf wanted to purchase Lot 14 in the Woodland Acres Subdivision but was encountering difficulty securing a mortgage because Woodland Acres Road deviated from the published right of way across a small portion of Lot 14.  To

---

[2] Developer Carroll still owns the 50-foot wide right of way.

eliminate the encroachment problem and facilitate obtaining the mortgage, Knauf asked Longmoor if she would accept a quit claim deed to that portion of Lot 14, which he would designate Lot 14A. Longmoor agreed and gave Knauf $1.00 for the quit claim deed to newly created Lot 14A and Knauf retained an easement to cross the lot. Lot 14A, approximately one-tenth of an acre in size, is not contiguous to or visible from Longmoor's other lots. As other lots in Woodland Acres Subdivision were bought and sold over the years, other residents crossed Lot 14A to access their homes and properties. The stage was thus set for this seemingly innocuous small parcel of land to become the powder keg for this and other lawsuits.

In 1988, Longmoor had that portion of Woodland Acres Road encroaching upon her property moved to the published right of way where it was supposed to have been constructed in the first instance. This project had no effect on Lot 14A. Longmoor believed the other residents of Woodland Acres should have been required to share her road relocation costs but received no reimbursement. After others began purchasing lots in the subdivision with the intention of building their homes, Longmoor planned to use her quitclaimed right to exclude from Lot 14A to recover some of these costs.

In March 2000, Longmoor met with other landowners and residents of Woodland Acres Subdivision to discuss easements to

cross Lot 14A.  No easements were agreed to at this meeting.  In April 2000, on the advice of her real estate lawyer, Longmoor installed two posts and a chain to block vehicular passage across Lot 14A.  Neighbors with permission to traverse Lot 14A agreed to take down the chain, pass through, and then put the chain back into position.[3]

On April 25, 2000, the Connecticut State Police were called to Woodland Acres Subdivision because the way across Lot 14A was blocked.  Longmoor does not know who called the State Police but suspects it was William Langer, a neighbor to whom Longmoor had not given permission to cross Lot 14A but whose only access to his property was through Lot 14A.  Longmoor's deposition testimony regarding the identity of the responding state trooper and what the state trooper said to her is contradictory, but ultimately she testified that she "believed" the trooper was defendant Trooper Laboy, see Longmoor Tr. at 109:9-13, and that, although she did not remember her specific conversation with Laboy, it was "obvious" that Laboy had come to order her to take the chain down and in fact she did recall Laboy ordering her to remove it, see id. at 109:14-111:1; see also id. at 113:19-24.[4]

---

[3] For various reasons, Longmoor gave permission to some neighbors to cross Lot 14A to access their residences.

[4] By affidavit, Trooper Laboy states that he did not respond to a complaint regarding a property dispute at Woodland Acres Subdivision on April 25, 2000, but worked the midnight shift from 11:00p.m. to 7:00a.m. on both April 24 and 25, and on both nights was assigned to Patrol 3, which encompasses the towns of Colebrook, Norfolk, Winsted and Torrington as well as a portion of Route 8 where it passes through those four towns.

For purposes of summary judgment, the Court makes no credibility determinations and accepts her identification of Laboy and the contents of his conversation.[5]

On April 30, 2000, Longmoor spied Langer with his vehicle on his lot in the subdivision and surmised that Langer could only have reached his property with his vehicle through her Lot 14A. Checking the chain, Longmoor discovered that one of the supporting posts had been lifted out of the ground and laid at the side of the road with the chain on the ground. Longmoor replaced it. Later, when several of Langer's friends wanted to leave the subdivision in their vehicles, Longmoor lowered the chain and allowed them to leave. At some point during this episode, the state police were summoned. Longmoor does not know who called them. Defendant Troopers Hazen and Sweeney responded. They had never before met Longmoor and Keene or been in the Woodland Acres subdivision.

After arriving, the troopers spoke with Langer while Longmoor and Keene remained a distance away. Langer, who had a dump truck on the scene, informed the troopers that he was a property owner in the process of constructing a home on Woodland Acres Road, that he was bringing in fill for his homesite, that

---

[5] Also on April 25, 2000, after the departure of Laboy, one of the posts supporting the chain blocking access to Lot 14A had been broken and the chain had fallen to the ground. On April 28, 2000, Longmoor fixed the broken post and replaced the chain, and, later the same day, telephoned the office of Barkhamsted Resident Trooper, John Bement, leaving a message asking to speak with him regarding the broken post.

the chain was already down on the ground when he first arrived hauling fill to his property that morning, that he had driven across the chain and otherwise not disturbed it, that the only way in and out of the subdivision to his property was over Lot 14A, and that he and other property owners in the subdivision were involved in litigation initiated by Longmoor and Keene over the ownership rights to Lot 14A.

Longmoor told Hazen and Sweeney that she owned Lot 14A and that she had a quitclaim deed to prove it but did not show them the deed. Keene told them he wanted to report vandalism to the posts and chain that had been erected by Longmoor to prevent vehicles from trespassing across Woodland Acres Road where it crossed Lot 14A. Troopers Hazen and Sweeney eventually told Longmoor and Keene that there appeared to be a dispute over who rightfully owned Lot 14A and who, if anyone, had a right to use the road over Lot 14A, that Longmoor and Keene should take the chain down or face arrest until the property dispute was settled particularly as there was a public safety issue concerning access to Lot 14A by residents and emergency vehicles, and that the two should make an appointment to see Bement and Barkhamsted First Selectman, Michael Fox, to discuss their complaints, bringing documentation of their claim to Lot 14A. Out of fear of arrest, Longmoor and Keene took the chain down and troopers Hazen and Sweeney then departed without making any arrests.

Trooper Hazen's uncontradicted affidavit details his handling of property disputes over his eleven years as a state police trooper prior to the Woodland Acres incident and the manner in which the state police generally handle such matters. When dispatched to a property dispute the state police seldom know who really owns the property in dispute or where the property boundaries lie. Because state police lack expertise in engineering or surveying, disputing neighbors are generally advised to seek legal advice from an attorney as to their property rights and then sue in civil court to enforce any such rights if necessary. While the Woodland Acres Subdivision incident was the first time Hazen had encountered a property owner whose claimed ownership of part of a road prevented other landowners from accessing their homes through it, Hazen had dealt with other property disputes and, in keeping with Connecticut State Police practice, normally advised the parties to a dispute to seek a civil remedy to redress their complaints.[6]

On May 1, 2000, Longmoor and Keene left a copy of Longmoor's quit claim deed to Lot 14A and a partial plot map of the Woodland Acres Subdivision at Bement's office. The next day, Bement and Trooper Laboy went to Woodland Acres Road to Longmoor's

[6] At the time Hazen and Sweeney responded to Woodland Acres on April 30, 2000, Trooper Sweeney had just graduated from the Connecticut Police Academy and was being supervised by Trooper Hazen. Trooper Sweeney had limited prior experience as a police officer and had never before handled a similar property dispute complaint.

residence.  Longmoor remembers only a discussion about not
keeping individuals from leaving the subdivision.  During the
conversation, Keene arrived with a copy of a map of Woodland
Acres Subdivision and gave it to Bement.  Later in the day,
Bement conducted independent research in the land records for the
Town of Barkhamsted.  With the assistance of the town clerk, he
located a subdivision plot plan for Woodland Acres and learned
that the developer was Burton Carroll and that Longmoor possessed
two parcels of land in the Woodland Acres Subdivision - a large
multi-acre plot and a small .12 acre parcel recorded as Lot 14A.
Because of his familiarity with the area of the subdivision, he
immediately recognized that the actual roadway into Woodland
Acres was not in the location depicted on Burton Carroll's
subdivision plot plan.  He also recognized that Lot 14A was not a
properly configured building lot.  Knowing that Woodland Acres
Road was a private right of way not a public road, Bement
surmised that the dispute centered around Lot 14A in some way.

Longmoor and Keene recall that, when they arrived at
Bement's office later that day, Bement was sitting in his office
typing a memorandum to State Police Troop B, notifying the
troopers that Longmoor had a right to put up a chain to block
passage over Lot 14A in the Woodland Acres Subdivision, and that
Lot 14A was their property and they were entitled to protection.
Longmoor thanked Bement.  Before Longmoor and Keene departed,

Bement suggested they provide keys to the fire marshal for emergency vehicles and that they post "no trespassing" signs every 50 feet along the border of Lot 14A. Longmoor and Keene then went to the hardware store and purchased the signs.[7]

Next, Bement telephoned Assistant State's Attorney Andrew Wittstein at the Bantam courthouse and explained the property dispute situation between Longmoor and her neighbors. Wittstein advised Bement that Longmoor had a legal right to place a chain across the gravel road within the boundaries of Lot 14A, that Bement should take a case number if the chain was damaged and submit an arrest warrant affidavit based on the facts, that, under the circumstances, it was not likely that such an arrest warrant affidavit would be signed, and that Bement was not to

---

[7] Bement's memory differs in some respects. He recollects that he, Longmoor, and Keene all agreed that the road which crossed Lot 14A was the only access into the subdivision and that the right of way depicted on the subdivision map did not exist. Bement acknowledged that Lot 14A appeared to be Longmoor's property but told Longmoor and Keene that it did not make sense that all of the lots in the subdivision beyond where Woodland Acres Road crossed Lot 14A should be landlocked, that he knew Woodland Acres Road had existed for a period of time far longer than the quit claim deed indicated Lot 14A belonged to Longmoor, that the quit claim deed shown by Longmoor did not address the possibility that there could be a pre-existing easement or some other similar claim to use Woodland Acres Road where it crossed Lot 14A, and that, based on the information provided, he could not agree that Longmoor and Keene had an absolute ownership interest in Lot 14A such that they could lawfully place a chain across Woodland Acres Road where it crossed Lot 14A and prevent access to the remainder of the subdivision. Bement told Longmoor and Keene that they should go to court to clarify the extent of their ownership interest in Woodland Acres Road where it crossed Lot 14A and to determine whether they had a legal right to landlock the other property owners. Bement informed Longmoor and Keene that he would seek the advice of the assistant's state's attorney in the Bantam courthouse who would be called upon to prosecute the case if someone was arrested, that he could not tell them whether to take down the chain or to put it up, and that any actions could create circumstances in which the State Police would have to become involved if there occurred a physical or verbal altercation between neighbors.

arrest anyone for trespassing simply for crossing Lot 14A unless Longmoor first obtained an injunction barring others from using Woodland Acres Road where it crossed Lot 14A. Bement told Wittstein that Longmoor had been advised that a civil remedy was the best course of action and Wittstein agreed.

After speaking with Wittstein, Bement spoke with defendant Lieutenant Tolomeo, commanding officer of the North Canaan State Police barracks, and advised him of the property dispute over Lot 14A in the Woodland Acres Subdivision. Tolomeo advised Bement to write a memorandum regarding the property dispute and place it in the roll call book to alert other troopers of the status of Longmoor's claims. The memorandum dated May 2, 2000, reads:

> Subject: Woodland Acres Road (Private Road)
>
> Woodland Acres Rd is a private road at the end of Lavander Rd. There are several homes built along Woodland Acres. The developer, Burton Carroll did not build the Woodland Acres (Private Rd.) to the specifications as outlined on the attached map. The dotted line indicates the existing gravel road that originated within the 50' section that was designated the location that Woodland Acres Rd. would be built. The gravel road then enters onto Lot 14A which is owned by Lorraine Longmoor of 24 Woodland Acres. Lot 14A is a strip of land approximately 30' wide and 150' in length. Lorraine Longmoor has put two wooden post (sic) in place on both sides of the gravel road within her boundaries of Lot 14A. Lorraine Longmoor will be placing a chain extended across the gravel road prohibiting access through her property, Lot 14A.
>
> Verified: Lot 14A does belong to Lorraine Longmoor and is acknowledged by all the residents of Woodland Acres. A-2 survey has been shown and verified that gravel road does in fact cross onto her property.
>
> A.S.A. Andrew Wittstein has advised that Longmoor has a

legal right to place the chain across the gravel road which is located within the boundaries of her property.

Tolomeo then telephoned Wittstein to discuss the matter himself and ensure that Wittstein's directions and advice were clear. Wittstein and Tolomeo agreed that no arrests would be made simply for crossing Lot 14A until such time as the property rights issue was clarified in court, and that an arrest could be made, however, for criminal incidents such as assaults, breaches of the peace, or threatening which occurred on the property. Wittstein emphasized that the role of the State Police was not to determine who owned Lot 14A or the extent to which Longmoor was justified in preventing others from crossing it but merely to maintain public safety and preserve peace until the controversy could be settled by judicial intervention.

Tolomeo informed Bement that he had also spoken with Wittstein and that he was going to view the Woodland Acres Subdivision and meet with Longmoor and Keene personally to ensure clarity regarding the position of the state police in the dispute surrounding Lot 14A. Tolomeo, Bement, and Laboy met with Selectman Fox. Fox was unable to clarify the ownership situation of Lot 14A but did inform Tolomeo that Longmoor had instituted several lawsuits against him and the Town of Barkhamsted as a result of the dispute. Tolomeo, Laboy, and Bement met with Longmoor and Keene at their home at 24 Woodland Acres Road that afternoon. The details of this meeting are in some respects in

dispute.

Longmoor and Keene remember Tolomeo informing them that Bement's statements had to be revised, that Longmoor could not put up the chain because the State's Attorney had said she could not, that Tolomeo had some evidence showing the Langers had a right to cross Lot 14A, that Langer would be permitted to walk around, take down, and damage the chain, and that Longmoor and Keene would be subject to arrest if they blocked Woodland Acres Road at Lot 14A with the chain. They also recall that Tolomeo would not disclose any reason for the threatened arrest and that Tolomeo cryptically inquired whether it was worth Longmoor's and Keene's health to continue pursuing the property dispute.

Tolomeo recalls that he clarified to Longmoor and Keene that the State Police would respond to complaints involving the property dispute over Lot 14A but that the dispute was primarily a civil matter, that arrests could be made for breaches of the peace or assaults, and that, until there was judicial resolution of the property rights involved, the State Police would simply enforce the public safety aspects surrounding any situation that erupted on Lot 14A. Tolomeo emphasized that, although the State Police recognized Longmoor's ownership of Lot 14A, the State Police could not discount the existence of other property claims based on the quit claim deed Longmoor had provided, that it was not the responsibility of the State Police to conduct a title

search to clarify ownership rights to Lot 14A, that Longmoor needed to hire a private attorney to advise her on how best to clarify the extent of her property rights to Lot 14A, and that the State Police would enforce whatever rights a court determined Longmoor possessed. Tolomeo did not tell Longmoor and Keene that they could not block Lot 14A with their chain and Longmoor and Keene remained adamant that they wanted to do so. Similar to Hazen, Tolomeo's affidavit reflects that, although May 2 was the first time he had become involved in a property dispute between neighbors in a subdivision like Woodland Acres, he treated all parties involved in the same way as anyone else with a similar complaint or problem.[8]

In June 2000, Longmoor filed a quiet title action in Connecticut Superior Court (CV-00-0082632-S) seeking to clarify her ownership rights to Lot 14A. The docket detail for the case indicates that judgment entered in favor of Longmoor on September 12, 2002, a motion to open judgment by Longmoor was denied August 25, 2003, and a motion for order by Longmoor was continued on September 23, 2003. The substance of the final judgment is not a part of the summary judgment record.

---

[8] The summary judgment record includes evidence of further involvement of Trooper Bement in Longmoor's property dispute, including responding to a complaint of Keene on May 5, 2000 regarding an unauthorized well-driller in the Woodland Acres Subdivision and preserving the peace at Lot 14A on May 17, 2000 when neighbor Langer had Longmoor's car towed from Lot 14A to facilitate bringing a modular home on a tractor trailer to his lot. There is no evidence, however, that any of the named state police defendants had any involvement with either of these incidents.

In July 2001, Langer used his own equipment and resources to relocate that portion of Woodland Acres Road which crossed Lot 14A to the published right of way where it should have been originally constructed according to the subdivision plot plan filed with the Town of Barkhamsted. Thus, after July 2001, Woodland Acres Road no longer crossed Lot 14A.

## II. Summary Judgment Standard

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Where, as here, a party moves for summary judgment against claims on which the non-moving party bears the burden of proof at trial, the moving party still shoulders the initial responsibility to inform the district court of the basis for its motion, namely, to identify those portions of the court or discovery record together with affidavits, if any, believed to demonstrate the absence of a genuine issue of material fact on an essential element of the non-moving party's claim. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-24 (1986). The non-moving party must then go beyond the pleadings and by her own affidavits, or by evidentiary support found in the court or

discovery record, designate specific facts establishing a genuine issue of material fact on any element essential to the non-moving party's case that was sufficiently called into question by the moving party. See id.. The "District Court must resolve any factual issues of controversy in favor of the non-moving party," Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990), mindful that "at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). The District Court's ultimate concern is "whether there is a need for a trial -- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Id. at 250.

**III. Discussion**

A claim under 42 U.S.C. § 1983 has "two essential elements: (1) the defendant acted under color of state law; and (2) as a result of the defendant's actions, the plaintiff suffered a denial of her federal statutory rights, or her constitutional rights or privileges." Annis v. County of Westchester, 136 F.3d 239, 245 (2d Cir. 1998); see also Giordano v. City of New York, 274 F.3d 740, 750 (2d Cir. 2001). The State Police defendants do